# EXHIBIT "1"

FILED
10/22/2014 9:31:03 AM
Donna G. Brown
District Clerk
Liberty County, TX

Joy Parker

CAUSE NO. _____ **CV1408743**

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT FOR |
| *Plaintiff* | § § | |
| v. | § § | LIBERTY COUNTY, TEXAS |
| RALPH J. GILLIS, | § § | __253rd__  JUDICIAL DISTRICT |
| GILLIS, BORCHARDT & BARTHEL LLP, | § | |
| OBAIN ASSOCIATES LIMITED AND | § | |
| THE JASPER/VPPA SETTLEMENT TRUST | § | |
| *Defendants* | § | |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Sam Rayburn Municipal Power Agency files this Original Petition against Ralph J. Gillis, Gillis, Borchardt & Barthel LLP, Obain Associates Limited and the Jasper/VPPA Settlement Trust, by its Trustee, James F. Kenney, as follows:

### NATURE OF ACTION

1.     This is an action for recovery of damages, fee forfeiture, money had and received, constructive trust and injunctive relief based on breaches of fiduciary duty, unjust enrichment and negligence.

### PARTIES

2.     Plaintiff Sam Rayburn Municipal Power Agency ("SRMPA") is a joint powers agency and political subdivision of the State of Texas. It was created by the cities of Jasper, Liberty, and Livingston, Texas on October 31, 1979.  It is duly organized and continuing under the laws of the State of Texas, TEX. UTIL. CODE ANN. § 163.051 (Vernon 1998).  It is charged with securing the most economical and reliable long and short-term sources of power and energy for its customers.

3.     Defendant Ralph J. Gillis ("Gillis") is an individual who resides in Massachusetts and is a name partner with the law firm Gillis, Borchardt & Barthel LLP. Defendant Gillis, Borchardt & Barthel LLP ("Gillis Borchardt") is a law firm that has its principal place of business in Hingham, Massachusetts. Defendant Obain Associates Limited ("Obain") is a Massachusetts business corporation, owned by Gillis (and his wife) that has its principal place of business in Hingham, Massachusetts. Gillis, Gillis Borchardt and Obain all office, and may be served with process, at 160 Old Derby Street, Suite 227, Hingham, MA 02043.

4.     The Jasper/VPPA Settlement Trust (the "J/V Trust") is a trust created and existing under the laws of Massachusetts for the benefit, and acting under the control, of Obain (through Gillis), the City of Jasper ("Jasper") and the Vinton Public Power Authority ("VPPA"). The Trust's registered office and principal place of business are at 160 Old Derby Street, Suite 227, Hingham, MA 02043, the same address as the Gillis Defendants, but it can be served through James F. Kenney as its trustee at 66 Lyric Arbor Circle, The Woodlands, Texas 77381.

## JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over the Defendants. Each of the Defendants has a substantial connection with Texas arising out their actions and conduct purposefully directed towards Texas, and this cause of action arises out of and relates to their contacts with Texas. Defendants have purposefully availed themselves of the laws of the State of Texas and have established "minimum contacts" within Texas. Exercising personal jurisdiction over the Defendants in this matter would not offend traditional notions of fair play and substantial justice.

6.     Venue of this matter is proper in Liberty County, because all or a substantial

2

part of the events giving rise to the claims being asserted in this Petition occurred in this County.

## DISCOVERY LEVEL

7.      Plaintiff intends that discovery be conducted under Level 3.

## FACTUAL BACKGROUND

8.      Gillis and Gillis Borchardt served as SRMPA's legal counsel for many years. Indeed, those Defendants structured most of the contractual arrangements under which SRMPA has operated through those years. Gillis and Gillis Borchardt (or one of its predecessor firms) also for many years represented other of the parties to those contractual relationships as well, including the VPPA, Jasper, the J/V Trust and a predecessor of the J/V Trust, known as the "Jasper Trust."

9.      SRMPA obtains electrical power on a wholesale basis almost entirely from Entergy Corp. ("Entergy") or one or more of its affiliates and provides it to its constituent members, Jasper, Liberty and Livingston, as well as to VPPA, to support their respective retail sales to their residential and industrial users. The current set of such contracts, as well as earlier similar contracts from which the current contracts evolved, were constructed and negotiated by Gillis and Gillis Borchardt and its predecessor firms in their capacities as lawyers for SRMPA.  The earlier set of contracts was generally known as the "Nisco Deal." The current set of such contracts, along with a pre-existing Requirements Power Supply Agreement ("RPSA"), is known as the "Cambridge Project."

A. **Gillis' Undisclosed Conflict of Interest**

10.     Gillis formed Obain in 2000 and created the Jasper Trust no later than October 1, 2001. On information and belief, both of those entities have since that time been used to

disguise arrangements Gillis was making with Jasper for Obain (and thereby Gillis and his wife) to receive a significant percentage of revenues Gillis would be arranging for Jasper to receive through the contracts he and Gillis Borchardt were structuring. On information and belief, Obain and Jasper first documented such a percentage compensation arrangement between themselves via an "Adjustment Agreement for Separate Settlement" on March 19, 2001 and then supplemented or replaced that arrangement with an "Agreement for Business Development Services" on May 20, 2002. No later than March, 2004, the Jasper Trust became the veil for concealing significant payments to Obain and Gillis, including for concealing them from SRMPA.

11.     In April, 2010, as Gillis and Gillis Borchardt were conceiving and structuring the current complex of agreements involving SRMPA, Obain and Jasper supplemented or replaced their earlier percentage fee arrangements by entering into a "Nisco Settlement Agreement" whereby payments that had previously flowed through the "Nisco Deal" contracts would now be redirected to flow from SRMPA to the J/V Trust and then, unbeknownst to SRMPA, through the J/V Trust to Obain for Gillis, in addition to Jasper and VPPA. The J/V Trust was created on April 14, 2010 to help disguise the reality that much of the amounts SRMPA was obligated to pay was actually going to Gillis through Obain.

12.     Under the complex of agreements currently in place, EGSL, an Entergy entity, coordinates the various payment flows under the Cambridge Project and, as SRMPA's agent for this purpose, it sends directly to the J/V Trust amounts that are owed by SRMPA. In short, since 2011, SRMPA without knowing it, has been flowing funds through the agency of EGSL to the J/V Trust from which Obain and, therefore, Gillis, have been, and are, receiving as much as $1 million or more per year.

4

13.    SRMPA has learned only recently of Obain's existence and of how Gillis has been using Obain and the J/V Trust to conceal from SRMPA, and from others who participate in this complex of agreements, the fact that Gillis has been realizing substantial funds for himself as a result of how he structured these contracts on which he and his firm were simultaneously representing SRMPA as its lawyers. Because of Gillis' concealment of his personal stake in those contracts through Obain, SRMPA could not have reasonably discovered those arrangements any earlier than it did.  Indeed, via email in November, 2011, SRMPA's Executive Director asked its lawyer, Gillis, to explain the beneficial interests in the J/V Trust, and Gillis replied that the terms of the J/V Trust were "considered confidential between Jasper and VPPA", but went on to represent to SRMPA that the recipients of the subject funds other than SRMPA were Jasper and VPPA, thus fraudulently concealing that Obain was a beneficiary of the J/V Trust and was receiving a significant portion of the payments SRMPA was making. Any otherwise potentially applicable period of limitations has either been tolled or has not begun to run based on Gillis' fraudulent concealment of his/Obain's stake in those funds and by the discovery rule.[1]  Because the concealment violated a fiduciary duty, the tolling effect is all the more clear.[2]  Moreover, these arrangements that Gillis made to obtain these undisclosed amounts, actually funded by SRMPA, at least in substantial part, constitute egregious violations

---

[1]    Per the Texas Supreme Court: "[T]he general principle is this: accrual of a cause of action is deferred in cases of fraud or in which the wrongdoing is fraudulently concealed, and in discovery rule cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).

[2]    "We have twice held a fiduciary's misconduct to be inherently undiscoverable. *Willis*, 760 S.W.2d at 645 (attorney); *Slay*, 187 S.W.2d at 394 (trustee). The reason underlying both decisions is that a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996).

of the fiduciary duty he owed to SRMPA both to make full disclosure to it and to act faithfully in its interest.

14.     Additionally, under Gillis' manipulation, Obain and the J/V Trust have knowingly participated in Gillis' breach of fiduciary duty to SRMPA and are jointly and severally liable to SRMPA as a result. Gillis (and possibly his law firm), Obain and the J/V Trust have also been unjustly enriched by all the amounts they have received through this mechanism that was undisclosed to SRMPA, and they should be required to disgorge to SRMPA all such amounts they have wrongfully received.[3]  Such disgorgement is also appropriate under the concept of money had and received. A constructive trust should be imposed on all such receipts by the Defendants and on any assets or rights of value that are fairly traceable to those receipts. At a minimum, the J/V Trust is obtaining possession of the portion of the subject funds to which SRMPA is claiming and, therefore, is a stakeholder of that portion of those funds and should remit them into the registry of the Court to abide judicial resolution of the competing claims to them between SRMPA and Obain/Gillis.

15.     Gillis, through Obain, always held the unilateral right to install or remove anyone he wanted to serve as trustee of the Jasper Trust. Therefore, to the extent the Jasper Trust contracted with the other above mentioned entities, Gillis was, himself, in a very practical sense, a party to those contracts. Whenever he acted as SRMPA's lawyer in negotiating those contracts, he was concealing that he was actually negotiating for himself. For at least a decade, the Jasper Trust played a disguising role for Obain and for Gillis to prevent SRMPA, Gillis'

---

[3]     "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

client, from learning of his chicanery. Gillis has also now maneuvered the J/V Trust into the same sort of disguising role and in so doing, he has continued to negotiate for and advise SRMPA regarding contracts from which he not only realizes undisclosed payments, but to which he, himself, is functionally a party. His whole endeavor, over a period of decades, of co-opting his role as legal counsel to SRMPA for his own personal financial advantage, while concealing and actively misrepresenting his true purposes from his client SRMPA, constitutes the height of hypocrisy and the deepest depth of disloyalty.

**B. Gillis' Termination as SRMPA's Counsel and His Adverse Representation**

16.     SRMPA terminated its engagement of Gillis and Gillis Borchardt as its counsel in June, 2012. Since then Gillis and Gillis Borchardt have continued to represent VPPA and perhaps other of the above named parties with respect to their supposed rights under the Cambridge Project contracts.

17.     Since their termination by SRMPA, Gillis and Gillis Borchardt, acting as counsel for VPPA, began pressing SRMPA to transfer some of its rights, but not all of its obligations, under one of the contracts in the Cambridge Project, specifically the Supplemental Requirements Power Supply Agreement ("S-RPSA"),[4] to VPPA  Those efforts included sending SRMPA a "Power Supply Separation Agreement" by which SRMPA would surrender certain rights in favor of VPPA, but would retain significant obligations, including substantial payment obligations. SRMPA declined to succumb to the pressure Gillis and Gillis Borchardt were applying and declined to enter the supposed

---

[4]     The Supplemental Requirements Power Supply Agreement ("S-RPSA") with Entergy affiliate EWO Marketing, Inc. ("EWOM") is dated August 8, 2011. In the S-RPSA, SRMPA agreed to purchase power from EWOM and to resell it to VPPA to serve VPPA's IP Retail Load needs. VPPA executed the S-RPSA as a "buyer participant."

Separation Agreement. More recently, manifesting a clear intent to increase VPPA's pressure on SRMPA to transfer its contracts rights to VPPA, Gillis sent a letter to SRMPA on Gillis Borchardt's letterhead, expressly acting as counsel for VPPA, transmitting a formal notice to SRMPA that VPPA was terminating the S-RPSA ("Notice of Termination").[5] Following that notice, upon the urging of Entergy and its affiliates, VPPA and SRMPA have agreed with the pertinent Entergy entities to a series of waivers and extensions by which those parties have concurred that the S-RPSA has continued in effect, notwithstanding the Notice of Termination from VPPA. There has been, though, and continues to be, a disagreement between VPPA and SRMPA as to whether that contract can or should be terminated by VPPA.  SRMPA believes and asserts that VPPA lacks the right under the S-RPSA to take the action it has purported to take, believes and asserts that VPPA has purported to take that action under advice from Gillis and Gillis Borchardt and that its purported action is adverse to SRMPA's interests.  Moreover, the purported action clearly regards the same subject matter on which Gillis and Gillis Borchardt previously represented SRMPA.

18.    By continuing to represent VPPA in its disagreement with SRMPA about whether VPPA can or should terminate (or modify) the contract for which Gillis and Gillis Borchardt sent SRMPA the notice of termination, which regards the same subject matter on which Gillis and Gillis Borchardt previously represented SRMPA, Gillis and Gillis Borchardt are violating the fiduciary duty they owe to SRMPA as their former client, as well as their obligations under the Texas Disciplinary Rules of Professional Conduct and the

---

[5]    The Notice of Termination is attached as **Exhibit A**. Although labeled as a "termination" notice, it is actually a purported modification whereby VPPA is purporting to effect the assignment of rights for which it earlier pressured, but is also purporting to leave some of the obligations, especially payment obligations, with SRMPA.

Massachusetts Rules of Professional Conduct.  This suit is brought in part to restrain Gillis and Gillis Borchardt from representing VPPA against SRMPA's interest and without its consent regarding the same subject matter on which those Defendants previously represented SRMPA.  SRMPA has requested Gillis and Gillis Borchardt to refrain from such representation, and, through their counsel, they have informally indicated they are refraining from such representation as it may be adverse to SRMPA's interest, but they have reserved for their own private determination what they think is adverse to SRMPA's interest and, in any event, have refused to make any representation as to anything they are refraining from doing in any formal or enforceable way.  Injunctive relief is necessary, therefore, to restrain that improper activity by Gillis and Gillis Borchardt.

19.    The dispute between SRMPA and VPPA is ongoing, and it could potentially cause an enormous amount of damage to SRMPA in part because the contract purportedly being terminated (or modified), the S-RPSA, is integrated with the other contracts that make up the Cambridge Project. As Gillis explained in correspondence prior to sending the Notice of Termination, if one of the contracts that comprise the Cambridge Project is terminated, the entire Cambridge Project could collapse.[6]  Therefore, VPPA's and SRMPA's dispute threatens to jeopardize the entire Cambridge Project, which, if it were to be impaired, would threaten SRMPA's profitability with respect to the whole of the Cambridge Project.

C.  **Obain's Undisclosed Fee has Corrupted Gillis' and Gillis Borchardt's Legal Advice to SRMPA and has Caused SRMPA Significant Damage**

20.    For many years prior to 2011, Jasper sold power to VPPA to meet the needs of

---

[6]    *See* the email from Ralph Gillis to Bruce Halstead dated February 14, 2013, attached as **Exhibit B**.

9

its "Industrial Participants", and SRMPA sold power to VPPA to meet its municipal needs. Both Jasper and SRMPA bought the power they sold to VPPA from affiliates of what is now Entergy Corp. Under those arrangements, neither Jasper nor SRMPA had responsibilities for delivering the power they were buying and then selling to VPPA. Delivery of the power was the seller's obligation.

21.    In 2010, however, Gillis began structuring new arrangements for VPPA to supply power to its industrial participants. He knew he was including in those arrangements a change in the source for the power that theretofore was sold to Jasper for it to resell to VPPA for its industrial participants' load. He knew that such a change would entail using different transmission facilities from those that had historically been used to deliver that power. He further anticipated that such a change would also entail a likely requirement to upgrade the capacity of the new transmission facilities and that under those circumstances the cost of such upgrade would likely be imposed on its customer. If Jasper continued to be that customer, Jasper would bear that cost obligation, but, if it did, it would diminish the percentage fee Gillis was receiving through the Jasper Trust and Obain. Gillis, therefore, without disclosing his personal financial stake in avoiding that cost risk to Jasper, set about to shift that risk from Jasper to his other client, SRMPA, in a way that would protect his undisclosed fee and the value of his stake as a *de facto* party to the arrangements going forward. He accomplished that by constructing, negotiating, and persuading SRMPA to enter into, the S-RPSA.

22.    Under the S-RPSA, EWO Marketing, Inc. ("EWOM") became the seller, and SRMPA became the buyer from EWOM and the reseller to VPPA, of power to meet VPPA's industrial participants' load. In effect, SRMPA replaced Jasper in that role. Rather than presenting the new agreement to SRMPA as one that was designed to protect Jasper from a

large expense to upgrade the capacity of the Entergy Transmission System and that would protect Gillis' personal stake in the fee he was receiving through the Jasper Trust and Obain and would preserve the value of his position as a *de facto* party to the arrangements, Gillis instead presented the new agreement to SRMPA as one that would be highly profitable to SRMPA.

23.     Gillis did not make SRMPA aware of the consequences under the S-RPSA that would cause SRMPA to incur significant costs. Changing the designated source of the power SRMPA would be buying entailed that different transmission facilities would be used to deliver that power than had been used when Jasper was the buyer, and the terms of the S-RPSA, in obscurely worded provisions, imposed on SRMPA, as the new buyer of this power from EWOM, an obligation to pay the cost to upgrade the capacity of the Entergy Transmission System. Moreover, as Gillis prepared it, the S-RPSA required SRMPA to arrange for delivery of the power on a long-term basis, but Gillis encouraged SRMPA to enter into this new agreement before such long-term arrangements were in place. In short, Gillis portrayed the S-RPSA as a lucrative arrangement for SRMPA, while in reality, which Gillis knew, SRMPA was actually buying not one, but two, pigs in a poke – the prospect of a significant cost to upgrade the capacity of the Entergy Transmission System and the uncertainty of obtaining a long-term delivery contract. Regardless, though, Gillis provided in the S-RPSA that SRMPA would be obligated to pay a "Re-Assignment Fee" of $3 million per year from which Gillis, through the J/V Trust and Obain, would continue to receive his percentage fee of at least $1 million per year and preserve the value of his status as a *de facto* party to the contracts.

24.     Unfortunately, as Gillis could foresee but failed to disclose to SRMPA, the risks to SRMPA soon materialized. The S-RPSA was signed effective August 8, 2011, and deliveries of power under it began in December, 2011, but by mid-2012, SRMPA began facing a cost of

over $5 million to upgrade the transmission facilities being used for those deliveries. SRMPA is now in the process of paying that cost, which, based on how Gillis portrayed it, SRMPA did not know to anticipate. Even Gillis later included it as a feature of a financial "bomb." It is also VPPA's allegation of a lack of a long-term delivery arrangement that grounded the Notice of Termination (or modification) of the S-RPSA that Gillis and his law firm sent to SRMPA – those Defendants' client when Gillis and his law firm constructed the S-RPSA to begin with.

25.     Gillis also knew that the Entergy affiliated companies anticipated changing their membership from the delivery system in which they had participated for years to Midcontinent Independent System Operator, Inc. ("MISO") and that the planned change would compress the operating margins he represented to SRMPA it would experience under the S-RPSA. Even so, he explicitly advised SRMPA that the change to MISO would not affect SRMPA's interests. The Entergy entities have now changed that membership and now participate in MISO, and that change has significantly compressed the margins Gillis represented SRMPA would experience under the S-RPSA.

26.     Gillis and Gillis Borchardt's failure to advise SRMPA accurately regarding the probable costs it would incur from entering into the S-RPSA relative to the expectations Gillis and Gillis Borchardt led it to expect have caused SRMPA to realize far less benefit from the S-RPSA than it should have and far less than it would have realized if it had been properly advised. Moreover, by representing VPPA in its attempts to terminate (or modify) the S-RPSA, especially by purporting to take advantage of provisions in the S-RPSA (and taking wrongful such purported advantage) on which Gillis and his law firm failed adequately to advise SRMPA, the Defendants have caused SRMPA to incur significant attorney's fees and expenses of litigation to defend itself against those efforts.   In short, Gillis and Gillis Borchardt's

professional failures have caused SRMPA damages of at least $5 million.

**CAUSES OF ACTION**

A. **Breach of Fiduciary Duty**

27.    SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs.

28.    Defendants' actions described herein constitute breaches of fiduciary duty owed to SRMPA.  SRMPA, therefore, sues for its actual damages, for forfeiture of revenues Gillis and Gillis Borchardt have received regarding their legal representation of SRMPA in connection with the Cambridge Project agreements and the Requirements Power Supply Agreement and its related agreements, and, to avoid unjust enrichment to the J/V Trust and Obain and through them to Gillis, a constructive trust for SRMPA's benefit all of the J/V Trust's receipts for Obain's account and for all receipts by Obain, and through Obain the lawyer Defendants, from Obain's percentage fee arrangements that have affected SRMPA without its contemporaneous knowledge.

29.    Defendants Gillis and Gillis Borchardt have breached, and are breaching, their fiduciary duty to SRMPA. Defendants Gillis and Gillis Borchardt have represented, and continue to represent, VPPA in disputes against SRMPA that have arisen out of, and are substantially related to, the Cambridge Project and its predecessor structures, without full disclosure to, and without obtaining consent from, SRMPA. SRMPA did not, and does not, consent to this representation. It is also reasonably probable that Defendants have revealed confidential information to VPPA during this representation. Defendants' actions have proximately caused SRMPA damages and are calculated to, and if unchecked will, proximately cause further damages to SRMPA going forward.  More particularly, if VPPA succeeds in

terminating or modifying the S-RPSA as Gillis and Gillis Borchardt have advised it to try to accomplish, SRMPA will at least be inhibited in realizing the revenues it is currently receiving, if not deprived of those revenues altogether, with the effect that any profitability from that contract will be impaired or even destroyed. Moreover, Gillis and Gillis Borchardt induced SRMPA into accepting risks of significant costs and compressed margins it did not anticipate by entering into the S-RPSA, and they persuaded SRMPA to enter into the S-RPSA to preserve for Gillis, through the J/V Trust and Obain, his continued receipt of his undisclosed compensation of at least $1 million per year. That inducement, without needed disclosures, has caused and is causing SRMPA to suffer damages of at least $5 million from the materialization of the risks Gillis and Gillis Borchardt failed to advise SRMPA were inherent in the S-RPSA.

30.     That said, SRPMA's rights related to Gillis and Gillis Borchardt's breaches of fiduciary duty are not limited to recovering its actual damages. SRPMA is also entitled to a forfeiture of all compensation Gillis and Gillis Borchardt have received in connection with the subject matter regarding which they have committed those breaches.  As held by the Texas Supreme Court, "[A] client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client."[7]  Because the J/V Trust and Obain have knowingly participated in those breaches of fiduciary duty, they are equally liable for such forfeiture, at least to the extent of the undisclosed percentage fee of $1 million or more per year they have been receiving for Gillis' account.

31.     The Defendants' breaches of fiduciary duty and accompanying fraudulent concealment and unjust enrichment have been both clear and serious. Defendants' conduct was also intentional, willful, and malicious and thereby warrants an award of

---

[7]     *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999).

exemplary damages.

**B. Unjust Enrichment**

32.    SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 31.

33.    The Defendants have been unjustly enriched by their receipt of the funds described above, because they have received those funds under circumstances in which they may not justly retain them.  Those funds, as well as anything of value to which those funds have been applied by the Defendants should be restored to SRMPA.

**C.    Money Had and Received**

34.    SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 31.

35.    The Defendants have received the foregoing funds that in equity and good conscience belong to SRMPA, and they should be required to return such funds in full, as well as anything of value to which those funds have been applied by the Defendants.

**D.    Negligence**

36.    SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 31.

37.    In the event it is ever concluded that Gillis and Gillis Borchardt did not intentionally fail to disclose to SRMPA the significant risks it was accepting by entering into the S-RPSA, then such failure to disclose was negligence and constitutes legal malpractice. Such negligence, in the alternative, caused SRMPA to suffer the actual damages described above.

## PRAYER

SRMPA prays that, upon a full trial on the merits, the Court find in favor of SRMPA and against Defendants and that SRMPA be awarded (a) its actual damages, (b) forfeiture of all compensation to Obain, Gillis and Gillis Borchardt regarding the Cambridge Project and its predecessor structures which is traceable to funds from or for SRMPA, (c) forfeiture by the J/V Trust of all revenues it has received that are traceable to funds from or for SRMPA that were destined for Obain or Gillis, (d) a constructive trust on all receipts by the J/V Trust and Obain and, through them or either of them, by Gillis and Gillis Borchardt, that have affected SRMPA, (e) a declaration that Gillis and Gillis Borchardt's conduct in representing VPPA, and possibly others, against SRMPA's interest is a violation of their ethical and fiduciary responsibilities as lawyers to SRMPA, (f) a permanent injunction restraining and enjoining Gillis and Gillis Borchardt from advising, consulting or representing VPPA in any way affecting its contractual arrangements with SRMPA, (g) exemplary damages, (h) prejudgment and post judgment interest at the maximum rate allowed by law; and (i) its costs of court.  SRMPA further requests all other relief to which it is entitled, whether at law or in equity.

Respectfully submitted,

By: */s/ Kenneth R. Wynne*
      Kenneth R. Wynne
      State Bar No. 22110000
      kwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)

**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

16

OF COUNSEL:

David E. Wynne
State Bar No. 24047150
dwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)

- and -

E. R. Norwood
State Bar No. 15113500
enorwood@ednorwoodlaw.com
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX 77575
(936) 336-3700 (Telephone)
(936) 336-7634 (Facsimile)

*Exhibit A*

# GILLIS, BORCHARDT & BARTHEL LLP

Counsellors at Law

Suite 237
160 Old Derby Street
Hingham, MA 02043

RALPH J. GILLIS*
CHARLES A. BORCHARDT*
PHILIP H. BARTHEL*
RALPH B. GILLIS*

Telephone (781) 741-3433
Fax (781) 740-01 #

## FACSIMILE TRANSMISSION

TO:   Bruce Mintz, Exec. Director   FAX: 832-747-1047

Sam Rayburn Municipal Power Agency   RETURN FAX: (781) 740-0768

1517 Trinity Street

Liberty, TX 77575

FROM:   Ralph J. Gillis, Attorney   DATE:   8/9/13

NO. OF PAGES INCLUDING COVER SHEET:   13

NOTES:

[x] ORIGINAL WILL FOLLOW     [ ] ORIGINAL WILL NOT FOLLOW
[ ] RESPONSE REQUIRED        [ ] NO RESPONSE REQUIRED

CONFIDENTIALITY NOTE
THIS DOCUMENT ACCOMPANYING THIS FACSIMILE COVER PAGE CONTAIN INFORMATION FROM THE LAW FIRM OF
GILLIS, BORCHARDT & BARTHEL LLP THAT IS PRIVILEGED & CONFIDENTIAL. THE INFORMATION IS INTENDED TO BE FOR
THE USE OF THE INDIVIDUAL OR ENTITY NAMED ON THIS TRANSMISSION SHEET. IF YOU ARE THE INTENDED RECIPIENT,
PLEASE BE AWARE THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR USE OF THE CONTENTS IS PROHIBITED. IF YOU
HAVE RECEIVED THIS TELECOPY IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO THAT WE CAN
ARRANGE FOR THE RETRIEVAL OF THE DOCUMENT AT NO COST TO YOU.
IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL: (781) 749-3433

EXHIBIT A

# GILLIS, BORCHARDT & BARTHEL LLP

Counsellors at Law
Suite 337
160 Old Derby Street
Hingham, MA 02043

RALPH J. GILLIS*
CHARLES A. BORCHARDT*
PHILIP H. BARTHEL*

RALPH B. GILLIS*

Telephone (* ) 749-9453
Fax (781_ 740-9700
WPMOB87 2.Name

Of Cl und

JOHN CLs, BAI JY. Solicitor
Quality Solicitor   BB & Abbott
Thornbrow + Morse
9-10 Mark s Hotel
Chelmsford    JM3 DE3
England UK.

VINCE A. CH   J.B. Q.C.
331 Torrens of Street
Sydney New S eXs 2IP571
Care s

MOIRA C.  ILLIS
3243 Westheimer 3 east, Suite 314
Houston, T:  77098

Facsimile Transmission

August 5, 2013

Marilyn Sutton, President
Sam Rayburn Municipal Power Agency
c/o City Hall
200 West Church Street
Livingston, Texas 77351
Fax (936) 327-7778

Bruce Mintz, Executive Director
Sam Rayburn Municipal Power Agency
1517 Trinity Street
P.O. Box 10047
Liberty, Texas 77575
Fax (832) 747-1047

EWO Marketing, L.P.
Attn: President
2001 Timberloch Place
1st Floor – Smith
The Woodlands, Texas 77380
(281) 297-5458

Sam Rayburn Municipal Power Agency
Attention: Administrator
310 Main Street
Liberty, Texas 77575

RE:  Notice of Termination
     Supplemental Requirements Power Supply Agreement

Dear Ms. Sutton, Mr. Mintz & Mr. Rosenleib:

   This is at the instruction of the Vinton Public Power Authority (VPPA), Vinton, Louisiana, 70658.
Notice is hereby given to the Sam Rayburn Municipal Power Agency (SRMPA) and to EWO Marketing,
L.P. (EWO), pursuant to the Supplemental Requirements Power Supply Agreement (S-RPSA), dated
August 4, 2011, Sections 2.3(a)(viii), 2.3(c), and 11.6, that VPPA has voted to terminate that S-RPSA as to
Power supplies to VPPA from SRMPA effective September 1, 2013. A copy of VPPA's action
implementing the Notice of Termination is attached, and an executed original will be sent to you by
mail.

*Massachusetts & Barof o of Columbia Bars
*Massachusetts Bar

*Oklahoma Bar and OH o
*Massachusetts & Rhode Island Bars

This is further to confirm that VPPA again will extend the S-RPSA with EWO. VPPA will continue to treat that portion of VPPA's direct Power purchase from EWO for VPPA's certain retail load, up to 125 MWs, as meeting that portion of SRMPA's continuing power supply obligation to VPPA for VPPA's certain retail load under the re-assigned Jasper/VPPA Power Supply Agreement, dated July 31, 2011, as amended March 27th, 2011 .

Under this arrangement, the Settlement Agent will be billed by EWO for that Power as supplied directly to VPPA by EWO for up to 225 MWs of VPPA's certain retail load.  The Settlement Agent Contract, dated October 17, 2011, will be amended to authorize this payment, and to preserve net distributions to VPPA and SRMPA.

There will be no change in the Cambridge Project  cash flows to any Party, except that the ultimate distribution to SRMPA will be net of VPPA's 9.39% previously held by SRMPA in escrow and hereafter to be directly distributed to VPPA.

The Settlement Agent Contract will be amended to reflect the net distribution to SRMPA as consistent with the acknowledgement by VPPA that SRMPA's obligation to deliver up to 225 MWs to VPPA for its certain retail load under the above Jasper/VPPA Power Sales Agreement is satisfied.

SRMPA is hereby relieved of liability under the S-RPSA, Section 2.4(b)(II), for payment by VPPA to EWO for purchase of Power from EWO.

An amendment has been prepared for the Settlement Agent Contract and is attached. Execution of that amendment is required for distributions to be made to SRMPA for Power supplied during the month of September.

Sincerely,

Ralph J. Gillis

RJG/ms

Enclosures

Copies:  James F. Kenney, Settlement Agent
Kenneth O. Stinson, President, VPPA
Mary Vice, Secretary, VPPA
Mike Lout, Mayor, Jasper, Texas

# SUPPLEMENTAL REQUIREMENTS POWER SUPPLY AGREEMENT

## Notice of Termination

THIS SUPPLEMENTAL REQUIREMENTS POWER SUPPLY AGREEMENT (the "Agreement"), dated August 4, 2011, NOTICE OF TERMINATION (Notice), is made by the Vinton Public Power Authority, as Buyer Participant and hereby given to EWO Marketing, Inc., as Seller, and Sam Rayburn Municipal Power Agency, as Buyer (each a "Party" and together the "Parties" to the Agreement and its prior Amendments Nos. 1-11), effective as of the date below subscribed by the Buyer Participant (the "Effective Date").

WHEREAS, the Agreement provides for the commencement of delivery of Power upon the satisfaction or waiver of certain conditions precedent as set out in Section 2.3 therein;

WHEREAS, the conditions precedent in Section 2.3(a), other than Section 2.3(a)(vi), may not have been satisfied or waived under Section 2.3(a) or 2.3(c) as of September 1, 2013;

WHEREAS, the Parties have entered into those certain Partial Waiver Agreements and Amendments Nos. 1–11 (Interim Waivers) to Supplemental Requirements Power Supply Agreement, and commenced purchase and sales of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent, and to that end the Parties agreed in that certain Partial Waiver Agreement and Amendment No. 11 to Supplemental Requirements Power Supply Agreement, dated effective as of July ___, 2013 ("Amendment No. 11") that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including September 1, 2013;

WHEREAS, the Buyer Participant herein Notices to the Parties under the Agreement, Section 2.1, that the conditions precedent contained in Section 2.3(a), in particular the condition precedent contained in Section 2.3(a)(viii), will not have been satisfied or waived by the Buyer Participant under Section 2.3(a) or 2.3(c) as of September 1, 2013;

WHEREAS, the Buyer Participant herein Notices to the Parties under the Agreement, Section 2.1, that the conditions precedent contained in Section 2.3(a), in particular the condition precedent contained in Section 2.3(a)(viii), will not have been satisfied or waived by the Buyer Participant under Section 2.3(a) or 2.3(c) as of September 1, 2013, and therefore under the Agreement, Section 2.3(c), the Buyer Participant will decline to waive the unsatisfied conditions precedent as to the Buyer and thereby will terminate the Agreement effective on September 1, 2013 (the Termination Date) as between the Buyer and the Buyer Participant;

Notice of Termination

WHEREAS, the Buyer Participant will waive the unsatisfied conditions precedent insofar as the purchase and sale of Power by the Seller to the Buyer Participant, as such waiver is set forth in Partial Waiver Agreement and Amendment No. 12A to Supplemental Requirements Power Supply Agreement, dated effective as of August __, 2013 ("Amendment No. 12A");

WHEREAS, Seller will incur no additional obligations, duties or responsibilities as a result of the continuation of the Agreement as waived herein by the Buyer Participant, and the action of the Buyer Participant as contained in this Notice does not prevent the Seller and the Buyer from concluding a further Partial Waiver Agreement and Amendment No. 12B to Supplemental Requirements Power Supply Agreement, dated effective as of August __, 2013 ("Amendment No. 12B"), thereby continuing the purchase and sale of Power to the Buyer for its municipal loads as contained in the Agreement but not to serve the loads of the Buyer Participant;

WHEREAS, the effect of this Notice is that upon the Termination Date the Buyer is relieved of its joint and several responsibility for VPPA's obligations under the Agreement, Section 2.4(b)(ii), including but not limited to payment of VPPA's power bill from Seller, as well as of being relieved of fiduciary responsibilities as agent for VPPA under the Agreement, Section 2.4(b)(ii) and (vi) ; and

WHEREAS, Seller now will be required to perform, directly and separately, any and all of its obligations to Buyer and to Buyer Participant, respectively, including the delivery of Power, performance assurance, and invoicing, and that under the Agreement, Section 3.4, Seller will continue to have the obligation to deliver Power to the Buyer Participant, which, as further set forth herein, will enable the Buyer to continue to receive revenues through Settlement Agent as calculated before the Termination Date,

NOW THEREFORE, the Buyer Participant hereby gives Notice of the termination of the Agreement as below stated:

1.    This instrument is and shall constitute the Buyer Participant's Notice to the Seller and to the Buyer under the Agreement, Section 2.3(c), of termination for failed conditions precedent under Agreement, Section 2.3(a), such termination to be as . set forth herein.

2.    The terms herein, enabling continuation of certain portions of the Agreement as between the Seller and the Buyer Participant, reflect and are conditioned on the Seller having agreed to waive the conditions precedent as to the Buyer Participant under Partial Waiver Agreement and Amendment No. 12A to Supplemental Requirements Power Supply Agreement, dated effective as of August __, 2013 ("Amendment No. 12A").

Notice of Termination

3.   This Notice is effective as of the above Effective Date.  The Termination Date is September 1, 2013.

4.   The Termination renders the Agreement a two party contract, between the Seller and the Buyer Participant, to be interpreted and applied as a two party contract between them as of the Termination Date.  As between the Seller and the Buyer Participant, the Buyer is no longer a party to the Agreement.  The Seller and the Buyer may make whatever other arrangements under the Agreement as are suitable between them for the respective portions of the Agreement which are not terminated by this Notice.

5.   Calculations of capacity and energy sales shall continue between Seller and the Buyer Participant as contained in the Agreement and needed to determine deliveries and the respective charges by the Seller to the Buyer Participant.   Comparable use of Power supply and load data information as required for calculation of Power charges under the Agreement between the Seller and the Buyer are at their discretion.

6.   This Notice has the effect and requires: (a) that the Seller, not the Buyer, is obligated to deliver capacity and energy to the Buyer Participant's certain retail delivery points for the Industrial Participants up to the amount of capacity and energy as set forth in the Agreement at those certain industrial Participants delivery points; (b) that the Buyer Participant, not the Buyer, is responsible for the purchase of and payment for such power deliveries; (c) that the Buyer Participant continues to acknowledge the purchase, sale and delivery of up to 225 MWs of Power by the Seller to certain industrial Participant delivery points as satisfying that part of the Buyer's Power supply obligation under the Power Supply Reassignment Agreement, dated July 21, 2011, provided, that Buyer continues to contract and deliver to the Buyer Participant, at those certain delivery points, the partial requirements Power remainder of between 225 MWs and 329 MWs, as well as backup Power; and (d) that the Settlement Agent (Agreement, Section 6.2(b)) shall continue to receive power sales revenues as previous to the issuance of this Notice, and shall apply those proceeds in part in payment of the Buyer Participant's power purchases from Seller as invoiced to the Buyer Participant by the Seller.

7.   This Notice has the effect (a) that the Buyer is released from all fiduciary obligations as agent of VPPA (Agreement, Section 2.4(b)(vi)), and from all obligations to

Notice of Termination

payment to Seller for capacity and energy sold to VPPA (Agreement, Section 2.4(b)(ii); (b) that the Buyer is relieved of any obligation to pursue collection of deficiency payments due to Seller from Buyer Participant for capacity and energy deliveries whether to its wholesale municipal customer, Vinton, or its certain Industrial Participants delivery points

8.     The effect of this Notice is that, as between the Seller and the Buyer Participant, the Agreement shall be interpreted and applied as a two-party contract for the sale of capacity and energy sufficient to service the Vinton municipal load of VPPA, and the certain Industrial Participants delivery points, during the RPSA and thereafter, as is provided in the Agreement.  The Seller shall be obligated to sell and Buyer Participant shall be obligated to purchase only that portion of the loads described in the Agreement which are capacity and energy delivered to VPPA for Vinton and certain Industrial Participants delivery points.

IN WITNESS WHEREOF, the Buyer Participant has caused this Notice of Termination to be duly executed and issued on its behalf as of the Effective Date.


VINTON PUBLIC POWER AUTHORITY

By: _____
       Kenneth O. Stinson, President

Date: _____


ATTEST:


       Mary Vice, Secretary



Notice of Termination

<u>Partial Waiver Agreement</u>
<u>And</u>
<u>Amendment No. 12A</u>
<u>To</u>
<u>Supplemental Requirements Power Supply Agreement</u>

THIS PARTIAL WAIVER AGREEMENT AND AMENDMENT NO. 12A is made by and between EWO Marketing, Inc., as Seller, and Vinton Public Power Authority, as Buyer Participant (each a "<u>Party</u>" on; together the "<u>Parties</u>"), effective as of <u>September 1, 2013</u> (the "<u>Effective Date of 12th Amendment No. 12A</u>").

WHEREAS, the Parties are parties to that certain Supplemental Requirements Power Supply Agreement dated as of August 4, 2011 (the "<u>Supplemental Requirements Power Supply Agreement</u>"), which provides for the commencement of delivery of Power upon the satisfaction or waiver of certain conditions precedent as set out in <u>Section 2.3</u> therein; and

WHEREAS, the conditions precedent in <u>Section 2.3(a)</u>, other than <u>Section 2.3(vi)</u>, may not have been satisfied or waived as of the Effective Date of this Amendment No. 10, and the condition precedent in <u>Section 2.3(vi)</u> has been satisfied as of the Effective Date of this Amendment No. 10; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 1 to Supplemental Requirements Power Supply Agreement, dated effective as of November 30, 2011 ("<u>Amendment No. 1</u>") and commenced deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in <u>Section 2.3(a)</u> that had not yet been satisfied or waived shou d be waived on a partial and interim basis to and including May 31, 2012, as provided therein; and

WHEREAS, the Parties agreed that based on the foregoing interim waivers, the "<u>Delivery Period Start Date</u>" would occur on December 1, 2011; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 2 to Supplemental Requirements Power Supply Agreement, dated effective as of May 10, 2012 ("<u>Amendment No. 2</u>") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding condition precedent and to that end the Parties agreed that the conditions precedent in <u>Section 2.3(a)</u> that has not yet been satisfied or waived shou d be waived on a partial and interim basis to and including December 1, 2012, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 3 to Supplemental Requirements Power Supply Agreement, dated effective as of November 29, 2012 ("<u>Amendment No. 3</u>") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in <u>Section 2.3(a)</u> that had not yet been satisfied or waived shou d be waived on a partial and interim basis to and including January 1, 2013, as provided therein; and

1

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 4 to Supplemental Requirements Power Supply Agreement, dated effective as of December 20, 2012 ("Amendment No. 4") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including February 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 5 to Supplemental Requirements Power Supply Agreement, dated effective as of January 28, 2013 ("Amendment No. 5") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including March 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 6 to Supplemental Requirements Power Supply Agreement, dated effective as of February 28, 2013 ("Amendment No. 6") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including April 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 7 to Supplemental Requirements Power Supply Agreement, dated effective as of March 26, 2013 ("Amendment No. 7") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including May 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 8 to Supplemental Requirements Power Supply Agreement, dated effective as of April 26, 2013 ("Amendment No. 8") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including June 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 9 to Supplemental Requirements Power Supply Agreement, dated effective as of May 29, 2013 ("Amendment No. 9") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including July 1, 2013, as provided therein; and

WHEREAS, as of the Effective Date of this Amendment No. 10, some or all of the conditions precedent in Section 2.3(a) have not been satisfied or waived for the period beyond July 1, 2013; and

2

EWGM-NJPPA6AP6\Amendment12A\aPartialWaiverAgreement-p

WHEREAS, the Parties desire to continue deliveries of Power on a partial and interim basis beyond July 1, 2013, pending the potential satisfaction or waiver of the outstanding conditions precedent and that to this end the Parties desire to agree that the conditions precedent in Section 2.9(a) that have not yet been satisfied or so waived shall be waived on a partial and interim basis to and including August 1, 2013, as provided herein; and

WHEREAS, the Parties desire that based on the foregoing interim waivers and the commencement of the Delivery Period Start Date on December 1, 2011, if the conditions precedent in Section 2.9(a) have not been satisfied or waived other than on a partial and interim basis as provided in this Partial Waiver Agreement and Amendment No. 10 as of August 1, 2013, any Party may terminate the Supplemental Requirements Power Supply Agreement as provided in Section 2.9(c) as of August 1, 2013, in which event all deliveries of Power under the Supplemental Requirements Power Supply Agreement will en; on August 1, 2013;

WHEREAS, the Parties desire that based on the foregoing interim waivers and the commencement of the Delivery Period Start Date on December 1, 2011, if the conditions precedent in Section 2.9(a) have not been satisfied or waived other than on a partial and interim basis as provided in this Partial Waiver Agreement and Amendment No. 11 as of August 1, 2013, any Party may terminate the Supplemental Requirements Power Supply Agreement as provided in Section 2.9(c) as of December 1, 2013, in which event all deliveries of Power under the Supplemental Requirements Power Supply Agreement will end on August 1, 2013; and

WHEREAS, the Buyer Participant has declined to waive further the conditions precedent in Section 2.9(a), which have not been satisfied, as to the Sam Rayburn Municipal Power Agency, the Buyer under the Supplemental Requirements Power Supply Agreement, and therefore is no longer in a contractual relationship with the Buyer under the Supplemental Requirements Power Supply Agreement so that it will not take power purchases or deliveries from SRMPA under the Supplemental Requirements Power Supply Agreement as continued under this Amendment No. 12A, but shall credit power purchased from Seller by Buyer Participant as satisfying up to 225 MWs of power purchase and delivery requirements as obligated from the Buyer to the Buyer Participant under the reassigned Power Sales Agreement between Jasper, Texas, and the Vinton Public Power Authority, dated April 27, 2008, as amended March 27, 2011;

WHEREAS, THE Buyer Participant will be responsible solely for the payment to the Seller of amounts due for power supplies under the Supplemental Power Supply Agreement, and the Buyer will no longer have such obligations, the Buyer Participant will enter into a new Settlement Agent Agreement with the Trustee of the Jasper/VPPA Settlement Trust, and the current Settlement Agent Agreement will be terminated upon payment of the final invoice from the Seller to the Buyer at the end of August 2013.

NOW THEREFORE, for and in consideration of the foregoing and the mutual covenants and agreements set out herein, and other good and valuable mutual consideration the receipt and sufficiency of which is hereby acknowledged and accepted by all Parties, the Parties do hereby agree as follows as of the Effective Date of this Partial Waiver Agreement and Amendment No. 12A:

3

1.    **Section 2.3(c)** of the Supplemental Requirements Power Supply Agreement is deleted in its entirety and replaced with the following:

"(c)    If all of the conditions precedent set forth in **Section 2.3(a)** have not been satisfied (or waived by the Party on whose behalf the condition has been granted, other than by a waiver under **Section 2.3(d)**) on or before December 1, 2013, then any Party shall have the right to terminate this Agreement upon written notice to the other Parties at any time, effective as of August 1, 2019, unless such Party's failure to perform its obligations under **Section 2.3(b)** shall be the reason that one or more of such conditions shall have not been satisfied. Termination of this Agreement pursuant to this **Section 2.3(c)** shall terminate all rights and obligations of the Parties under this Agreement, without any liability of one Party to the other Parties except for any liabilities incurred prior to the effective date of termination and for prior breaches of this agreement by a Party."

2.    **Section 2.3(d)** of the Supplemental Requirements Power Supply Agreement is deleted in its entirety and replaced with the following:

"(d)    The conditions precedent listed in **Section 2.3(a)**, to the extent they have not been satisfied or waived, are hereby partially and temporarily waived by the Parties as of December 1, 2011, for the period from and including December 1, 2011, to and including December 1, 2013, so that the Delivery Period Start Date shall be December 1, 2011, and the Delivery Period shall commence on December 1, 2011, subject to termination of the Agreement as of August 1, 2013, if either Party gives notice of termination pursuant to **Section 2.3(c)** as provided therein."

3.    **Articles 7, 9, 10, 11 and 12** of the Supplemental Requirements Power Supply Agreement are hereby incorporated herein by reference and shall apply *mutatis mutandis* to this Partial Waiver Agreement and Amendment No. 10.

4.    The Buyer Participant declines to waive the conditions precedent of Section 2.3(c) for any and all parts of the Supplemental Requirements Power Supply Agreement as would otherwise apply between the Buyer Participant and the Buyer, so that as between the Buyer and the Buyer Participant the Supplemental Power Requirements Power Supply Agreement is terminated and as between the Seller and the Buyer Participant the Supplemental Requirements Power Supply Agreement shall be interpreted and applied as a power purchase and sale between them to the extent power is purchased and sold between them; provided, that the Seller and Buyer may enter into such amendments to the Supplemental Power Requirements Power Supply contract which as between the Seller and the Buyer pertains to the purchase and sale of power between the Seller and the Buyer but is in no way related to the purchase and sale of power by the Seller to the Buyer Participant. The Buyer Participant will credit up to 225 MWs of power purchased and delivered to it at the Designated Delivery Points by the Seller as satisfying the obligation of the Buyer to make such deliveries to the Buyer Participant under the Jasper/VPPA Power Sales Agreement currently reassigned to the Buyer. The Buyer Participant will enter into an agreement with the Settlement Agent, replacing the current Settlement Agent Agreement, debiting

4

October 17, 2011, though in substantially the same format and providing for payment by the Settlement Agent of the Seller's invoice for power purchased and sold by the Seller to the Buyer Participant under the Supplement Requirements Power Supply Agreement as hereby amended with waiver of Section 2.9(a) as between the Seller and the Buyer Participant.

*[Remainder of page intentionally left blank.  Signature page follows.]*

*Exhibit B*

| | |
|---|---|
| **From:** | Bruce Halstead <bhal@jonesgranger.com> |
| **Sent:** | Friday, February 15, 2013 8:32 AM |
| **To:** | Sam Rayburn Municipal Power Agency |
| **Subject:** | FW: Cambridge Project: VPPA Positions |

For your Friday reading pleasure . . .
Bruce

**From:** Rjg2432@aol.com [mailto:Rjg2432@aol.com]
**Sent:** Thursday, February 14, 2013 3:09 PM
**To:** Bruce Halstead
**Cc:** mayor@cityofvinton.com; cityclerk@cityofvinton.com
**Subject:** Cambridge Project: VPPA Positions

Bruce:

There seems to be a deal of misinterpretation and concern as to VPPA's interests under the Cambridge Project in regard to SRMPA. The following is supplied on behalf of VPPA and is intended to clarify matters:

1) VPPA has no interest in impacting SRMPA's net revenues from the Cambridge Project. Also, VPPA has no interest as to whether SRMPA continues to participate in the Cambridge Project. If SRMPA elects to continue with the Cambridge Project, it together with VPPA will be required to apply funds contained in the joint reserve account to satisfy the cost of transmission upgrades to VPPA's retail IP loads. That expenditure is now expected to be in the $5 million range, with $1 million to be charged in 2013 and $3 million to be charged in 2014.

2) VPPA is interested in separating its power supply under the S-RPSA the way it separated its interest under the RPSA. Under such separation, SRMPA would continue to receive credit for the up to 225 MWs to be delivered under the S-RPSA for the IP loads, and would be relieved of liability to EWOM for VPPA payments. SRMPA would also continue to deliver the EGSL PRA power supply to VPPA for the IP loads, though that also could be separated without impact to SRMPA net revenues should SRMPA desire. EWOM is currently having its attorneys draft proposed separation language to govern a future separation once firm transmission is established to serve VPPA's retail IP loads.

3) There are a number of significant risk factors associated with the Cambridge Project as it has evolved. Some may occur at any time, such as retail refund charges and reduction in adders to the EGSL HLFS retail rate charged by SRMPA to ETI, as well as longer term events such as the PUCT review of capacity sale arrangements involving EGSL and ETI in the next ETI rate review. Retail and wholesale refunds are largely the consequence of estimated and actual gas pricing mechanisms as calculated by EGSL within a band allowed by the FERC or the LPSC. But those EGSL pricing calculations continue to be open to challenge by counsel for the LPSC and simply the passage of a couple of years does not reflect inattention on his part, as exemplified by the refund order experienced in 2012 based on 2004 circumstances and calculations.

4) ETI typically has filed with the PUCT for rate review every three years. That would mean another two years before the next filing, and a resultant review and rate order review occurring probably in

EXHIBIT B

2015 -- after the $5 million expenditure by SRMPA/VPPA for the transmission upgrades to serve VPPA's retail IP loads. Nisco is viewed by the PUCT as an EGSL/ETI affiliate, and particular scrutiny by the PUCT is anticipated for the SRMPA/ETI Power Sales Agreement which delivers Nisco output to ETI through SRMPA. Affiliate transactions may be disallowed by the PUCT in whole or in part. Disallowance of the SRMPA/ETI Power Sales Agreement could involve up to an $8 million annual impact on the Cambridge Project, though even a $3 million disallowance would largely wipe out all Cambridge Project benefits to SRMPA and VPPA. Doug is the best one to advise concerning those risks and impacts, and certainly Entergy can confirm them, though until they occur nothing is certain or quantifiable.

5) Notably, in addition to the approximately $5.5 million contained in the joint reserve account, the S-RPSA is at risk in the circumstance of a Cambridge Project collapse. All the Cambridge Project contracts are connected so that the termination of any one arising out of the foregoing risk events would bring down all the others. Without the collapse SRMPA and VPPA are hedged from full market prices under the S-RPSA as to the municipal loads for 2021 through 2034. So EWOM's interests are diverging from the pricing set in the S-RPSA. EWOM would be eager to have the S-RPSA power back to sell at full market prices, and that power would be released from the S-RPSA in a Cambridge Project collapse. With each and all of these risks, there is simply a gamble.

6) Whereas there are more than $5.5 million of public monies in the reserve account, and VPPA has the "fall back" original Nisco Deal should the Cambridge Project be impacted, VPPA will not be responsible to SRMPA as that $5.5 million is expended on transmission upgrades for the IP loads should the Cambridge Project collapse and the expenditure be lost to SRMPA. Whether Auction Revenue Rights under MISO, surviving a Cambridge Project collapse, are a security instrument and whether they are qualified for investment of $5 million public monies under Texas law is for SRMPA's counsel to opine.

7) VPPA suggests that, if SRMPA wishes to exit the Cambridge Project and to retain its portion of the current joint reserve account balance (approximately $5 million net of VPPA monies), VPPA would be willing to take assignment of the SRMPA contracts with Entergy under and an Escrow Agreement designed to allow firm transmission upgrades to be established for service the VPPA's retail IP loads. The Escrow would facilitate an SRMPA exit without liability to VPPA, EGSL, or ETI, and in basic form would work as follows:

> The SRMPA/EGSL PRA, the SRMPA/EGSL Nisco Offtake Agreement, the SRMPA/ETI Power Sales Agreement, the Combined Coordination Agreement, the SRMPA/Kenney Settlement Agent Agreement, the SRMPA/EWOM Transmission Upgrade Agreement, the SRMPA/EGSL Transmission Agent Agreement and the J/V Trust/SRMPA Re-Assignment Agreement would be assigned without recourse to VPPA and deposited in escrow with the Settlement Agent as Escrow Agent for future delivery to VPPA. As with the escrow established for Nelson 6 when SRMPA ownership was transferred to VPPA, and delivery was suspended in escrow for five years, SRMPA would be relieved of any and all liability under the foregoing agreements. Release from escrow and delivery to VPPA of the assignment agreements would be subject to firm transmission being established for VPPA's retail IP loads, upon which event the $5 million would be released to SRMPA. The Escrow Agent would be an irrevocable appointment, with irrevocable assignment of the foregoing agreements and full authority in the Escrow Agent to act, under the terms and conditions of the escrow solely with regard to the foregoing contracts and Cambridge Project issues, on behalf of and in the capacity of SRMPA.

EGSL/ETI would have to agree to the respective assignments.

Ralph

# CIVIL CASE INFORMATION SHEET (REV. 2/13)

CAUSE NUMBER (FOR CLERK USE ONLY): _____  COURT (FOR CLERK USE ONLY): _____

STYLED _____ Sam Rayburn Municipal Power Agency vs Ralph J. Gillis, et al

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

## 1. Contact information for person completing case information sheet:

| Name: Kenneth R. Wynne | Email: kwynne@wynne-law.com | **Names of parties in case:** Plaintiff(s)/Petitioner(s): Sam Rayburn Municipal Power Agency | **Person or entity completing sheet is:** ☑ Attorney for Plaintiff/Petitioner ☐ Pro Se Plaintiff/Petitioner ☐ Title IV-D Agency ☐ Other: |
|---|---|---|---|
| Address: 1021 Main Street, Suite 1275 | Telephone: 713.227.8835 | | Additional Parties in Child Support Case: |
| City/State/Zip: Houston TX 77002 | Fax: 713.227.6205 | Defendant(s)/Respondent(s): Ralph J. Gillis, Gillis, Borchardt & Berthel, LLP, Obain Associates Limited and The Jasper/VPPA Settlement Trust | Custodial Parent: Non-Custodial Parent: |
| Signature: /s/ Kenneth R. Wynne | State Bar No: 22110000 | [Attach additional page as necessary to list all parties] | Presumed Father: |

## 2. Indicate case type, or identify the most important issue in the case (select only 1):

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-Judgment Actions (non-Title IV-D)** |
| *Debt/Contract* | ☐ Assault/Battery | ☐ Eminent Domain/ | ☐ Annulment | ☐ Enforcement |
| ☐ Consumer/DTPA | ☐ Construction | Condemnation | ☐ Declare Marriage Void | ☐ Modification—Custody |
| ☐ Debt/Contract | ☐ Defamation | ☐ Partition | *Divorce* | ☐ Modification—Other |
| ☑ Fraud/Misrepresentation | *Malpractice* | ☐ Quiet Title | ☐ With Children | **Title IV-D** |
| ☐ Other Debt/Contract | ☐ Accounting | ☐ Trespass to Try Title | ☐ No Children | ☐ Enforcement/Modification |
| | ☐ Legal | ☐ Other Property: | | ☐ Paternity |
| *Foreclosure* | ☐ Medical | | | ☐ Reciprocals (UIFSA) |
| ☐ Home Equity—Expedited | ☐ Other Professional | **Related to Criminal Matters** | | ☐ Support Order |
| ☐ Other Foreclosure | Liability: | ☐ Expunction | **Other Family Law** | |
| ☐ Franchise | | ☐ Judgment Nisi | ☐ Enforce Foreign | **Parent-Child Relationship** |
| ☐ Insurance | ☐ Motor Vehicle Accident | ☐ Non-Disclosure | Judgment | ☐ Adoption/Adoption with |
| ☐ Landlord/Tenant | ☐ Premises | ☐ Seizure/Forfeiture | ☐ Habeas Corpus | Termination |
| ☐ Non-Competition | *Product Liability* | ☐ Writ of Habeas Corpus— | ☐ Name Change | ☐ Child Protection |
| ☐ Partnership | ☐ Asbestos/Silica | Pre-indictment | ☐ Protective Order | ☐ Child Support |
| ☐ Other Contract: | ☐ Other Product Liability | ☐ Other: | ☐ Removal of Disabilities | ☐ Custody or Visitation |
| | List Product: | | of Minority | ☐ Gestational Parenting |
| | | | ☐ Other: | ☐ Grandparent Access |
| | ☐ Other Injury or Damage: | | | ☐ Parentage/Paternity |
| | | | | ☐ Termination of Parental Rights |
| **Employment** | **Other Civil** | | | ☐ Other Parent-Child: |
| ☐ Discrimination | ☐ Administrative Appeal | ☐ Lawyer Discipline | | |
| ☐ Retaliation | ☐ Antitrust/Unfair | ☐ Perpetuate Testimony | | |
| ☐ Termination | Competition | ☐ Securities/Stock | | |
| ☐ Workers' Compensation | ☐ Code Violations | ☐ Tortious Interference | | |
| ☐ Other Employment: | ☐ Foreign Judgment | ☐ Other: | | |
| | ☐ Intellectual Property | | | |

| Tax | | Probate & Mental Health | |
|---|---|---|---|
| ☐ Tax Appraisal | *Probate/Wills/Intestate Administration* | ☐ Guardianship—Adult | |
| ☐ Tax Delinquency | ☐ Dependent Administration | ☐ Guardianship—Minor | |
| ☐ Other Tax | ☐ Independent Administration | ☐ Mental Health | |
| | ☐ Other Estate Proceedings | ☐ Other: | |

## 3. Indicate procedure or remedy, if applicable (may select more than 1):

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court | ☐ Declaratory Judgment | ☐ Prejudgment Remedy |
| ☐ Arbitration-related | ☐ Garnishment | ☐ Protective Order |
| ☐ Attachment | ☐ Interpleader | ☐ Receiver |
| ☐ Bill of Review | ☐ License | ☐ Sequestration |
| ☐ Certiorari | ☐ Mandamus | ☐ Temporary Restraining Order/Injunction |
| ☐ Class Action | ☐ Post-judgment | ☐ Turnover |

## 4. Indicate damages sought (do not select if it is a family law case):

☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100,000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☑ Over $1,000,000

**FILED**
11/21/2014 9:42:12 AM
Donna G. Brown
**District Clerk**
Liberty County, TX

Joy Parker

**CLERK OF THE COURT**
Donna G. Brown, District Clerk
1923 Sam Houston, Room 115
Liberty, Texas 77575

**ATTORNEY FOR PLAINTIFF OR PLAINTIFF'(S)**
Kenneth R. Wayne
1021 Main Street, Suite 1275
One City Centre
Houston, Texas 77002

**NOTICE TO DEFENDANT:** "You have been sued.  You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

THE STATE OF TEXAS

TO: RALPH J. GILLIS, Respondent, Greetings;

You are hereby commanded to appear by filing a written answer to the Petitioner's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 253RD JUDICIAL DISTRICT COURT of Liberty County, Texas at the Court House of said County in Liberty, Texas.

Said Petitioner's Petition was filed in said court on the 22ND day of October, 2014, in this cause, Numbered CV1408743 on the docket of said court, and styled, SAM RAYBURN MUNICIPAL POWER , Plaintiff vs. RALPH J GILLIS , BORCHARDT BARTHEL LLP, OBAIN ASSOCIATES LIMITED AND THE JASPER/VPPA SETTLEMENT TRUST, Defendant.

The nature of Petitioner's demand is fully shown by a true and correct copy of Petitioner's Original Petition, accompanying this citation and made a part hereof.

The Officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Liberty, Texas, this the 30th day of October, 2014.

(SEAL)                    Attest _Donna G. Brown_, Clerk, District Court
                          Donna G. Brown, District Clerk
                          Liberty County, Texas

                          By _Belinda Glover_, Deputy
                          Belinda Glover, Deputy

## SHERIFF'S RETURN

Came to hand on _5th_ day of _November_ 2014 , at _11:00_ o'clock
_a_ . M., and executed in _Navarro_ County, Texas by delivering to each of the
within-named _Ralph J. Collis_ , in person, a true copy of
this Citation, having first endorsed thereon the date of delivery, together with the accompanying
true and correct copy of the Plaintiff's Petition, at the following times and places, to wit:

| Name | Date | | | Time | | | Place, and Course and Distance From Court House |
|------|------|-----|------|------|-----|------|------------------------|
| | Month | Day | Year | Hour | Min. | A.M. | |
| Ralph J. Collis | 11 | 6 | 2014 | 12 | 36 | | 160 Old Derby Rd., Hoaghton, MA. |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

And not executed as to the Respondent, _____ the diligence
used         in         finding         said         Respondent,         being:
_____ and the cause of
failure to execute this process is: _____
and the information received as to the whereabouts of the said Respondent, being:
_____

FEES — Serving _____ Copy _____ $ ___ . ___
          Total $ _45_ . _00_

_____ Sheriff/Constable, Precinct ___
_____ County, Texas  _Massachusetts_
By _____
          Deputy

## CERTIFICATE OF DELIVERY

I, do hereby certify that I delivered to _Ralph J. Collis_ , Defendant on the _6th_ day _November_
201 _4_ , at _12:36_ o'clock _P_ .M. a copy of this instrument.

_____ Sheriff/Constable,
Precinct # _010_                          _Constable_
By _Harrell Smallwood_          Deputy.

FILED
11/21/2014 9:39:24 AM
Donna G. Brown
District Clerk
Liberty County, TX

Joy Parker

**CLERK OF THE COURT**
Donna G. Brown, District Clerk
1923 Sam Houston, Room 115
Liberty, Texas 77575

**ATTORNEY FOR PLAINTIFF OR PLAINTIFF'(S)**
Kenneth R. Wayne
1021 Main Street, Suite 1275
One City Centre
Houston, Texas 77002

**NOTICE TO DEFENDANT: "You have been sued.  You may employ an attorney.
If you or your attorney do not file a written answer with the clerk who issued this citation
by 10:00 a.m. on the Monday next following the expiration of twenty days after you were
served this citation and petition, a default judgment may be taken against you."**

THE STATE OF TEXAS

TO: OBAIN ASSOCIATES LIMITED, Respondent, Greetings;

You are hereby commanded to appear by filing a written answer to the Petitioner's
Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty
days after the date of service of this citation before the Honorable **253RD JUDICIAL
DISTRICT COURT** of Liberty County, Texas at the Court House of said County in Liberty,
Texas.

Said Petitioner's Petition was filed in said court on the 22ND day of October, 2014, in this
cause, Numbered CV1408743 on the docket of said court, and styled, SAM RAYBURN
MUNICIPAL POWER , Plaintiff vs. RALPH J GILLIS , BORCHARDT BARTHEL LLP,
OBAIN ASSOCIATES LIMITED AND THE JASPER/VPPA SETTLEMENT TRUST,
Defendant.

The nature of Petitioner's demand is fully shown by a true and correct copy of
Petitioner's Original Petition, accompanying this citation and made a part hereof.

The Officer executing this writ shall promptly serve the same according to requirements
of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Liberty, Texas, this the 30th
day of October, 2014.

(SEAL)

Attest _Donna G. Brown_ Clerk, District Court
Donna G. Brown, District Clerk
Liberty County, Texas

By _Belinda Glover_ , Deputy
Belinda Glover, Deputy

## SHERIFF'S RETURN

Came to hand on _5th_ day of _November_, 201_4_, at _11:00_ o'clock _A_. M., and executed in _Plymouth_ County, Texas by delivering to each of the within-named _OBRIEN Associates Limited_ _Mass_ in person, a true copy of this Citation, having first endorsed thereon the date of delivery, together with the accompanying true and correct copy of the Plaintiff's Petition, at the following times and places, to wit:

| Name | Date | | | Time | | | Place, and Course and Distance From Court House |
|------|------|-----|------|------|-----|----|------------------------------------------|
|      | Month | Day | Year | Hour | Min. | ...M. | |
| Ralph J Collins | 11 | 6 | 2014 | 12 | 26 | PM | 160 old Derby Rd, Hingham, Mass |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

And not executed as to the Respondent, _____ the diligence used in finding said Respondent, being: _____ and the cause of failure to execute this process is: _____ and the information received as to the whereabouts of the said Respondent, being: _____

FEES — Serving _____ Copy _____ $ _____
Total $ _45.00_

_____ Sheriff/Constable, Precinct
# _____
_Harold Smithson_ County, Texas _Massachusetts_
By _____
Deputy

## CERTIFICATE OF DELIVERY

I, do hereby certify that I delivered to _OBrien Associates Limited_ Defendant on the _6th_ day _December_, 201_4_, at _12:26_ o'clock _P_.M. a copy of this instrument.

_____ Sheriff/Constable,
Precinct # _____
By _Harold Smithson_ Deputy

**FILED**
11/21/2014 9:44:49 AM
Donna G. Brown
District Clerk
Liberty County, TX

Joy Parker

**CLERK OF THE COURT**
Donna G. Brown, District Clerk
1923 Sam Houston, Room 115
Liberty, Texas 77575

**ATTORNEY FOR PLAINTIFF OR PLAINTIFF'(S)**
Kenneth R. Wayne
1021 Main Street, Suite 1275
One City Centre
Houston, Texas 77002

**NOTICE TO DEFENDANT:** "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

THE STATE OF TEXAS

TO: GILLIS, BORCHARDT & BARTHEL, LLP, Respondent, Greetings;

You are hereby commanded to appear by filing a written answer to the Petitioner's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable **253RD JUDICIAL DISTRICT COURT** of Liberty County, Texas at the Court House of said County in Liberty, Texas.

Said Petitioner's Petition was filed in said court on the 22ND day of October, 2014, in this cause, Numbered CV1408743 on the docket of said court, and styled, SAM RAYBURN MUNICIPAL POWER , Plaintiff vs. RALPH J GILLIS , BORCHARDT BARTHEL LLP, OBAIN ASSOCIATES LIMITED AND THE JASPER/VPPA SETTLEMENT TRUST, Defendant.

The nature of Petitioner's demand is fully shown by a true and correct copy of Petitioner's Original Petition, accompanying this citation and made a part hereof.

The Officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Liberty, Texas, this the 30th day of October, 2014.

(SEAL)     Attest *Donna G. Brown*    Clerk, District Court
Donna G. Brown, District Clerk
Liberty County, Texas

By *Belinda Glover*    , Deputy
Belinda Glover, Deputy

## SHERIFF'S RETURN

Came to hand on __5th__ day of __November__ __,__ 2014 , at __11:00__ o'clock __P__. M., and executed in __Brazoria__ County, Texas by delivering to each of the within-named __Collins, Kimball & Benfield, LLC__ , in person, a true copy of this Citation, having first endorsed thereon the date of delivery, together with the accompanying true and correct copy of the Plaintiff's Petition, at the following times and places, to wit:

| Name | Date | | | Time | | | Place, and Course and Distance From Court House |
|---|---|---|---|---|---|---|---|
| | Month | Day | Year | Hour | Min. | ...M. | |
| Ralph J. Collins | 11 | 6 | 2014 | 12 | 26 | PM | 160 Old Ozdy Road, Angleton Tx |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

And not executed as to the Respondent, _____ the diligence used        in        finding        said        Respondent,        being: _____ and the cause of failure to execute this process is: _____ and the information received as to the whereabouts of the said Respondent, being: _____

FEES — Serving _____ Copy _____ $ _____
        Total $ __45. 00__

_____ Sheriff/Constable, Precinct
# __1014__        Constable
_____ County, Texas Massachusetts
By _____
        Deputy

## CERTIFICATE OF DELIVERY

I, do hereby certify that I delivered to __Collins, Kimball & Benfield__ Defendant on the __6th__ day __November__ 201 _4_ , at __12:26__ o'clock __P__ .M. a copy of this instrument.

_____ Sheriff/Constable,
Precinct # __1014__
By _____ Deputy  Constable

**FILED**
11/21/2014 9:47:53 AM
Donna G. Brown
**District Clerk**
Liberty County, TX

Joy Parker

**CLERK OF THE COURT**
Donna G. Brown, District Clerk
1923 Sam Houston, Room 115
Liberty, Texas 77575

**ATTORNEY FOR PLAINTIFF OR PLAINTIFF'(S)**
Kenneth R. Wayne
1021 Main Street, Suite 1275
One City Centre
Houston, Texas 77002

**NOTICE TO DEFENDANT:** "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

THE STATE OF TEXAS

TO: THE JASPER/VPPA SETTLEMENT TRUST, Respondent, Greetings;

You are hereby commanded to appear by filing a written answer to the Petitioner's Original Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable 253RD JUDICIAL DISTRICT COURT of Liberty County, Texas at the Court House of said County in Liberty, Texas.

Said Petitioner's Petition was filed in said court on the 22ND day of October, 2014, in this cause, Numbered CV1408743 on the docket of said court, and styled, SAM RAYBURN MUNICIPAL POWER , Plaintiff vs. RALPH J GILLIS , BORCHARDT BARTHEL LLP, OBAIN ASSOCIATES LIMITED AND THE JASPER/VPPA SETTLEMENT TRUST, Defendant.

The nature of Petitioner's demand is fully shown by a true and correct copy of Petitioner's Original Petition, accompanying this citation and made a part hereof.

The Officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at Liberty, Texas, this the 30th day of October, 2014.

(SEAL)         Attest  *Donna G. Brown* , Clerk, District Court
                         Donna G. Brown, District Clerk
                         Liberty County, Texas


               By  *Belinda Glover* , Deputy
                         Belinda Glover, Deputy

## SHERIFF'S RETURN

Came to hand on _____ day of _____, 201___, at _____ o'clock
____. M., and executed in _____ County, Texas by delivering to each of the
within-named _____, in person, a true copy of
this Citation, having first endorsed thereon the date of delivery, together with the accompanying
true and correct copy of the Plaintiff's Petition, at the following times and places, to wit:

| Name | Date | | | Time | | | Place, and Course and Distance From Court House |
|------|------|-----|------|------|-----|-----|---|
|      | Month | Day | Year | Hour | Min. | ....M. | |
|      |      |     |      |      |     |     | |
|      |      |     |      |      |     |     | |
|      |      |     |      |      |     |     | |
|      |      |     |      |      |     |     | |
|      |      |     |      |      |     |     | |

And not executed as to the Respondent, _____ the diligence
used       in       finding       said       Respondent,       being:
_____ and the cause of
failure to execute this process is: _____
and the information received as to the whereabouts of the said Respondent, being:
_____

FEES — Serving _____ Copy _____ $ _____.____
          Total $_____.____

_____Sheriff/Constable, Precinct
# ____
_____County, Texas
By _____,
          Deputy

## CERTIFICATE OF DELIVERY

I, do hereby certify that I delivered to _____, Defendant on the _____ day _____,
201____, at _____ o'clock ___.M. a copy of this instrument.

_____Sheriff/Constable,
Precinct # _____
By_____, Deputy



**WYNNE & WYNNE**
ATTORNEYS AT LAW

1021 MAIN STREET, SUITE 1275
ONE CITY CENTRE
HOUSTON, TEXAS 77002
TELEPHONE 713.227.8835
TELECOPIER 713.227.6205
www.wynne-law.com

November 3, 2014

Mr. Terry Fitzgerald                          *Via Hand Delivery*
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana, Suite 500
Pennzoil Place
Houston TX 77002

    Re:    Cause No. CV1408743; Sam Rayburn Municipal Power Agency vs Ralph J. Gillis, et al; In the 253rd Judicial District Court of Liberty County, Texas

Dear Terry:

    Per our discussion, here's the Citation for the Jasper/VPPA Settlement Trust in the referenced matter including the Plaintiff's Original Petition. Kindly confirm receipt and that you're accepting service for that party. Thanks.

Very truly yours,

Kenneth R. Wynne
kwynne@wynne-law.com

Enclosure (as stated)
i564

ACCEPTANCE OF SERVICE OF SUMMONS
ON BEHALF OF JASPER/VPPA SETTLEMENT TRUST

Terry Fitzgerald, Counsel for Jasper/VPPA Settlement Trust

FILED
1/12/2015 12:18:55 PM
Donna G. Brow
District Clerl
Liberty County, T
Joy Parker

**CAUSE NO. CV1408743**

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| V. | § § | LIBERTY COUNTY, TEXAS |
| RALPH J. GILLIS, GILLIS, BORCHARDT & BARTHEL LLP, OBAIN ASSOCIATES LIMITED, AND JASPER/VPPA SETTLEMENT TRUST | § § § § | 253RD JUDICIAL DISTRICT |

### JASPER/VPPA SETTLEMENT TRUST'S
### MOTION TO TRANSFER VENUE TO MONTGOMERY COUNTY, TEXAS

TO THE HONORABLE STATE DISTRICT JUDGE:

COMES NOW, Defendant Jasper/VPPA Settlement Trust ("Trust") and pursuant to Section 115.002 of the Texas Property Code, files its Motion to Transfer Venue to Montgomery County, Texas; and hereby moves transfer of this case to Montgomery County, Texas. In support of its Motion, the Trust would show the Court that venue is mandatory in Montgomery County, Texas as follows:

### I.
### TRUSTEE IS LOCATED AND SITUS OF ADMINISTRATION OF TRUST
### IS MONTGOMERY COUNTY, TEXAS

The Plaintiff, in its Original Petition, alleges and states:

4.   The Jasper/VPPA Settlement Trust (the "J/V Trust") is a trust created and existing under the laws of Massachusetts for the benefit, and acting under the control, of Obain (through Gillis), the City of Jasper ("Jasper") and the Vinton Public Power Authority ("VPPA"). The Trust's registered office and principal place of business are at 160 Old Derby Street, Suite 227, Hingham, MA 02043, the same address as the Gillis Defendants, but it can be served through James F. Kenney as its Trustee at 66 Lyric Arbor Circle, The Woodlands, Texas 77381.

Solely for the purposes of this Motion, this paragraph 4 at page 2 of Plaintiff's Original Petition will be accepted as correct.

Attached hereto is an Affidavit of James Kenney, the Trustee of the Trust.  The Affidavit states as follows:

1) The Trustee is located in Montgomery County, Texas and this has been the case since the Trust was formed in 2010;

2) The "Situs of Administration" or place where the Trust operates for dealing with the Beneficiaries of the Trust is Montgomery County, Texas.

## III.
## TEXAS PROPERTY CODE SECTION 115.02

The Texas Property Code sets out or establishes the mandatory venue for a Trust.  The Code states in relevant part:

(a) The venue of an action under Section 115.001 of this Act is determined according to this section.

(b) If there is a single, non-corporate trustee, an action shall be brought in the county in which:

(1) the trustee resides or has resided at any time during the four-year period preceding the date the action is filed; or

(2) the situs of administration of the trust is maintained or has been maintained at any time during the four-year period preceding the date the action is filed.

* * *

(f) For the purposes of this section:

* * *

(3) "Situs of administration" means the location in this state where the trustee maintains the office that is primarily response for dealing with the settlor and beneficiaries of the trust.  The situs of administration may also be but is not necessarily the same as the principal office of a corporate trustee.

There is no dispute the Trustee resides in The Woodlands, Montgomery County, Texas.

*See* the allegations above as plead in Plaintiff's Original Petition and the Affidavit of James Kenney (attached hereto as Exhibit A).

WHEREFORE, Defendant, Jasper/VPPA Settlement Trust, requests the Court to transfer this case to a District Court in Montgomery County, Texas at this time; and for such other and further relief to which the Trust is justly entitled.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By:___ /s/ Terry Fitzgerald_____
Terry Fitzgerald
State Bar No. 07089025
Federal ID No. 15163
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, TX  77002-2716
Telephone: (713) 224-8380
Facsimile:  (713) 225-9545
terry.fitzgerald@roystonlaw.com

**ATTORNEY FOR DEFENDANT,
JASPER/VPPA SETTLEMENT TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January 2015, a true and correct copy of Defendant Jasper/VPPA Settlement Trust's Motion to Transfer Venue was served on all counsel of record pursuant to Rule 21a of Texas Rules of Civil Procedure.

Kenneth R. Wynne
*Attorney-in-Charge*
David E. Wynne
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002

E. R. Norwood
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX  77575

*Attorneys for Plaintiff*

_____ /s/ Terry Fitzgerald_____
Terry Fitzgerald

## CAUSE NO. CV1408743

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| V. | § § | LIBERTY COUNTY, TEXAS |
| RALPH J. GILLIS, GILLIS, BORCHARDT & BARTHEL LLP, OBAIN ASSOCIATES LIMITED, AND JASPER/VPPA SETTLEMENT TRUST | § § § § § | 253RD JUDICIAL DISTRICT |

| | | |
|---|---|---|
| STATE OF TEXAS | § § | **AFFIDAVIT OF JAMES F. KENNEY** |
| COUNTY OF MONTGOMERY | § | |

**BEFORE ME**, the undersigned authority, personally appeared JAMES F. KENNEY, who after being duly sworn upon his oath, states:

1.     "My name is James F. Kenney. I am over the age of 18 and am competent to testify. I have personal knowledge of the facts contained in this Affidavit. The following statements set out in paragraphs 2 through 8 are true and correct.

2.     I am a Texas resident at all times relevant hereto. My current residence is in The Woodlands, Montgomery County, Texas, specifically 66 Lyric Arbor Circle, where I have lived continuously since 1997.

3.     I am the Trustee of the Jasper/VPPA Settlement Trust ("Trust") established to distribute funds deposited by certain purchasers of power for distribution to certain suppliers of power and certain Beneficiaries under a series of power contracts known jointly as the "Cambridge Project." I have been the Trustee since it was established in April 2010. The Trust documents to set up the Trust were filed in Massachusetts.

EXHIBIT A

4.      There are three equal Beneficiaries of the Trust.  They are the following entities:

    a.      City of Jasper, Texas;

    b.      Vinton Public Power Authority (VPPA); and

    c.      Obain Associates Limited.

5.      The first activities of the Trust began in December 2011.  Power transactions were initiated and the money was flowing through the Trust by about January 2012.

6.      The Trust is merely a conduit for the flow of funds.  The Trust conducts no business other than being part of the arrangement of collecting and distributing monies owed by the parties in accordance with the various contracts which make up the "Cambridge Project." The Trust is a paper entity in that it owns no power plants, transmission lines or related assets.

7.      My work as Trustee is out of my office in my residence as set out in paragraph 2 above.

FURTHER, AFFIANT SAYETH NOT.

JAMES F. KENNEY

SUBSCRIBED AND SWORN TO BEFORE ME, on this the 21st day of November 2014, to certify which witness my hand and official seal.

Notary Public, In and for the State of Texas

CHARLES GONZALEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. May 13, 2018

## CAUSE NO. CV1408743

| | | |
|---|---|---|
| **SAM RAYBURN MUNICIPAL**<br>**POWER AGENCY** | §<br>§<br>§ | **IN THE DISTRICT COURT OF** |
| *Plaintiff* | §<br>§ | |
| **V.** | §<br>§ | **LIBERTY COUNTY, TEXAS** |
| **RALPH J. GILLIS,**<br>**GILLIS, BORCHARDT & BARTHEL LLP,**<br>**OBAIN ASSOCIATES LIMITED, AND**<br>**JASPER/VPPA SETTLEMENT TRUST** | §<br>§<br>§<br>§ | **253RD JUDICIAL DISTRICT** |

## ORDER GRANTING MOTION TO TRANSFER VENUE

On this day, came on to be heard Defendant Jasper/VPPA Settlement Trust's Motion to Transfer Venue to Montgomery County, Texas. The Court, having heard arguments from counsel and reviewed the pleadings on file, is of the opinion that said Motion should be GRANTED in its entirety. It is therefore

ORDERED this case be transferred from the 253rd Judicial District Court of Liberty County, Texas to a District Court of Montgomery County, Texas. A copy of the file in this matter shall be sent to the Montgomery County District Clerk for filing. Cost of the transfer shall be taxed as Court costs.

EXECUTED this _____ day of _____, 2015.

_____
JUDGE PRESIDING

FILED
1/12/2015 2:08:10 PM
Donna G. Brow
District Clerk
Liberty County, T.
Rebecca Ross

**CAUSE NO. CV-1408743**

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER | § | IN THE DISTRICT COURT FOR |
| AGENCY | § | |
|     *Plaintiff,* | § | |
| | § | |
| V. | § | LIBERTY COUNTY, TEXAS |
| | § | |
| RALPH J. GILLIS, GILLIS | § | |
| BORCHARDT & BARTHEL LLP, | § | |
| OBAIN ASSOCIATES LIMITED AND | § | |
| THE JASPER/VPPA SETTLEMENT | § | |
| TRUST. | § | 253RD JUDICIAL DISTRICT |
|     *Defendant.* | § | |

## SPECIAL APPEARANCE AND OBJECTION TO JURISDICTION BY DEFENDANT OBAIN ASSOCIATES LIMITED

TO THE HONORABLE COURT:

    Obain Associates Limited ("Obain") makes this special appearance under the authority of Texas Rule of Civil Procedure 120a for the purpose of objecting to the jurisdiction of the court over its person and property and as grounds shows the following:

### INTRODUCTIONS

1.    Obain Associates Limited ("Obain") is a Massachusetts business corporation with principal offices at Suite 227, 160 Old Derby Street, Hingham, MA 02043. Obain is not amenable to process issued by the courts of Texas. Plaintiffs have failed to plead any basis for general jurisdiction over Obain, and the factual allegations as to Obain fail to allege any tortious conduct by Obain in the State of Texas sufficient to justify specific jurisdiction. Obain never had any contact with the Plaintiff.

### EVIDENCE IN SUPPORT OF OBJECTION

2.    Fifty percent (100%) of the outstanding common stock of Obain is owned by the Jane C.

1

Gillis Living Trust, dated April 22, 2003, and the other 50% is owned by the Ralph J. Gillis Living Trust, dated April 22, 2003. Jane C. Gillis and Ralph J. Gillis are the beneficiaries of these trusts and are the officers and directors of Obain. They do not personally own any property in the State of Texas. Obain does not own any property in the State of Texas. Obain does not regularly conduct business in the State of Texas. Prior to this lawsuit and a companion case in the United States District Court for the Eastern District of Texas, Obain has never been an individual party to a lawsuit in the State of Texas. Ralph J. Gillis is President of Obain. Obain's principal place of business and only office is Suite 227, 160 Old Derby Street, Hingham, Massachusetts 02043.

3.      Obain is not a party with to any contracts with the Plaintiff in this case, Sam Rayburn Municipal Power Agency. Obain undertook by contract with the City of Jasper to develop and negotiate the NISCO Deal in 2001. Obain conducted the negotiations regarding the Nisco Deal and the succeeding Cambridge Project by telephone, facsimile, mail or courier with Energy Gulf States Louisiana Inc. in New Orleans, Louisiana and Washington D.C., except for contract executions in connection with the Cambridge Project in 2010 and 2011. There may have been one or two meetings between Obain representatives and EGSL in The Woodlands in connection with the negotiations of the Cambridge Project, but Obain never met with representatives of Sam Rayburn Municipal Power Agency for such negotiations and no such negotiations occurred in Liberty County, Texas. Sam Rayburn Municipal Power Agency voted not to participate in the NISCO Deal on December 22, 1998, before Obain was created on April 18, 2000.

4.      Obain has traditionally held its annual meeting of shareholders and its regular meeting of Directors in New Orleans, Louisiana.

2

5.      Obain has no other contacts with Texas.  Obain is not involved with any parties in Texas other than the City of Jasper.  All of Obain's bank accounts are in Massachusetts and all fees are paid by the Jasper/VPPA Settlement Trust from its bank accounts in the State of Massachusetts to Obain's bank accounts in the State of Massachusetts.  Obain is the sole beneficiary of the Jasper Trust in Jasper, Texas, and Ralph J. Gillis is the sole Trustee of that Trust.  The Jasper Trust received and distributed Obain's fees for the NISCO Deal which was replaced by the Cambridge Project in late 2011.  The Jasper Trust has an account in Jasper Texas that has a balance of $500.  No deposits or withdrawals have been made to that account since December, 2011.

## ARGUMENT & AUTHORITIES

**A.      Plaintiffs have failed to plead sufficient jurisdictional allegations.**

6.      A nonresident defendant's contacts with a forum may give rise to general or specific jurisdiction. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575-76 (Tex. 2007). "Continuous and systematic contacts with a state give rise to general jurisdiction, while specific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). Plaintiffs do not assert any allegations to support general jurisdiction over Obain, but even if they did, Obain is domiciled and has its only offices in Massachusetts.  Obain has no continuous or systematic contacts with Texas.

7.      Although not specified, presumably Plaintiff relies on specific jurisdiction, which focuses on the relationship between Obain, Texas, and the litigation to determine whether the claim arises from the Texas contacts. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658

3

(Tex. 2010). Texas Civil Practice & Remedies Code § 17.042 requires that the non-resident defendant commit a tort "in whole or in part" in Texas. Isolated trips to Texas do not support jurisdiction where no tortious acts occurred in Texas. *See Kelly*, 301 S.W.3d at 659-61 (holding that "several trips to Houston to oversee the project" in dispute were insufficient for jurisdiction because no torts occurred in Texas).

8.     The plaintiff must establish specific jurisdiction for each claim against each defendant, requiring an analysis of jurisdictional contacts on a claim-by-claim and defendant-by-defendant basis. *Moncrief*, 414 S.W.3d at 150. "[T]he plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Kelly*, 301 S.W.3d at 658. "If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction." *Id*. at 658-59.

9.     Obain is domiciled in Massachusetts, not Texas. Plaintiffs' Original Petition does not assert any specific jurisdictional allegations but merely alleges that "Each of the Defendants [which includes Obain] has a substantial connection with Texas arising out of their actions and conduct purposefully directed toward Texas, and this cause of action arises out of and relates to their contacts with Texas. Defendants have purposefully availed themselves of the laws of the State of Texas and have established 'minimum contacts' within Texas. Exercising personal jurisdiction over the Defendants in the matter would not offend traditional notions of fair play and substantial justice." These allegations do not state what if anything Obain has done to make itself subject to the jurisdiction of Texas courts. Obain has negated jurisdiction by showing that it is domiciled in Massachusetts and has no contacts with the state of Texas other than its contractual obligation with the City of Jasper and Vinton Public Power Authority ("VPPA"),

which were not negotiated in Texas and are to be performed outside the State of Texas by making payments to Obain at its Massachusetts office and into its bank accounts in the State of Massachusetts.   However, even if this Court liberally construes Plaintiffs' factual allegations to constitute jurisdictional allegations, the allegations are factually and legally insufficient to confer personal jurisdiction, and the claims do not arise from Obain's contacts with Texas as discussed below.

**B.**   **Plaintiff does not allege that Obain has had any telephone or email correspondence with Plaintiff.**

**C.**   **Plaintiff does not allege that Obain ever contacted Plaintiff in Texas.**

**D.**   **Plaintiff does not allege any basis for a fiduciary duty of Obain to Plaintiff.**

**E.**   **Plaintiff's allegations that Gillis somehow used Obain to conceal information from Plaintiff would only support a cause of action against Gillis, not Obain.**

10.   While Gillis's ownership and control of Obain is undisputed that does not mean that Obain is subject to jurisdiction in Texas just because of Gillis's alleged professional misconduct. Plaintiff does not allege that it had any professional relationship with Obain and in fact alleges that it did not even know of Obain's existence when Gillis's conduct that it complains of occurred.

### Traditional Notions of Fair Play and Substantial Justice.

11.   Exercise of personal jurisdiction over a nonresident defendant will fail to satisfy due process requirements if assertion of jurisdiction offends traditional notions of fair play and substantial justice. *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 232 (Tex. 1991).   Here the Plaintiff has not alleged any action of Obain that occurred in Texas or that Obain did anything to Plaintiff or failed to do anything for Plaintiff that it was obligated to do for Plaintiff in Texas or refrain from doing in Texas.

5

## VERIFICATION

12.    Obain attaches the Declaration of Ralph J. Gillis as Exhibit A hereto, which is incorporated herein by reference for purposes of verifying the facts set forth in this Special Appearance and Objection to Personal Jurisdiction.

## PRAYER

13.    FOR THE FOREGOING REASONS, Defendant Obain Associates Limited respectfully requests a hearing on this Special Appearance, that its Special Appearance be granted, that Plaintiffs' claims against it be dismissed with prejudice, that Plaintiffs recover nothing from it, and all other relief at law or in equity which it may show itself justly entitled to receive.

Respectfully submitted,
**ORGAIN BELL & TUCKER, LLP**
*/s/ Michael J. Truncale*
Michael J. Truncale
State Bar No. 20258125
mjt@obt.com
J. Hoke Peacock II
State Bar No. 15678000
jhp@obt.com
470 Orleans
Beaumont, TX  77701
Telephone:  (409) 838-6412
Facsimile:  (409) 838-6959

**ATTORNEYS FOR DEFENDANTS,
RALPH J. GILLIS AND GILLIS, BORCHARDT
& BARTHEL LLP, AND OBAIN ASSOCIATES
LIMITED**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record on this the 12th day of January, 2015 as listed.

*VIA E-FILE*

Kenneth R. Wynne
kwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main St., Suite 1275
One City Centre
Houston, TX 77002

**Of Counsel:**

David E. Wynne
dwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main St., Suite 1275
One City Centre
Houston, TX 77002

**- and –**

Hubert Oxford, III
hubertoxford@benoxford.com
BENCKENSTEIN & OXFORD L.L.P.
3535 Calder, Suite 300
Beaumont, TX 77706

E. R. Norwood
enorwood@ednorwoodlaw.com
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX  77575

Terry Fitzgerald
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana, Suite 500
Pennzoil Place
Houston TX 77002

*/s/ Michael J. Truncale*
Michael J. Truncale

# EXHIBIT A

CAUSE NO. CV-1408743

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT FOR |
| *Plaintiff,* | § | |
| V. | § § | LIBERTY COUNTY, TEXAS |
| RALPH J. GILLIS, GILLIS BORCHARDT & BARTHEL LLP, OBAIN ASSOCIATES LIMITED AND THE JASPER/VPPA SETTLEMENT TRUST. | § § § § § | |
| *Defendant.* | § § | 253RD JUDICIAL DISTRICT |

## WRITTEN DECLARATION OF RALPH J. GILLIS

1.      My name is Ralph Joseph Gillis.  I am over eighteen (18) years of age, and fully capable of making this Declaration.  The facts stated in this Declaration are true and correct, and are within my personal knowledge.

2.      I submit this Declaration in support of Obain Associates Limited's ("Obain") Special Appearance filed in response to the Original Petition filed by Plaintiff, Sam Rayburn Municipal Power Agency.  I have reviewed the Special Appearance by Obain, and all facts stated there are true and correct.

3.      I am a resident of the State of Massachusetts.  I have never been a resident of the State of Texas.  Fifty percent (50%) of the outstanding common stock of Obain is owned by the Jane C. Gillis Living Trust, dated April 22, 2003, and the other 50% is owned by the Ralph J. Gillis Living Trust, dated April 22, 2003.  My wife and I are the beneficiaries of these trusts and are the officers and directors of Obain.  We do not personally own any property in the State of Texas.  Obain does not own any property in the State of Texas.  Obain and I do not regularly conduct business in the State of Texas.  Prior to this lawsuit and a companion case in the United States District Court for the Eastern District of Texas, I have never been an individual party to a lawsuit in the State of Texas.

1

4.    I am President of Obain, which is a Massachusetts Business Corporation established under Massachusetts general laws, Chapter 156B, by Articles of Organization dated April 18, 2000. Obain's principal place of business and only office is Suite 227, 160 Old Derby Street, Hingham, Massachusetts 02043.

5.    Obain is not a party to any contracts with the Plaintiff in this case, Sam Rayburn Municipal Power Agency.  Obain undertook by contract with the City of Jasper to develop and negotiate the Nisco Deal in 2001.   Obain conducted the negotiations regarding Nisco Deal and the succeeding Cambridge Project by telephone, facsimile, mail or courier with Energy Gulf States Louisiana Inc. in New Orleans, Louisiana and Washington D.C., except for contract executions in connection with the Cambridge Project in 2010 and 2011.  There may have been one or two meetings between Obain representatives and EGSL in The Woodlands in connection with the negotiations of the Cambridge Project, but Obain never met with representatives of Sam Rayburn Municipal Power Agency for such negotiations.  Sam Rayburn Municipal Power Agency voted not to participate in  the NISCO Deal on December 22, 1998, before Obain was created on April 18, 2000.

6.    Obain has traditionally held its annual meeting of shareholders and its regular meeting of Directors in New Orleans, Louisiana.

7.    Obain has no other contacts with Texas.  Obain is not involved with any parties in Texas other than the City of Jasper.  All of Obain's bank accounts are in Massachusetts and all fees are paid by the Jasper/VPPA Settlement Trust from its bank accounts in the State of Massachusetts to Obain's bank accounts in the State of Massachusetts.  Obain is the sole beneficiary of the Jasper Trust in Jasper, Texas, and I am the sole Trustee of that Trust.  The Jasper Trust received and distributed Obain's fees for the NISCO Deal which was replaced by the Cambridge Project in late 2011.  The Jasper Trust has an account in Jasper Texas that has a balance of $500.  No deposits or withdrawals have been made to that account since December, 2011.

2

8.      Requiring Obain to defend this case in Texas would be unfair and would not promote the interest of justice.

9.      My name is Ralph Joseph Gillis, my date of birth is July 15, 1947, and my address is 160 Old Derby Street, Ste. 227, Hingham, Massachusetts 02043, USA. I declare under penalty of perjury that the foregoing statements are true and correct:

10.     Executed in Plymouth County Massachusetts on the 31st day of December 2014.

        FURTHER DECLARANT SAYETH NOT.

        _____
        RALPH J. GILLIS

3

FILED
1/13/2015 12:25:50 PM
Donna G. Brow
District Clerk
Liberty County, T
Joy Parker

CAUSE NO. CV1408743

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| V. | § § | LIBERTY COUNTY, TEXAS |
| RALPH J. GILLIS, GILLIS, BORCHARDT & BARTHEL LLP, OBAIN ASSOCIATES LIMITED, AND JASPER/VPPA SETTLEMENT TRUST | § § § § | 253RD JUDICIAL DISTRICT |

## ANSWER OF JASPER/VPPA SETTLEMENT TRUST SUBJECT TO ITS MOTION TO TRANSFER VENUE TO MONTGOMERY COUNTY, TEXAS

TO THE HONORABLE STATE DISTRICT JUDGE:

COMES NOW, Defendant Jasper/VPPA Settlement Trust ("Trust") and having filed a Motion to Transfer Venue to Montgomery County, Texas answers Plaintiff's Original Petition as follows:

### I.
### VENUE IMPROPER IN LIBERTY COUNTY/MOTION TO TRANSFER TO MONTGOMERY COUNTY

The Trust has filed a Motion to Transfer Venue to Montgomery County, Texas and incorporates such Motion into this Answer by reference as if fully set out herein. The Trust venue is established by Section 115.002 of the Texas Property Code.

Venue is mandatory in Montgomery County, Texas.

### II.
### GENERAL DENIAL OF ALLEGATIONS IN PLAINTIFF'S ORIGINAL PETITION

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, all allegations in Plaintiff's Original Petition are denied.

## III.
## PLAINTIFF'S JURISDICTION AND VENUE FACTS PLEAD
## IN PLAINTIFF'S ORIGINAL PETITION

The Plaintiff at Paragraph 4 on Page 2 of its Original Petition pleads the following as to the Parties:

> 4.    The Jasper/VPPA Settlement Trust (the "J/V Trust") is a trust created and existing under the laws of Massachusetts for the benefit, and acting under the control, of Obain (through Gillis), the City of Jasper ("Jasper") and the Vinton public Power Authority ("VPPA"). The Trust's registered office and principal place of business are at 160 Old Derby Street, Suite 227, Hingham, MA 02043, the same address as the Gillis Defendants, but it can be served through James F. Kenney as its Trustee at 66 Lyric Arbor Circle, The Woodlands, Texas 77381.

If the Court accepts such allegations as true, then Section 115.001 of the Texas Property Code mandates this case be transferred to Montgomery County, Texas.

As to venue, Plaintiff pleads "all or a substantial part of the events giving rise to the claims being asserted in this Petition occurred in this County (Liberty County)."  The Trust specifically denies and challenges this allegation as:

1)    The Trust was set up under the laws of Massachusetts;

2)    The Trustee and administration of the Trust have absolutely no connection to Liberty County, Texas;

3)    The Beneficiaries of the Trust are the City of Jasper, Texas, Vinton (Louisiana) Public Power Authority, and Obain & Associates (a Massachusetts entity); and

4)    The Trust itself has no connection to Liberty County whatsoever.

## IV.
## JURY DEMAND

The Defendant, Jasper/VPPA Settlement Trust requests a trial by jury on all issues of fact.

WHEREFORE, Defendant, Jasper/VPPA Settlement Trust, requests the Court to transfer this case to a District Court in Montgomery County, Texas; and for such other and further relief to which Defendant, Jasper/VPPA Settlement Trust is justly entitled.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By:   /s/ Terry Fitzgerald
           Terry Fitzgerald
           State Bar No. 07089025
           Federal ID No. 15163
           Pennzoil Place
           711 Louisiana Street, Suite 500
           Houston, TX  77002-2716
           Telephone: (713) 224-8380
           Facsimile:  (713) 225-9545
           terry.fitzgerald@roystonlaw.com

**ATTORNEY FOR DEFENDANT,
JASPER/VPPA SETTLEMENT TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January 2015, a true and correct copy of Defendant Jasper/VPPA Settlement Trust's Answer was served on all counsel of record pursuant to Rule 21a of Texas Rules of Civil Procedure.

Kenneth R. Wynne
*Attorney-in-Charge*
David E. Wynne
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002

E. R. Norwood
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX  77575

*Attorneys for Plaintiff*


_/s/ Terry Fitzgerald_
Terry Fitzgerald

FILED
1/13/2015 12:25:50 PM
Donna G. Brown
District Clerk
Liberty County, TX
Joy Parker

**CAUSE NO. CV1408743**

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| V. | § § | LIBERTY COUNTY, TEXAS |
| RALPH J. GILLIS, GILLIS, BORCHARDT & BARTHEL LLP, OBAIN ASSOCIATES LIMITED, AND JASPER/VPPA SETTLEMENT TRUST | § § § § | 253RD JUDICIAL DISTRICT |

## NOTICE OF ORAL HEARING

PLEASE TAKE NOTICE that Defendant Jasper/VPPA Settlement Trust's Motion to Transfer Venue to Montgomery County, Texas filed on January 12, 2015, is hereby set for oral hearing on **Monday, March 30, 2015 @ 9:00 a.m.** in the 253rd District Court of Liberty County, Texas.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By:   */s/ Terry Fitzgerald*
      Terry Fitzgerald
      State Bar No. 07089025
      Federal ID No. 15163
      Pennzoil Place
      711 Louisiana Street, Suite 500
      Houston, TX  77002-2716
      Telephone: (713) 224-8380
      Facsimile:  (713) 225-9545
      terry.fitzgerald@roystonlaw.com

**ATTORNEY FOR DEFENDANT,
JASPER/VPPA SETTLEMENT TRUST**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of January 2015, a true and correct copy of Defendant Jasper/VPPA Settlement Trust's Notice of Oral Hearing on its Motion to Transfer Venue was served on all counsel of record pursuant to Rule 21a of Texas Rules of Civil Procedure.

Kenneth R. Wynne
*Attorney-in-Charge*
David E. Wynne
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002

E. R. Norwood
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX  77575

*Attorneys for Plaintiff*

_____/s/ Terry Fitzgerald_____
Terry Fitzgerald

FILED
1/13/2015 2:13:42 PM
Donna G. Brown
District Clerk
Liberty County, T.
Joy Parker

**CAUSE NO. CV-1408743**

| | |
|---|---|
| **SAM RAYBURN MUNICIPAL POWER** § | **IN THE DISTRICT COURT FOR** |
| **AGENCY** § | |
| *Plaintiff,* § | |
| § | |
| **V.** § | **LIBERTY COUNTY, TEXAS** |
| § | |
| **RALPH J. GILLIS, GILLIS** § | |
| **BORCHARDT & BARTHEL LLP,** § | |
| **OBAIN ASSOCIATES LIMITED AND** § | |
| **THE JASPER/VPPA SETTLEMENT** § | |
| **TRUST.** § | **253RD JUDICIAL DISTRICT** |
| *Defendant.* § | |

## MOTION TO ABATE

NOW COME, Defendants' Ralph J. Gillis, Gillis Borchardt & Barthel LLP and, subject to its earlier filed Special Appearance herein, Obain Associates Limited (collectively "Gillis Defendants") defendant's in the captioned matter and asks the Court to abate the proceedings pending in Liberty County, Texas and would respectfully show the Court as follows:

### A. Introduction

1. The Plaintiff is Sam Rayburn Municipal Power Agency.

2. Plaintiff sued Defendants' for breach of fiduciary duty, unjust enrichment, money had and received and negligence.

3. Because the dispute is already pending in another forum, the Court should abate this suit.

### B. Facts

4. Plaintiffs sued Gillis Defendants among others in the United States District Court for the Eastern District of Texas in Civil Action No. 1:14-CV-00202-RC (the "Federal Case") on the same facts and for the same causes of action pled by Plaintiff in its Original Petition in this matter. A copy of the Plaintiff's Fourth Amended Petition in the Federal Case is attached hereto

1

for the court's ready reference.  The two lawsuits involve the same parties and the same issues and for all practical purposes are identical.

5.  Thus this dispute is already pending in the United States District Court for the Eastern District of Texas.

### C.  Argument and Authorities

6.  This Court should abate this lawsuit because a suit involving the same parties and issues was first filed by the Plaintiff in Federal Court.  The Federal Court case involves the same parties and issues and is identical in all material aspects to this case.  Because the Federal Case was filed first and the subject matter of the two suits is identical, the Court should abate this proceeding until the Federal Case is resolved.

### D.  Conclusion

7.  Plaintiff has filed a motion to dismiss the Federal Case, and Defendant has filed an opposition to such dismissal.  The abatement of this matter should continue for so long as the Federal Case is pending.  Because Plaintiff first sued Defendant in the Federal Case and alleged the same causes of action, the Federal court acquired dominant jurisdiction.  Therefore, this Court should abate this suit pending before it for all purposes as long as the Federal Case is pending.

### E.  Prayer

8.  For these reasons Gillis Defendants ask the Court to set this Motion to Abate for hearing and after the hearing, grant Defendant's Motion to Abate.

Respectfully submitted,

**ORGAIN BELL & TUCKER, LLP**

/s/ *Michael J. Truncale*
Michael J. Truncale
State Bar No. 20258125
mjt@obt.com
J. Hoke Peacock II
State Bar No. 15678000
jhp@obt.com
470 Orleans
Beaumont, TX  77701
Telephone:  (409) 838-6412
Facsimile:  (409) 838-6959

**ATTORNEYS FOR DEFENDANTS'
RALPH J. GILLIS, GILLIS,
BORCHARDT & BARTHEL LLP AND
OBAIN ASSOCIATES LIMITED**

## CERTIFICATE OF CONFERENCE

Counsel for the Defendant conferred with counsel for the Plaintiff regarding this motion and counsel for the Plaintiff advised that Plaintiff opposes this Motion to Abate.

/s/ *J. Hoke Peacock II*
J. Hoke Peacock II

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record on this the 13th day of January, 2015 as listed.

*VIA E-File and E-Serve*

Kenneth R. Wynne
kwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main St., Suite 1275
One City Centre
Houston, TX 77002

3

**Of Counsel:**

David E. Wynne
dwynne@wynne-law.com
WYNNE &WYNNE LLP
1021 Main St., Suite 1275
One City Centre
Houston, TX 77002

**- and –**

Hubert Oxford, III
hubertoxford@benoxford.com
BENCKENSTEIN &OXFORD L.L.P.
3535 Calder, Suite 300
Beaumont, TX 77706

E. R. Norwood
enorwood@ednorwoodlaw.com
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX  77575

Terry Fitzgerald
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana, Suite 500
Pennzoil Place
Houston TX 77002


                                        /s/ *Michael J. Truncale*
                                        Michael J. Truncale


4

# ATTACHMENT

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | |
| *Plaintiff* | § § | Civil Action No. 1:14-cv-00202-RC |
| v. | § § | JURY DEMANDED |
| RALPH J. GILLIS, GILLIS, BORCHARDT & BARTHEL LLP and OBAIN ASSOCIATES LIMITED | § § § § | |
| *Defendants* | § § | |

## PLAINTIFF'S FOURTH AMENDED COMPLAINT

Plaintiff Sam Rayburn Municipal Power Agency files this Fourth Amended Complaint against Ralph J. Gillis, Gillis, Borchardt & Barthel LLP, Obain Associates Limited and the Jasper/VPPA Settlement Trust, by its Trustee, James F. Kenney, as follows:

## NATURE OF ACTION

1.     This is an action for recovery of damages, fee forfeiture, money had and received, constructive trust and injunctive relief based on breaches of fiduciary duty, unjust enrichment and negligence.

## PARTIES

2.     Plaintiff Sam Rayburn Municipal Power Agency ("SRMPA") is a joint powers agency and political subdivision of the State of Texas. It was created by the cities of Jasper, Liberty, and Livingston, Texas on October 31, 1979. It is duly organized and continuing under the laws of the State of Texas, TEX. UTIL. CODE ANN. § 163.051 (Vernon 1998). It is charged with securing the most economical and reliable long and short-term sources of power and energy for its customers.

3.      Defendant Ralph J. Gillis ("Gillis") is an individual who resides in Massachusetts and is a name partner with the law firm Gillis, Borchardt & Barthel LLP. Gillis has been served with process and has made an initial appearance through counsel. Defendant Gillis, Borchardt & Barthel LLP ("Gillis Borchardt") is a law firm that has its principal place of business in Hingham, Massachusetts. It has been served with process and has made an initial appearance through counsel.

4.      Defendant Obain Associates Limited ("Obain") is a Massachusetts business corporation that has its principal place of business in Hingham, Massachusetts at the same address as Gillis Borchardt. Its principals are Ralph J. Gillis and his wife, Jane C. Gillis. It has been served with process and has made an initial appearance through counsel.

5.      The Jasper/VPPA Settlement Trust is a trust created and existing under the laws of Massachusetts. Its registered office and principal place of business are at 160 Old Derby Street, Suite 227, Hingham, MA 02043, the same address as the Gillis defendants, but Mr. Kenney as trustee can be served, at 66 Lyric Arbor Circle, The Woodlands, Texas 77381.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states. Specifically, Plaintiff is a citizen of Texas, and Defendants are citizens of Massachusetts.

7.      This Court has personal jurisdiction over Defendants. Defendants have a substantial connection with Texas arising out their actions and conduct purposefully directed towards Texas, and this cause of action arises out of and relates to Defendants' contacts with Texas. Defendants have purposefully availed themselves of the laws of the State of Texas and

have established "minimum contacts" within Texas. Exercising personal jurisdiction over Defendants in this matter would not offend traditional notions of fair play and substantial justice.

8.       Venue of this matter is proper within the Beaumont Division of the Eastern District of Texas pursuant to 28 U.S.C. §§ 1391(a) and (b)(2), in that jurisdiction is founded only on diversity of citizenship and a substantial part of the events or omissions giving rise to the claim occurred in the Beaumont Division of the Eastern District of Texas.

## FACTUAL BACKGROUND

### A.  The Cambridge Project and the Dispute between SRMPA and VPPA and Gillis and Gillis Borchardt's Conflict of Interest

9.       Gillis and Gillis Borchardt served as SRMPA's legal counsel for many years. Indeed, those defendants structured most of the contractual arrangements under which SRMPA has operated its business through those years. Gillis and Gillis Borchardt (or one of its predecessor firms) also for many years represented other of the parties to those contractual relationships as well, including the Vinton Public Power Authority ("VPPA"), the City of Jasper, and the Jasper/VPPA Settlement Trust. Most of the current complex of those contractual arrangements as a group are known collectively as the Cambridge Project. The Cambridge Project contracts, along with a Requirements Power Supply Agreement ("RPSA"), govern the transactions by which, among other things, SRMPA obtains electrical power on a wholesale basis almost entirely from Entergy Corp. ("Entergy") or one or more of its affiliates and provides it to its constituent members, Jasper, Liberty and Livingston, as well as to VPPA to support their respective retail sales to their respective residential and industrial users. That current set of contracts evolved from earlier such contracts, that Gillis and Gillis Borchardt and its predecessor firms also constructed and negotiated and on which

the lawyer defendants also represented the Plaintiff dating back to the 1980's, if not the 1970's. The combination of contracts that comprise the Cambridge Project, along with the RPSA, is exceedingly complex. Gillis and Gillis Borchardt are the lawyer architects of that combination, acting as counsel in that regard for each and all of the foregoing parties, except, on information and belief, Entergy and its affiliates.

10.    SRMPA terminated its engagement of Gillis and Gillis Borchardt as its counsel in June, 2012. Since then Gillis and Gillis Borchardt have continued to represent VPPA and perhaps other of the above named parties with respect to their supposed rights under the Cambridge Project contracts.

11.    Gillis and Gillis Borchardt, acting as counsel for VPPA, began pressing SRMPA to transfer some of its rights, but not all of its obligations, under one of the contracts in the Cambridge Project to VPPA, specifically the Supplemental Requirements Power Supply Agreement ("S-RPSA").[1] Those efforts included sending SRMPA a "Power Supply Separation Agreement" by which SRMPA would surrender certain rights in favor of VPPA, but would retain significant obligations, including substantial payment obligations. SRMPA declined to succumb to the pressure Gillis and Gillis Borchardt were applying and declined to enter the supposed Separation Agreement. More recently, manifesting a clear intent to increase VPPA's pressure on SRMPA to transfer its contracts rights to VPPA, Gillis sent a letter to SRMPA on Gillis Borchardt's letterhead, expressly acting as counsel for VPPA,

---

[1]    The Supplemental Requirements Power Supply Agreement ("S-RPSA") with Entergy affiliate EWO Marketing, Inc. ("EWOM") is dated August 8, 2011. In the S-RPSA, SRMPA agreed to purchase power from EWOM and to resell it to VPPA to serve VPPA's IP Retail Load needs. VPPA executed the S-RPSA as a "buyer participant."

transmitting a formal notice to SRMPA that VPPA was terminating the S-RPSA.[2] Following that notice, upon the urging of Entergy and its affiliates, VPPA and SRMPA have agreed with the pertinent Entergy entities to a series of waivers and extensions by which those parties have concurred that the S-RPSA has continued in effect, notwithstanding the Termination Notice from VPPA. There has been, though, and continues to be, a disagreement between VPPA and SRMPA as to whether that contract can or should be terminated by VPPA. SRMPA believes and asserts that VPPA lacks the right under the S-RPSA to take the action it has purported to take, believes and asserts that VPPA has purported to take that action under advice from Gillis and Gillis Borchardt and that its purported action is adverse to SRMPA's interests. Moreover, the purported action clearly regards the same subject matter on which Gillis and Gillis Borchardt previously represented SRMPA.

12. By continuing to represent VPPA in its disagreement with SRMPA about whether VPPA can or should terminate (or modify) the contract for which Gillis and Gillis Borchardt sent SRMPA the notice of termination, which regards the same subject matter on which Gillis and Gillis Borchardt previously represented SRMPA, Gillis and Gillis Borchardt are violating the fiduciary duty they owe to SRMPA as their former client, as well as their obligations under the Texas Disciplinary Rules of Professional Conduct and the Massachusetts Rules of Professional Conduct. This suit is brought in part to restrain Gillis and Gillis Borchardt from representing VPPA against SRMPA's interest and without its consent regarding the same subject matter on which those Defendants previously represented SRMPA. SRMPA has requested Gillis and Gillis Borchardt to refrain from such

---

[2] The Notice of Termination is attached as **Exhibit A**. Although labeled as a "termination" notice, its terms indicate that is actually a purported modification whereby VPPA is purporting to effect the assignment of rights for which it earlier pressured, but is also purporting to leave some of the obligations, especially payment obligations, with SRMPA.

representation, and, since this suit was filed, through their counsel, they have informally indicated they are refraining from such representation as it may be adverse to SRMPA's interest, but they have reserved for their own private determination what they think is adverse to SRMPA's interest and, in any event, have refused to make any representation as to anything they are refraining from doing in any formal or enforceable way. Injunctive relief is necessary, therefore, to restrain that improper activity by Gillis and Gillis Borchardt.

13.     The dispute between SRMPA and VPPA is ongoing, and it could potentially cause an enormous amount of damage to SRMPA in part because the contract purportedly being terminated (or modified), the S-RPSA, is integrated with the other contracts that make up the Cambridge Project. As Gillis explained in correspondence prior to sending the Notice of Termination, if one of the contracts that comprise the Cambridge Project is terminated, the entire Cambridge Project could collapse.[3] Therefore, VPPA's and SRMPA's dispute threatens to jeopardize the entire Cambridge Project, which, if it were to be impaired, would threaten SRMPA's profitability with respect to the whole of the Cambridge Project.

14.     Despite this dispute between VPPA and SRMPA, Defendants continue to represent VPPA in matters adverse to SRMPA that arise out of, and are substantially related and integral to, the Cambridge Project and the RPSA. Such continuing representation of VPPA is a direct violation of the fiduciary and ethical duties that Defendants Gillis and Gillis Borchardt owe to SRMPA.

## B. Gillis' Undisclosed Conflict of Interest

15.     Gillis and his wife formed Obain in 2000, and Gillis caused a related entity called

---

[3]     *See* the email from Ralph Gillis to Bruce Halstead dated February 14, 2013, attached as **Exhibit B**.

"the Jasper Trust" to be created no later than October 1, 2001. On information and belief, both of those entities were formed to disguise arrangements they were making with the City of Jasper so that Obain (and thereby Gillis and his wife) would receive a significant percentage fee to be determined relative to revenues Gillis would be arranging for Jasper to receive through contracts he and Gillis Borchardt were structuring and so the Jasper Trust could be used to shield Obain, and hence Gillis, from scrutiny. SRMPA was to be a party to those arrangements and was to take on significant payment obligations under them. On information and belief, Obain and Jasper first documented such a percentage fee arrangement via an "Adjustment Agreement for Separate Settlement" on March 19, 2001 and then supplemented or replaced that arrangement with an "Agreement for Business Development Services" on May 20, 2002. The Jasper Trust became the veil for receiving payments destined for Obain and Gillis no later than March, 2004.

16.    Subsequently, as Gillis and Gillis Borchardt were conceiving and structuring the Cambridge Project, Obain and Jasper again supplemented or replaced their percentage fee arrangements by entering into a "Nisco Settlement Agreement" in April, 2010 whereby payments that had previously flowed through the earlier complex of contracts known as the "Nisco Deal" would now be redirected to flow through SRMPA and then through the Jasper/VPPA Settlement Trust to both Jasper and VPPA and to Gillis. Jasper/VPPA Settlement Trust was created on April 14, 2010 to help disguise that much of what SRMPA was obligated to pay was actually going to Gillis through Obain. In one of the wrinkles in the Cambridge Project complex of agreements, EGSL, an Entergy entity, coordinates the various payment flows and, as SRMPA's agent for this purpose, sends directly to the Jasper/VPPA Settlement Trust amounts that are owed by SRMPA. In short, since the Cambridge Project agreements went into effect, SRMPA without knowing it has been doing so, through the agency of EGSL, has been flowing funds to the Jasper/VPPA

Settlement Trust from which Obain (and, therefore, Gillis) have been receiving as much as $1 million or more per year.

17.     SRMPA has learned only recently of Obain's existence and of how Gillis has been using Obain and the Jasper/VPPA Settlement Trust to conceal from SRMPA, and from others who participate in this complex of agreements, the fact that Gillis has been realizing substantial fees for himself as a result of how he structured these contracts on which he and his firm were simultaneously representing SRMPA. Because of Gillis' concealment of his personal stake in those contracts through Obain, SRMPA could not have reasonably discovered those arrangements any earlier than it did. Any otherwise potentially applicable period of limitations has either been tolled or has not begun to run based on Gillis' fraudulent concealment of those arrangements from SRMPA and by the discovery rule.[4] Because the concealment violated a fiduciary duty, the tolling effect is all the more clear.[5] Moreover, these arrangements that Gillis has made to realize undisclosed fees, actually funded, at least in substantial part, by SRMPA, constitute egregious violations of the fiduciary duty he owed to SRMPA both to make full disclosure to it and to act faithfully in its interest. Additionally, under the manipulation of its owner, Gillis (who shares ownership with his wife), Obain and the Jasper/VPPA Settlement Trust have knowingly participated in Gillis' breach of fiduciary duty to SRMPA and are jointly and

---

[4]     Per the Texas Supreme Court: "[T]he general principle is this: accrual of a cause of action is deferred in cases of fraud or in which the wrongdoing is fraudulently concealed, and in discovery rule cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).

[5]     "We have twice held a fiduciary's misconduct to be inherently undiscoverable. Willis, 760 S.W.2d at 645 (attorney); Slay, 187 S.W.2d at 394 (trustee). The reason underlying both decisions is that a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996).

severally liable to SRMPA as a result. Gillis (and possibly his law firm), Obain and the Jasper/VPPA Settlement Trust have also been unjustly enriched by all the amounts they have received through this mechanism that was undisclosed to SRMPA, and they should be required to disgorge to SRMPA all such amounts they have wrongfully received.[6]  Such disgorgement is also appropriate under the concept of money had and received. A constructive trust should be imposed on all such receipts by the Defendants and on any assets or rights of value that are fairly traceable to those receipts. Gillis, through Obain, always held the unilateral right to install or remove anyone he wanted to serve as trustee of the Jasper Trust. To the extent that trust entered into contracts with the other above mentioned entities, because Gillis exercised total control over it, Gillis was, himself, not only being paid amounts that were not disclosed to his client SRMPA, he was, himself, in every practical effect, a party to those contacts. Whenever he negotiated for SRMPA with regard to those contracts, he was concealing that SRMPA was actually negotiating with him as a party. For at least a decade, the Jasper Trust filled a disguising role for Obain and for Gillis. To whatever extent Gillis has a similar sort of power regarding the Jasper/VPPA Settlement Trust, he has continued to negotiate for and advise SRMPA regarding contracts from which he not only realizes undisclosed payments, he is functionally a party to those contracts, himself.

### C. Obain's Undisclosed Fee has Corrupted Gillis' and Gillis Borchardt's Legal Advice to SRMPA and has Caused SRMPA Significant Damage

18.    For many years prior to 2011, Jasper sold power to VPPA to meet the needs of its "Industrial Participants", and SRMPA sold power to VPPA to meet its municipal needs. Both

---

[6]    "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Jasper and SRMPA bought the power they sold to VPPA from affiliates of what is now Entergy Corp.  Under those arrangements, neither Jasper nor SRMPA had responsibilities for delivering the power they were buying and then selling to VPPA. Delivery of the power was the seller's obligation.

19.     In 2010, however, Gillis began structuring new arrangements for VPPA to supply power to its industrial participants.  He knew he was including in those arrangements a change in the source for the power that theretofore was sold to Jasper for it to resell to VPPA for its industrial participants' load.   He knew that such a change would entail using different transmission facilities from those that had historically been used to deliver that power. He further anticipated that such a change would also entail a likely requirement to upgrade the capacity of the new transmission facilities and that under those circumstances the cost of such upgrade would likely be imposed on its customer. If Jasper continued to be that customer, Jasper would bear that cost obligation, but, if it did, it would diminish the percentage fee Gillis was receiving through the Jasper Trust and Obain. Gillis, therefore, without disclosing his personal financial stake in avoiding that cost risk to Jasper, set about to shift that risk from Jasper to his other client, SRMPA, in a way that would protect his undisclosed fee and the value of his stake as a *de facto* party to the arrangements going forward.   He accomplished that by constructing, negotiating, and persuading SRMPA to enter into, the S-RPSA.

20.     Under the S-RPSA, EWO Marketing, Inc. ("EWOM") became the seller, and SRMPA became the buyer from EWOM and the reseller to VPPA, of power to meet VPPA's industrial participants' load. In effect, SRMPA replaced Jasper in that role. Rather than presenting the new agreement to SRMPA as one that was designed to protect Jasper from a large expense to upgrade the capacity of the Entergy Transmission System and that would protect Gillis' personal

stake in the fee he was receiving through the Jasper Trust and Obain and would preserve the value of his position as a *de facto* party to the arrangements, Gillis instead presented the new agreement to SRMPA as one that would be highly profitable to SRMPA.

21.     Gillis did not make SRMPA aware of the unexpressed consequences under the S-RPSA that would cause SRMPA to incur significant costs. Changing the designated source of the power SRMPA would be buying entailed that different transmission facilities would be used to deliver that power than had been used when Jasper was the buyer, and the terms of the S-RPSA, in obscurely worded provisions, imposed on SRMPA, as the new buyer of this power from EWOM, an obligation to pay the cost to upgrade the capacity of the Entergy Transmission System. Moreover, as Gillis prepared it, the S-RPSA required SRMPA to arrange for delivery of the power on a long-term basis, but Gillis encouraged SRMPA to enter into this new agreement before it had such long-term arrangements in place. In short, Gillis portrayed the S-RPSA as a lucrative arrangement for SRMPA, while in reality, which Gillis knew, SRMPA was actually buying not one, but two, pigs in a poke – the prospect of significant cost to upgrade the capacity of the Entergy Transmission System and the uncertainty of obtaining a long-term delivery contract. Regardless, though, Gillis provided in the S-RPSA that SRMPA would be obligated to pay a "Re-Assignment Fee" of $3 million per year from which Gillis, through the Jasper/Settlement Trust and Obain, would continue to receive his percentage fee of at least $1 million per year and preserve the value of his status as a *de facto* party to the contracts.

22.     Unfortunately, as Gillis could foresee but failed to disclose to SRMPA, the risks to SRMPA soon materialized. The S-RPSA was signed effective August 8, 2011, and deliveries of power under it began in December, 2011, but by mid-2012, SRMPA began facing a cost of over $5 million to upgrade the transmission facilities being used for those deliveries. SRMPA is

now in the process of paying that cost, which, based on how Gillis portrayed it, SRMPA did not know to anticipate. Even Gillis later included it as a feature of a financial "bomb." It is also VPPA's allegation of a lack of a long-term delivery arrangements that grounded the Notice of Termination (or modification) of the S-RPSA that Gillis and his law firm sent to SRMPA – those Defendants' client when Gillis and his law firm constructed the S-RPSA to begin with.

23.    Gillis also knew that the Entergy affiliated companies anticipated changing their membership from the delivery system in which they had participated for years to Midcontinent Independent System Operator, Inc. ("MISO") and that the planned change would compress the operating margins he represented to SRMPA it would experience under the S-RPSA. Even so, he explicitly advised SRMPA that the change to MISO would not affect SRMPA's interests. The Entergy entities have now changed that membership and now participate in MISO, and that change has significantly compressed the margins Gillis represented SRMPA would experience under the S-RPSA.

24.    Gillis and Gillis Borchardt's failure to advise SRMPA accurately regarding the probable costs it would incur from entering into the S-RPSA relative to the expectations Gillis and Gillis Borchardt led it to expect have caused SRMPA to realize far less benefit from the S-RPSA than it should have and far less than it would have realized if it had been properly advised. Moreover, by representing VPPA in its attempts to terminate (or modify) the S-RPSA, especially by purporting to take advantage of provisions in the S-RPSA (and taking wrongful such purported advantage) on which Gillis and his law firm failed adequately to advise SRMPA, the Defendants have caused SRMPA to incur significant attorney's fees and expenses of litigation to defend itself against those efforts. In short, Gillis and Gillis Borchardt's professional failures have caused SRMPA damages of at least $5 million.

## CAUSES OF ACTION

### A. Breach of Fiduciary Duty

25.    SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs.

26.    Defendants' actions described herein constitute breaches of fiduciary duty owed to SRMPA. SRMPA, therefore, sues for its actual damages, for forfeiture of revenues Gillis and Gillis Borchardt have received regarding their representation of SRMPA in connection with the Cambridge Project agreements and the Requirements Power Supply Agreement and its related agreements, and, to avoid unjust enrichment to the Jasper/VPPA Settlement Trust and Obain and through them to Gillis, a constructive trust for SRMPA's benefit all receipts of the Jasper/VPPA Settlement Trust for Obain's account and on all receipts by Obain, and through Obain the lawyer Defendants, from Obain's percentage fee arrangements that have affected SRMPA without its contemporaneous knowledge.

27.    Defendants Gillis and Gillis Borchardt have breached, and are breaching, their fiduciary duty to SRMPA. Defendants Gillis and Gillis Borchardt have represented, and continue to represent, VPPA in disputes against SRMPA that have arisen out of, and are substantially related to, the Cambridge Project and its predecessor structures, without full disclosure to, and without obtaining consent from, SRMPA. SRMPA did not, and does not, consent to this representation. It is also reasonably probable that Defendants have revealed confidential information to VPPA during this representation. Defendants' actions have proximately caused SRMPA damages and are calculated to, and if unchecked will, proximately cause further damages to SRMPA going forward. More particularly, if VPPA succeeds in terminating or modifying the S-RPSA as Gillis and Gillis Borchardt have advised it to try to

accomplish, SRMPA will at least be inhibited in realizing the revenues it is currently receiving, if not deprived of those revenues altogether, with the effect that any profitability from that contract will be impaired or even destroyed. Moreover, Gillis and Gillis Borchardt induced SRMPA into accepting risks of significant costs and compressed margins it did not anticipate by entering into the S-RPSA, and they persuaded SRMPA to enter into the S-RPSA to preserve for Gillis, through the Jasper/VPPA Settlement Trust and Obain, his continued receipt of his undisclosed compensation of at least $1 million per year. That inducement, without needed disclosures, has caused and is causing SRMPA to suffer damages of at least $5 million from the materialization of the risks Gillis and Gillis Borchardt failed to advise SRMPA were inherent in the S-RPSA.

28.    That said, SRPMA's rights related to Gillis and Gillis Borchardt's breaches of fiduciary duty are not limited to recovering its actual damages. SRPMA is also entitled to a forfeiture of all compensation Gillis and Gillis Borchardt have received in connection with the subject matter regarding which they have committed those breaches.  As held by the Texas Supreme Court, "[A] client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client."[7] Because the Jasper/VPPA Settlement Trust and Obain have knowingly participated in those breaches of fiduciary duty, they are equally liable for such forfeiture, at least to the extent of the undisclosed percentage fee of $1 million of more per year they have been receiving for Gillis' account.

29.    The Defendants' breaches of fiduciary duty and accompanying fraudulent concealment and unjust enrichment have been both clear and serious. Defendants' conduct was also intentional, willful, and malicious and thereby warrants an award of exemplary damages.

---

[7]    *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999).

**B.  Unjust Enrichment**

30.    SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 29.

31.    The Defendants have been unjustly enriched by their receipt of the funds described above, because they have received those funds under circumstances in which they may not justly retain them.  Those funds, as well as anything of value to which those funds have been applied by the Defendants should be restored to the Plaintiff.

**C.    Money Had and Received**

32.    SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 28.

33.    The Defendants have received the foregoing funds that in equity and good conscience belong to the Plaintiff, and they should be required to return such funds in full, as well as anything of value to which those funds have been applied by the Defendants.

**D.    Negligence**

34.    SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 29.

35.    In the event it is ever concluded that Gillis and Gillis Borchardt did not intentionally fail to disclose to SRMPA the significant risks it was accepting by entering into the S-RPSA, then such failure to disclose was negligence and constitutes legal malpractice.  Such negligence, in the alternative, caused SRMPA to suffer the actual damages described above.

**DEMAND FOR JURY**

36.    SRMPA has previously demanded, and hereby reiterates its demand for, a trial by jury.

## **PRAYER**

37.    SRMPA prays that, upon a full trial on the merits, the Court find in favor of

SRMPA and against Defendants and that SRMPA be awarded (a) its actual damages, (b)

forfeiture of all compensation to Obain, Gillis and Gillis Borchardt regarding the Cambridge

Project and its predecessor structures which is traceable to funds from or for the Plaintiff, (c)

forfeiture by James F. Kenney as trustee of the Jasper/VPPA Settlement Trust of all revenues it

has received that are traceable to funds from or for the Plaintiff that were destined for Obain or

Gillis, (d) a constructive trust on all receipts by the Jasper/Settlement Trust and Obain and, through

them or either of them, by Gillis and Gillis Borchardt, that have affected SRMPA, (e) a declaration

that Gillis and Gillis Borchardt's conduct in representing VPPA, and possibly others, against

SRMPA's interest is a violation of their ethical and fiduciary responsibilities as lawyers to

SRMPA, (f) a permanent injunction restraining and enjoining Gillis and Gillis Borchardt from

advising, consulting or representing VPPA in any way affecting its contractual arrangements with

SRMPA, (g) exemplary damages, (h) prejudgment and post judgment interest at the maximum

rate allowed by law; and (i) its costs of court.  SRMPA further requests all other relief to which

it is entitled, whether at law or in equity.

Respectfully submitted,

By:  /s/ Kenneth R. Wynne
   Kenneth R. Wynne
   State Bar No. 22110000
   kwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)

**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

OF COUNSEL:

David E. Wynne
State Bar No. 24047150
dwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)

**- and -**

Hubert Oxford, III
State Bar No. 15392000
hubertoxford@benoxford.com
BENCKENSTEIN & OXFORD L.L.P.
3535 Calder, Suite 300
Beaumont, TX 77706

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel listed below either electronically pursuant to the court's ECF noticing system, direct e-mail or facsimile on this the 9th day of October, 2014.

J. Hoke Peacock, II
Michael J. Truncale
Orgain Bell & Tucker, L.L.P.
470 Orleans Street
Beaumont TX 77704-1751

    /s/ Kenneth R. Wynne
Kenneth R. Wynne

*Exhibit A*

# GILLIS, BORCHARDT & BARTHEL LLP

Counsellors at Law
Suite 227
160 Old Derby Street
Hingham, MA 02043

RALPH J. GILLIS'
CHARLES A. BORCHARDT'
PHILIP H. BARTHEL'
RALPH B. GILLIS'

Telephone: (781) 741-2432
Fax: (781) 740-0768

## FACSIMILE TRANSMISSION

TO: __Bruce Mintz, Exec. Director__   FAX: __832-747-1047__

__Sam Rayburn Muncipal Power Agency__  RETURN FAX: (781) 740-0768

__1517 Trinity Street__

__Liberty, TX 77575__

FROM: __Ralph J. Gillis, Attorney__   DATE: __8/9/13__

NO. OF PAGES INCLUDING COVER SHEET: __12__

NOTES:

[x] ORIGINAL WILL FOLLOW      [ ] ORIGINAL WILL NOT FOLLOW

[ ] RESPONSE REQUIRED          [ ] NO RESPONSE REQUIRED

CONFIDENTIALITY NOTE
THE DOCUMENTS ACCOMPANYING THIS FACSIMILE COVER PAGE CONTAIN INFORMATION FROM THE LAW FIRM OF
GILLIS, BORCHARDT & BARTHEL LLP THAT IS PRIVILEGED & CONFIDENTIAL. THE INFORMATION IS INTENDED TO BE FOR
THE USE OF THE INDIVIDUAL OR ENTITY NAMED ON THIS TRANSMISSION SHEET. IF YOU ARE THE INTENDED RECIPIENT,
PLEASE BE AWARE THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR USE OF THE CONTENTS IS PROHIBITED. IF YOU
HAVE RECEIVED THIS TELECOPY IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO THAT WE CAN
ARRANGE FOR THE RETRIEVAL OF THE DOCUMENT AT NO COST TO YOU.
IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL: (781) 749-2432

## EXHIBIT A

# GILLIS, BORCHARDT & BARTHEL LLP

Counsellors at Law
Suite 227
160 Old Derby Street
Hingham, MA 02043

RALPH J. GILLIS*
CHARLES A. BORCHARDT*
PHILIP R. BARTHEL*

RALPH B. GILLIS*

Telephone: (781) 749-3432
Fax (781) 740-0768
www.GBILP.com

Of Counsel

JOHN C.L. BAILEY, Solicitor
Quality Solicitors: Hill & Abbott
Throndner's House
9-10 Market Road
Chelmsford, JM1 DGI
England UK.

VINCE A. GILLIS, Q.C.
321 Townsend Street
Sydney, Nova Scotia B1P5J1
Canada

MOIRA C. GILLIS
3262 Westheimer Road, Suite 314
Houston, T: 77098

Facsimile Transmission

August 9, 2013

Marilyn Sutton, President
Sam Rayburn Municipal Power Agency
c/o City Hall
200 West Church Street
Livingston, Texas 77351
Fax (936) 327-7778

Bruce Mintz, Executive Director
Sam Rayburn Municipal Power Agency
1517 Trinity Street
P.O. Box 10047
Liberty, Texas 77575
Fax (832) 747-1047

EWO Marketing, L.P.
Attn: President
2001 Timberloch Place
1st Floor – Snith
The Woodlands, Texas 77380
(281) 297-5458

Sam Rayburn Municipal Power Agency
Attention: Administrator
310 Main Street
Liberty, Texas 77575

RE: Notice of Termination
Supplemental Requirements Power Supply Agreement

Dear Ms. Sutton, Mr. Mintz & Mr. Rosenleib:

This is at the instruction of the Vinton Public Power Authority (VPPA), Vinton, Louisiana, 70668. Notice is hereby given to the Sam Rayburn Municipal Power Agency (SRMPA) and to EWO Marketing, L.P. (EWO), pursuant to the Supplemental Requirements Power Supply Agreement (S-RPSA), dated August 4, 2011, Sections 2.3(a)(viii), 2.3(c), and 11.6, that VPPA has acted to terminate that S-RPSA as to Power supplies to VPPA from SRMPA effective September 1, 2013. A copy of VPPA's action implementing the Notice of Termination is attached, and an executed original will be sent to you by mail.

*Massachusetts & District of Columbia Bars
*Massachusetts Bar

*Oklahoma Bar and Office
*Massachusetts & Rhode Island Bars

This is further to confirm that VPPA again will extend the S-RPSA with EWO.  VPPA will continue to treat that portion of VPPA's direct Power purchase from EWO for VPPA's certain retail load, up to 225 MWs, as meeting that portion of SRMPA's continuing power supply obligation to VPPA for VPPA's certain retail load under the re-assigned Jasper/VPPA Power Supply Agreement, dated July 31, 2011, as amended March 27th, 2011 .

Under this arrangement, the Settlement Agent will be billed by EWO for that Power as supplied directly to VPPA by EWO for up to 225 MWs of VPPA's certain retail load.  The Settlement Agent Contract, dated October 17, 2011, will be amended to authorize this payment, and to preserve net distributions to VPPA and SRMPA.

There will be no change in the Cambridge Project  cash flows to any Party, except that the ultimate distribution to SRMPA will be net of VPPA's  9.39% previously held by SRMPA in escrow and hereafter to be directly distributed to VPPA.

The Settlement Agent Contract will be amended to reflect the net distribution to SRMPA as consistent with the acknowledgement by VPPA that SRMPA's obligation to deliver up to 225 MWs to VPPA for its certain retail load under the above Jasper/VPPA Power Sales Agreement is satisfied.

SRMPA is hereby relieved of liability under the S-RPSA, Section 2.4(b)(ii), for payment by VPPA to EWO for purchase of Power from EWO.

An amendment has been prepared for the Settlement Agent Contract and is attached. Execution of that amendment is required for distributions to be made to SRMPA for Power supplied during the month of September.

Sincerely,

Ralph J. Gillis

RJG/ms

Enclosures

Copies:  James F. Kenney, Settlement Agent
           Kenneth O. Stinson, President, VPPA
           Mary Vice, Secretary, VPPA
           Mike Lout, Mayor, Jasper, Texas

## SUPPLEMENTAL REQUIREMENTS POWER SUPPLY AGREEMENT

### Notice of Termination

THIS SUPPLEMENTAL REQUIREMENTS POWER SUPPLY AGREEMENT (the "Agreement"), dated August 4, 2011, NOTICE OF TERMINATION (Notice), is made by the Vinton Public Power Authority, as Buyer Participant and hereby given to EWO Marketing, Inc., as Seller, and Sam Rayburn Municipal Power Agency, as Buyer (each a "Party" and together the "Parties" to the Agreement and its prior Amendments Nos. 1-11), effective as of the date below subscribed by the Buyer Participant (the "Effective Date").

WHEREAS, the Agreement provides for the commencement of delivery of Power upon the satisfaction or waiver of certain conditions precedent as set out in Section 2.3 therein;

WHEREAS, the conditions precedent in Section 2.3(a), other than Section 2.3(a)(vi), may not have been satisfied or waived under Section 2.3(a) or 2.3(c) as of September 1, 2013;

WHEREAS, the Parties have entered into those certain Partial Waiver Agreements and Amendments Nos. 1--11 (Interim Waivers) to Supplemental Requirements Power Supply Agreement, and commenced purchase and sales of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent, and to that end the Parties agreed in that certain Partial Waiver Agreement and Amendment No. 11 to Supplemental Requirements Power Supply Agreement, dated effective as of July ___, 2013 ("Amendment No. 11") that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including September 1, 2013;

WHEREAS, the Buyer Participant herein Notices to the Parties under the Agreement, Section 2.1, that the conditions precedent contained in Section 2.3(a), in particular the condition precedent contained in Section 2.3(a)(viii), will not have been satisfied or waived by the Buyer Participant under Section 2.3(a) or 2.3(c) as of September 1, 2013;

WHEREAS, the Buyer Participant herein Notices to the Parties under the Agreement, Section 2.1, that the conditions precedent contained in Section 2.3(a), in particular the condition precedent contained in Section 2.3(a)(viii), will not have been satisfied or waived by the Buyer Participant under Section 2.3(a) or 2.3(c) as of September 1, 2013, and therefore under the Agreement, Section 2.3(c), the Buyer Participant will decline to waive the unsatisfied conditions precedent as to the Buyer and thereby will terminate the Agreement effective on September 1, 2013 (the Termination Date) as between the Buyer and the Buyer Participant;

Notice of Termination

WHEREAS, the Buyer Participant will waive the unsatisfied conditions precedent insofar as the purchase and sale of Power by the Seller to the Buyer Participant, as such waiver is set forth in Partial Waiver Agreement and Amendment No. 12A to Supplemental Requirements Power Supply Agreement, dated effective as of August ___, 2013 ("Amendment No. 12A");

WHEREAS, Seller will incur no additional obligations, duties or responsibilities as a result of the continuation of the Agreement as waived herein by the Buyer Participant, and the action of the Buyer Participant as contained in this Notice does not prevent the Seller and the Buyer from concluding a further Partial Waiver Agreement and Amendment No. 12B to Supplemental Requirements Power Supply Agreement, dated effective as of August ___, 2013 ("Amendment No. 12B"), thereby continuing the purchase and sale of Power to the Buyer for its municipal loads as contained in the Agreement but not to serve the loads of the Buyer Participant;

WHEREAS, the effect of this Notice is that upon the Termination Date the Buyer is relieved of its joint and several responsibility for VPPA's obligations under the Agreement, Section 2.4(b)(ii), including but not limited to payment of VPPA's power bill from Seller, as well as of being relieved of fiduciary responsibilities as agent for VPPA under the Agreement, Section 2.4(b)(ii) and (vi) ; and

WHEREAS, Seller now will be required to perform, directly and separately, any and all of its obligations to Buyer and to Buyer Participant, respectively, including the delivery of Power, performance assurance, and invoicing, and that under the Agreement, Section 3.4, Seller will continue to have the obligation to deliver Power to the Buyer Participant, which, as further set forth herein, will enable the Buyer to continue to receive revenues through Settlement Agent as calculated before the Termination Date,

NOW THEREFORE, the Buyer Participant hereby gives Notice of the termination of the Agreement as below stated:

1.  This instrument is and shall constitute the Buyer Participant's Notice to the Seller and to the Buyer under the Agreement, Section 2.3(c), of termination for failed conditions precedent under Agreement, Section 2.3(a), such termination to be as set forth herein.

2.  The terms herein, enabling continuation of certain portions of the Agreement as between the Seller and the Buyer Participant, reflect and are conditioned on the Seller having agreed to waive the conditions precedent as to the Buyer Participant under Partial Waiver Agreement and Amendment No. 12A to Supplemental Requirements Power Supply Agreement, dated effective as of August ___, 2013 ("Amendment No. 12A").

Notice of Termination

3. This Notice is effective as of the above Effective Date. The Termination Date is September 1, 2013.

4. The Termination renders the Agreement a two party contract, between the Seller and the Buyer Participant, to be interpreted and applied as a two party contract between them as of the Termination Date. As between the Seller and the Buyer Participant, the Buyer is no longer a party to the Agreement. The Seller and the Buyer may make whatever other arrangements under the Agreement as are suitab.e between them for the respective portions of the Agreement which are not terminated by this Notice.

5. Calculations of capacity and energy sales shall continue between Seller and the Buyer Participant as contained in the Agreement and needed to determine deliveries and the respective charges by the Seller to the Buyer Participant. Comparable use of Power supply and load data information as required for calculation of Power charges under the Agreement between the Seller and the Buyer are at their discretion.

6. This Notice has the effect and requires: (a) that the Seller, not the Buyer, is obligated to deliver capacity and energy to the Buyer Participant's certain retail delivery point; for the Industrial Participants up to the amount of capacity and energy as set forth in the Agreement at those certain Industrial Participants delivery points; (b) that the Buyer Participant, not the Buyer, is responsible for the purchase of and payment for such power deliveries; (c) that the Buyer Participant continues to acknowledge the purchase, sale and delivery of up to 225 MWs of Power by the Seller to certain Industrial Participant delivery points as satisfying that part of the Buyer's Power supply obligation under the Power Supply Reassignment Agreement, dated July 21, 2011, provided, that Buyer continues to contract and deliver to the Buyer Participant, at those certain delivery points, the partial requirements Power remainder of between 225 MWs and 325 MWs, as well as backup Power; and (d) that the Settlement Agent (Agreement, Section 6.2(b)) shall continue to receive power sales revenues as previous to the issuance of this Notice, and shall apply those proceeds in part in payment of the Buyer Participant's power purchases from Seller as invoiced to the Buyer Participant by the Seller.

7. This Notice has the effect (a) that the Buyer is released from all fiduciary obligations as agent of VPPA (Agreement, Section 2.4(b)(vi)), and from all obligations to

Notice of Termination

payment to Seller for capacity and energy sold to VPPA (Agreement, Section 2.4(b)(ii); (b) that the Buyer is relieved of any obligation to pursue collection of deficiency payments due to Seller from Buyer Participant for capacity and energy deliveries whether to its wholesale municipal customer, Vinton, or its certain Industrial Participants delivery points

8.      The effect of this Notice is that, as between the Seller and the Buyer Participant, the Agreement shall be interpreted and applied as a two-party contract for the sale of capacity and energy sufficient to service the Vinton municipal load of VPPA, and the certain Industrial Participants delivery points, during the RPSA and thereafter, all as provided in the Agreement.  The Seller shall be obligated to sell and Buyer Participant shall be obligated to purchase only that portion of the loads described in the Agreement which are capacity and energy delivered to VPPA for Vinton and certain Industrial Participants delivery points.

IN WITNESS WHEREOF, the Buyer Participant has caused this Notice of Termination to be duly executed and issued on its behalf as of the Effective Date.

VINTON PUBLIC POWER AUTHORITY

By: _Kenneth O. Stinson_

        Kenneth O. Stinson, President

Date: _August 8, 2013_

ATTEST:

_Mary Vice_

        Mary Vice, Secretary

Notice of Termination

<u>Partial Waiver Agreement</u>
<u>And</u>
<u>Amendment No. 12A</u>
<u>To</u>
<u>Supplemental Requirements Power Supply Agreement</u>

THIS PARTIAL WAIVER AGREEMENT AND AMENDMENT NO. 12A is made by and between EWO Marketing, Inc., as Seller, and Vinton Public Power Authority, as Buyer Participant (each a "<u>Party</u>" on; together the "<u>Parties</u>"), effective as of <u>September 1, 2013</u> (the "<u>Effective Date of this Amendment No. 12A</u>").

WHEREAS, the Parties are parties to that certain Supplemental Requirements Power Supply Agreement dated as of August 4, 2011 (the "<u>Supplemental Requirements Power Supply Agreement</u>"), which provides for the commencement of delivery of Power upon the satisfaction or waiver of certain conditions precedent as set out in <u>Section 2.3</u> therein; and

WHEREAS, the conditions precedent in <u>Section 2.3(a)</u>, other than <u>Section 2.3(vi)</u>, may not have been satisfied or waived as of the Effective Date of this Amendment No. 10, and the condition precedent in <u>Section 2.3(vi)</u> has been satisfied as of the Effective Date of this Amendment No. 10; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 1 to Supplemental Requirements Power Supply Agreement, dated effective as of November 30, 2011 ("<u>Amendment No. 1</u>") and commenced deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in <u>Section 2.3(a)</u> that had not yet been satisfied or waived should be waived on a partial and interim basis to and including May 31, 2012, as provided therein; and

WHEREAS, the Parties agreed that based on the foregoing interim waivers, the "<u>Delivery Period Start Date</u>" would occur on December 1, 2011; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 2 to Supplemental Requirements Power Supply Agreement, dated effective as of May 20, 2012 ("<u>Amendment No. 2</u>") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in <u>Section 2.3(a)</u> that had not yet been satisfied or waived should be waived on a partial and interim basis to and including December 1, 2012, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 3 to Supplemental Requirements Power Supply Agreement, dated effective as of November 29, 2012 ("<u>Amendment No. 3</u>") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in <u>Section 2.3(a)</u> that had not yet been satisfied or waived should be waived on a partial and interim basis to and including January 1, 2013, as provided therein; and

1

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 4 to Supplemental Requirements Power Supply Agreement, dated effective as of December 20, 2012 ("Amendment No. 4") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived shou d be waived on a partial and interim basis to and including February 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 5 to Supplemental Requirements Power Supply Agreement, dated effective as of January 28, 2013 ("Amendment No. 5") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived shou d be waived on a partial and interim basis to and including March 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 6 to Supplemental Requirements Power Supply Agreement, dated effective as of February 28, 2013 ("Amendment No. 6") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived shoul d be waived on a partial and interim basis to and including April 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 7 to Supplemental Requirements Power Supply Agreement, dated effective as of March 26, 2013 ("Amendment No. 7") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived shoul d be waived on a partial and interim basis to and including May 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 8 to Supplemental Requirements Power Supply Agreement, dated effective as of April 26, 2013 ("Amendment No. 8") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived shou l be waived on a partial and interim basis to and including June 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 9 to Supplemental Requirements Power Supply Agreement, dated effective as of May 29, 2013 ("Amendment No. 9") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived shouk be waived on a partial and interim basis to and including July 1, 2013, as provided therein; and

WHEREAS, as of the Effective Date of this Amendment No. 10, some or all of the conditions precedent n Section 2.3(a) have not yet been satisfied or waived for the period beyond July 1, 2013; and

2

WHEREAS, the Parties desire to continue deliveries of Power on a partial and interim basis beyond July 1, 2013, pending the potential satisfaction or waiver of the outstanding conditions precedent and that, to this end the Parties desire to agree that the conditions precedent in Section 2.3(a) that have not yet been satisfied or so waived shall be waived on a partial and interim basis to and including August 1, 2013, as provided herein; and

WHEREAS, the Parties desire that based on the foregoing interim waivers and the commencement of the Delivery Period Start Date on December 1, 2011, if the conditions precedent in Section 2.3(a) have not been satisfied or waived other than on a partial and interim basis as provided in this Partial Waiver Agreement and Amendment No. 10 as of August 1, 2013, any Party may terminate the Supplemental Requirements Power Supply Agreement as provided in Section 2.3(c) as of August 1, 2013, in which event all deliveries of Power under the Supplemental Requirements Power Supply Agreement will end on August 1, 2013;

WHEREAS, the Parties desire that based on the foregoing interim waivers and the commencement of the Delivery Period Start Date on December 1, 2011, if the conditions precedent in Section 2.3(a) have not been satisfied or waived other than on a partial and interim basis as provided in this Partial Waiver Agreement and Amendment No. 11 as of August 1, 2013, any Party may terminate the Supplemental Requirements Power Supply Agreement as provided in Section 2.3(c) as of December 1, 2013, in which event all deliveries of Power under the Supplemental Requirements Power Supply Agreement will end on August 1, 2013; and

WHEREAS, the Buyer Participant has declined to waive further the conditions precedent in Section 2.3(a), which have not been satisfied, as to the Sam Rayburn Municipal Power Agency, the Buyer under the Supplemental Requirements Power Supply Agreement, and therefore is no longer in a contractual relationship with the Buyer under the Supplemental Requirements Power Supply Agreement so that it will not take power purchases or deliveries from SRMPA under the Supplemental Requirements Power Supply Agreement as continued under this Amendment No. 12A, but shall credit power purchased from Seller by Buyer Participant as satisfying up to 225 MWs of power purchase and delivery requirements it is obligated from the Buyer to the Buyer Participant under the reassigned Power Sales Agreement between Jasper, Texas, and the Vinton Public Power Authority, dated April 27, 2008, as amended March 27, 2011;

WHEREAS, THE Buyer Participant will be responsible solely for the payment to the Seller of amounts due for power supplies under the Supplemental Power Supply Agreement, and the Buyer will no longer have such obligations, the Buyer Participant will enter into a new Settlement Agent Agreement with the Trustee of the Jasper/VPPA Settlement Trust, and the current Settlement Agent Agreement will be terminated upon payment of the final invoice from the Seller to the Buyer at the end of August 2013,

NOW THEREFORE, for and in consideration of the foregoing and the mutual covenants and agreements set out herein, and other good and valuable mutual consideration the receipt and sufficiency of which is hereby acknowledged and accepted by all Parties, the Parties do hereby agree as follows as of the Effective Date of this Partial Waiver Agreement and Amendment No. 12A:

SWOM-VPPASRPRAAmendment12APartialWaiverAgreement-a

1.    Section 2.3(c) of the Supplemental Requirements Power Supply Agreement is deleted in its entirety and replaced with the following:

        "(c)    If all of the conditions precedent set forth in Section 2.3(a) have not been satisfied (or waived by the Party on whose behalf the condition has been granted, other than by a waiver under Section 2.3(d)) on or before December 1, 2013, then any Party shall have the right to terminate this Agreement upon written notice to the other Parties at any time, effective as of August 1, 2013, unless such Party's failure to perform its obligations under Section 2.3(b) shall be the reason that one or more of such conditions shall have not been satisfied. Termination of this Agreement pursuant to this Section 2.3(c) shall terminate all rights and obligations of the Parties under this Agreement, without any liability of one Party to the other Parties except for any liabilities incurred prior to the effective date of termination and for prior breaches of this agreement by a Party."

2.    Section 2.3(d) of the Supplemental Requirements Power Supply Agreement is deleted in its entirety and replaced with the following:

        "(d)    The conditions precedent listed in Section 2.3(a), to the extent they have not been satisfied or waived, are hereby partially and temporarily waived by the Parties as of December 1, 2011, for the period from and including December 1, 2011, to and including December 1, 2013, so that the Delivery Period Start Date shall be December 1, 2011, and the Delivery Period shall commence on December 1, 2011, subject to termination of the Agreement as of August 1, 2013, if either Party gives notice of termination pursuant to Section 2.3(c) as provided therein."

3.    Articles 7, 9, 10, 11 and 12 of the Supplemental Requirements Power Supply Agreement are hereby incorporated herein by reference and shall apply *mutatis mutandis* to this Partial Waiver Agreement and Amendment No. 10.

4.    The Buyer Participant declines to waive the conditions precedent of Section 2.3(c) for any and all parts of the Supplemental Requirements Power Supply Agreement as would otherwise apply between the Buyer Participant and the Buyer, so that as between the Buyer and the Buyer Participant the Supplemental Power Requirements Power Supply Agreement is terminated and as between the Seller and the Buyer Participant the Supplemental Requirements Power Supply Agreement shall be interpreted and applied as a power purchase and sale between them to the extent power is purchased and sold between them; provided, that the Seller and Buyer may enter into such amendments to the Supplemental Power Requirements Power Supply contract which as between the Seller and the Buyer pertains to the purchase and sale of power between the Seller and the Buyer but is in no way related to the purchase and sale of power by the Seller to the Buyer Participant. The Buyer Participant will credit up to 225 MWs of power purchased and delivered to it at the Designated Delivery Points by the Seller as satisfying the obligation of the Buyer to make such deliveries to the Buyer Participant under the Jasper/VPPA Power Sales Agreement currently reassigned to the Buyer. The Buyer Participant will enter into an agreement with the Settlement Agent, replacing the current Settlement Agent Agreement, dated

4

EWOM-VPPASRPSAAmendment11A!aPartialWaiverAgreement-a

October 17, 2011, though in substantially the same format and providing for payment by the Settlement Agent of the Seller's Invoice for power purchased and sold by the Seller to the Buyer Participant under the Supplement Requirements Power Supply Agreement as hereby amended with waiver of Section 2.3(a) as between the Seller and the Buyer Participant.

*[Remainder of page intentionally left blank.  Signature page follows.]*

*Exhibit B*

| | |
|---|---|
| **From:** | Bruce Halstead <bhal@jonesgranger.com> |
| **Sent:** | Friday, February 15, 2013 8:32 AM |
| **To:** | Sam Rayburn Municipal Power Agency |
| **Subject:** | FW: Cambridge Project: VPPA Positions |

For your Friday reading pleasure . . .
Bruce

**From:** Rjg2432@aol.com [mailto:Rjg2432@aol.com]
**Sent:** Thursday, February 14, 2013 3:09 PM
**To:** Bruce Halstead
**Cc:** mayor@cityofvinton.com; cityclerk@cityofvinton.com
**Subject:** Cambridge Project: VPPA Positions

Bruce:

There seems to be a deal of misinterpretation and concern as to VPPA's interests under the Cambridge Project in regard to SRMPA. The following is supplied on behalf of VPPA and is intended to clarify matters:

1) VPPA has no interest in impacting SRMPA's net revenues from the Cambridge Project. Also, VPPA has no interest as to whether SRMPA continues to participate in the Cambridge Project. If SRMPA elects to continue with the Cambridge Project, it together with VPPA will be required to apply funds contained in the joint reserve account to satisfy the cost of transmission upgrades to VPPA's retail IP loads. That expenditure is now expected to be in the $5 million range, with $1 million to be charged in 2013 and $3 million to be charged in 2014.

2) VPPA is interested in separating its power supply under the S-RPSA the way it separated its interest under the RPSA. Under such separation, SRMPA would continue to receive credit for the up to 225 MWs to be delivered under the S-RPSA for the IP loads, and would be relieved of liability to EWOM for VPPA payments. SRMPA would also continue to deliver the EGSL PRA power supply to VPPA for the IP loads, though that also could be separated without impact to SRMPA net revenues should SRMPA desire. EWOM is currently having its attorneys draft proposed separation language to govern a future separation once firm transmission is established to serve VPPA's retail IP loads.

3) There are a number of significant risk factors associated with the Cambridge Project as it has evolved. Some may occur at any time, such as retail refund charges and reduction in adders to the EGSL HLFS retail rate charged by SRMPA to ETI, as well as longer term events such as the PUCT review of capacity sale arrangements involving EGSL and ETI in the next ETI rate review. Retail and wholesale refunds are largely the consequence of estimated and actual gas pricing mechanisms as calculated by EGSL within a band allowed by the FERC or the LPSC. But those EGSL pricing calculations continue to be open to challenge by counsel for the LPSC and simply the passage of a couple of years does not reflect inattention on his part, as exemplified by the refund order experienced in 2012 based on 2004 circumstances and calculations.

4) ETI typically has filed with the PUCT for rate review every three years. That would mean another two years before the next filing, and a resultant review and rate order review occurring probably in

1

EXHIBIT B

2015 -- after the $5 million expenditure by SRMPA/VPPA for the transmission upgrades to serve VPPA's retail IP loads. Nisco is viewed by the PUCT as an EGSL/ETI affiliate, and particular scrutiny by the PUCT is anticipated for the SRMPA/ETI Power Sales Agreement which delivers Nisco output to ETI through SRMPA. Affiliate transactions may be disallowed by the PUCT in whole or in part. Disallowance of the SRMPA/ETI Power Sales Agreement could involve up to an $8 million annual impact on the Cambridge Project, though even a $3 million disallowance would largely wipe out all Cambridge Project benefits to SRMPA and VPPA. Doug is the best one to advise concerning those risks and impacts, and certainly Entergy can confirm them, though until they occur nothing is certain or quantifiable.

5) Notably, in addition to the approximately $5.5 million contained in the joint reserve account, the S-RPSA is at risk in the circumstance of a Cambridge Project collapse. All the Cambridge Project contracts are connected so that the termination of any one arising out of the foregoing risk events would bring down all the others. Without the collapse SRMPA and VPPA are hedged from full market prices under the S-RPSA as to the municipal loads for 2021 through 2034. So EWOM's interests are diverging from the pricing set in the S-RPSA. EWOM would be eager to have the S-RPSA power back to sell at full market prices, and that power would be released from the S-RPSA in a Cambridge Project collapse. With each and all of these risks, there is simply a gamble.

6) Whereas there are more than $5.5 million of public monies in the reserve account, and VPPA has the "fall back" original Nisco Deal should the Cambridge Project be impacted, VPPA will not be responsible to SRMPA as that $5.5 million is expended on transmission upgrades for the IP loads should the Cambridge Project collapse and the expenditure be lost to SRMPA. Whether Auction Revenue Rights under MISO, surviving a Cambridge Project collapse, are a security instrument and whether they are qualified for investment of $5 million public monies under Texas law is for SRMPA's counsel to opine.

7) VPPA suggests that, if SRMPA wishes to exit the Cambridge Project and to retain its portion of the current joint reserve account balance (approximately $5 million net of VPPA monies), VPPA would be willing to take assignment of the SRMPA contracts with Entergy under and an Escrow Agreement designed to allow firm transmission upgrades to be established for service the VPPA's retail IP loads. The Escrow would facilitate an SRMPA exit without liability to VPPA, EGSL, or ETI, and in basic form would work as follows:

> The SRMPA/EGSL PRA, the SRMPA/EGSL Nisco Offtake Agreement, the SRMPA/ETI Power Sales Agreement, the Combined Coordination Agreement, the SRMPA/Kenney Settlement Agent Agreement, the SRMPA/EWOM Transmission Upgrade Agreement, the SRMPA/EGSL Transmission Agent Agreement and the J/V Trust/SRMPA Re-Assignment Agreement would be assigned without recourse to VPPA and deposited in escrow with the Settlement Agent as Escrow Agent for future delivery to VPPA. As with the escrow established for Nelson 6 when SRMPA ownership was transferred to VPPA, and delivery was suspended in escrow for five years, SRMPA would be relieved of any and all liability under the foregoing agreements. Release from escrow and delivery to VPPA of the assignment agreements would be subject to firm transmission being established for VPPA's retail IP loads, upon which event the $5 million would be released to SRMPA. The Escrow Agent would be an irrevocable appointment, with irrevocable assignment of the foregoing agreements and full authority in the Escrow Agent to act, under the terms and conditions of the escrow solely with regard to the foregoing contracts and Cambridge Project issues, on behalf of and in the capacity of SRMPA.

EGSL/ETI would have to agree to the respective assignments.

Ralph

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Texas

| | |
|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| | ) |
| RALPH J. GILLIS, | ) |
| GILLIS, BORCHARDT & BARTHEL LLP and | ) |
| OBAIN ASSOCIATES LIMITED | ) |
| | ) |
| *Defendant(s)* | ) |

Civil Action No.   1:14-CV-00202-RC

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   JASPER/VPPA SETTLEMENT TRUST
by serving the Trustee, James F. Kenney
66 Lyric Arbor Circle
The Woodlands TX 77381

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Kenneth R. Wynne
Wynne & Wynne LLP
1021 Main Street, Suite 1275
One City Centre
Houston TX 77002

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  1:14-CV-00202-RC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

CAUSE NO. CV-1408743

| | |
|---|---|
| **SAM RAYBURN MUNICIPAL POWER** § | **IN THE DISTRICT COURT FOR** |
| **AGENCY** § | |
|     *Plaintiff,* § | |
| § | |
| **V.** § | **LIBERTY COUNTY, TEXAS** |
| § | |
| **RALPH J. GILLIS, GILLIS** § | |
| **BORCHARDT & BARTHEL LLP,** § | |
| **OBAIN ASSOCIATES LIMITED AND** § | |
| **THE JASPER/VPPA SETTLEMENT** § | |
| **TRUST.** § | **253ᴿᴰ JUDICIAL DISTRICT** |
|     *Defendant.* § | |

<u>**ORDER GRANTING MOTION TO ABATE**</u>

The Court, having heard and considered Defendant's Motion to Abate this matter pending resolution of the Federal action described in Defendant's Motion to Abate and the Court being of the opinion that such abatement should be Granted.

It is, therefore, ORDERED, ADJUDGED, AND DECREED that this matter is abated until such time as the Federal Civil Action No. 1:14-CV-00202-RC in the United States District Court for the Eastern District of Texas is resolved.

Signed the _____ day of _____, 2015.


_____

Judge Presiding

1

FILED
1/13/2015 10:49:16 AM
Donna G. Brown
District Clerk
Liberty County, T:
Joy Parker

**CAUSE NO. CV-1408743**

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER | § | IN THE DISTRICT COURT FOR |
| AGENCY | § | |
|     *Plaintiff,* | § | |
| | § | |
| V. | § | LIBERTY COUNTY, TEXAS |
| | § | |
| RALPH J. GILLIS, GILLIS | § | |
| BORCHARDT & BARTHEL LLP, | § | |
| OBAIN ASSOCIATES LIMITED AND | § | |
| THE JASPER/VPPA SETTLEMENT | § | |
| TRUST. | § | 253RD JUDICIAL DISTRICT |
|     *Defendant.* | § | |

## DEFENDANTS, RALPH J. GILLIS, GILLIS BORCHARDT & BARTHEL LLP, AND OBAIN ASSOCIATES LIMITED'S ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

    Subject to their earlier filed Joinder in the Trust's Motion to Transfer Venue to Montgomery Count and their notice of intention to file a motion to change venue if the Trust's Motion to Transfer Venue is denied, Defendants, Ralph J. Gillis, Gillis Borchardt & Barthel LLP, and, subject to its earlier filed Special Appearance herein, Obain Associates Limited, file their Original Answer to Plaintiff's Original Petition in the above-referenced matter.

### I.

    Defendants, Ralph J. Gillis, Gillis Borchardt & Barthel LLP, and Obain Associates Limited, deny each and all and singular, the material allegations in Plaintiff's Original Petition, as amended or supplemented, and demand strict proof thereof.

### II.

    Defendants, Ralph J. Gillis, Gillis Borchardt & Barthel LLP, and Obain Associates Limited, show the Court that exclusive jurisdiction of this case is in the federal court because most of the damages sought by the Plaintiff herein are based on contractual arrangements that are unenforceable by the Plaintiff because they have not been consented to by the Congress of the United States of

1

America as is required by Article 1, Section 10 Clause 3 of the United States Constitution, sometimes referred to as the "Compact Clause" which provides that: "No State shall, without the consent of Congress, .... Enter into any Agreement or Compact with another State..." SRMPA is a political subdivision of the State of Texas and VPPA is a political subdivision of the State of Louisiana. Therefore agreements providing that SRMPA participates in the excess revenue of the Cambridge Project resulting from the VPPA IP retail rate revenues held by the Coordinator after SRMPA has recovered the value of the rights that it gave up in the Cambridge Project contracts without having an authorization from the United States Congress in the form of an Interstate Compact with VPPA are not enforceable and therefore SRMPA is not entitled to any damages based on revenues from such unenforceable contracts. Gillis and GBB assert that because SRMPA has now recovered the value of the right to excess headroom that it gave up under the S-RPSA and since there is no mark-up on SRMPA's wholesale sale of power to VPPA under the S-RPSA or the Partial Requirements Agreement there is no longer any commercial transaction basis for payments to SRMPA absent an Interstate Compact. Gillis and GBB deny that any such required Congressional approval has been obtained. Therefore SRMPA has no interest in the excess revenues applied to pay the Reassignment Fee as provided in the Reassignment Agreement, nor the fee payments to Obain from those same excess revenues and therefore SRMPA is not entitled to any damages based on any loss or diminution of such revenues.

## III.

Defendants, Ralph J. Gillis, Gillis Borchardt & Barthel LLP, and Obain Associates Limited, specifically reserve the right to amend their answer to plead any affirmative defenses or other matters that must be specially plead or to assert any counterclaims that it may have after discovery in the case is complete.

2

## IV.

For the foregoing reasons, Defendants, Ralph J. Gillis, Gillis Borchardt & Barthel LLP, and Obain Associates Limited, move and pray the Court that upon trial Plaintiff recover nothing; that Defendants, Ralph J. Gillis, Gillis Borchardt & Barthel LLP, and Obain Associates Limited, recover costs from Plaintiff; and, for such other and further relief as Defendants may show itself justly entitled to receive.

Respectfully submitted,

**ORGAIN BELL & TUCKER, LLP**

/s/ *Michael J. Truncale*
Michael J. Truncale
State Bar No. 20258125
mjt@obt.com
J. Hoke Peacock II
State Bar No. 15678000
jhp@obt.com
470 Orleans
Beaumont, TX  77701
Telephone:  (409) 838-6412
Facsimile:  (409) 838-6959

**ATTORNEYS FOR DEFENDANTS,
RALPH J. GILLIS AND GILLIS, BORCHARDT &
BARTHEL LLP, AND OBAIN ASSOCIATES
LIMITED**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record on this the 13th day of January, 2015 as listed.

*VIA E-File and E-Serve*

Kenneth R. Wynne
kwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main St., Suite 1275
One City Centre
Houston, TX 77002

3

**Of Counsel:**

David E. Wynne
dwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main St., Suite 1275
One City Centre
Houston, TX 77002

- and –

Hubert Oxford, III
hubertoxford@benoxford.com
BENCKENSTEIN & OXFORD L.L.P.
3535 Calder, Suite 300
Beaumont, TX 77706

E. R. Norwood
enorwood@ednorwoodlaw.com
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX  77575

Terry Fitzgerald
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana, Suite 500
Pennzoil Place
Houston TX 77002

                                        /s/ *Michael J. Truncale*
                                        Michael J. Truncale

FILED
1/13/2015 10:30:32 AM
Donna G. Brown
District Clerk
Liberty County, T?
Joy Parker

CAUSE NO. CV-1408743

| | |
|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY § | IN THE DISTRICT COURT FOR |
| **Plaintiff,** § | |
| § | |
| V. § | LIBERTY COUNTY, TEXAS |
| § | |
| RALPH J. GILLIS, GILLIS § | |
| BORCHARDT & BARTHEL LLP, § | |
| OBAIN ASSOCIATES LIMITED AND § | |
| THE JASPER/VPPA SETTLEMENT § | |
| TRUST. § | 253RD JUDICIAL DISTRICT |
| **Defendant.** § | |

## DEFENDANTS' RALPH J. GILLIS, GILLIS BORCHARDT & BARTHEL LLP AND OBAIN ASSOCIATES LIMITED'S JOINDER IN THE TRUST'S MOTION TO TRANSFER VENUE AND NOTICE THAT THEY WILL FILE A MOTION TO CHANGE VENUE ON GROUNDS OF LOCAL PRJUDICE IF THE TRUST'S MOTION TO TRANSFER IS DENIED.

TO THE HONORABLE COURT:

Defendants' Ralph J. Gillis, Gillis Borchardt & Barthel LLP and, subject to its earlier filed

Special Appearance herein, Obain Associates Limited (collectively "Gillis Defendants') join in the

Jasper/VPPA Settlement Trust's motion to transfer venue to Montgomery County, Texas and give

notice to the Plaintiff and the Court that if the Trust's motion to transfer is denied that they intend to

file a motion to change venue based on local prejudice under Texas Rules of Civil Procedure 257-

259.

## INTRODUCTIONS

1.       Plaintiff is Sam Rayburn Municipal Power Agency ('SRMPA"); the Gillis Defendants' are

Ralph J. Gillis, Gillis Borchardt & Barthel LLP and Obain Associates Limited.

2.       Plaintiff sued the Gillis Defendants in Liberty County, Texas for breach of fiduciary duty,

1

unjust enrichment, money had and received and negligence.

3.      The Gillis Defendants ask the Court to take judicial notice that (a) SRMPA is a political subdivision of the State of Texas that is owned by the Cities of Liberty, Livingston and Jasper and (b) SRMPA also provides electric power to the citizens that live in the city limits of those three cities and the rates that those citizens pay for the electricity that they use is based on the cost of the power that the cities purchase from SRMPA.  Since any damages awarded to SRMPA in this suit will inure to the benefit of the City of Liberty and to its citizens who use electricity, the Gillis Defendants' will be prejudiced if forced to try its case in Liberty County, Texas because many, if not the majority, of the potential jurors in the jury pool will be citizens residing in the City of Liberty whose economic interest would be served by an award of damages to SRMPA in this case.

4.      If the Trust's motion to transfer venue to Montgomery County is denied by the Court, the Gillis Defendants will immediately file a motion to change venue under Texas Rules of Civil Procedure 257-259 with supporting affidavits or declarations.

## **ARGUMENT & AUTHORITIES**

5.      In addition to the reasons set forth in the Trust's Motion to Transfer Venue, the court should transfer this case to another county because an impartial trial cannot be had in Liberty County.  Tex. Civ. Prac. & Rem. Code §15.063(2); Tex. R. Civ. P. 257(c).  A trial in this county will deprive the Gillis Defendants' of their due process rights to a fair trial under United States Constitution amendment 14 and Texas Constitution article 1, section 19.  *See Dorchester Gas Prod'g Co. v. Harlow Corp.*, 743 S.W.2d 243, 253 (Tex. App.-Amarillo 1987, no writ).

**PRAYER**

6.     For these reasons, the Gillis Defendants ask the court to grant the Trust's motion to transfer this case to Montgomery County, and that if the Court decides to deny the Trust's motion to transfer venue to Montgomery County that the Court give the Gillis Defendants until the Monday after the expiration of ten days following the date of the Court's order denying the trusts motion in which to file a motion to change venue with the required supporting affidavits, etc.

Respectfully submitted,

**ORGAIN BELL & TUCKER, LLP**

/s/ *Michael J. Truncale*
Michael J. Truncale
State Bar No. 20258125
mjt@obt.com
J. Hoke Peacock II
State Bar No. 15678000
jhp@obt.com
470 Orleans
Beaumont, TX  77701
Telephone:  (409) 838-6412
Facsimile:  (409) 838-6959

**ATTORNEYS FOR DEFENDANTS,
RALPH J. GILLIS AND GILLIS, BORCHARDT
& BARTHEL LLP, AND OBAIN ASSOCIATES
LIMITED**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been forwarded to all counsel of record on this the 13th day of January, 2015 as listed.

*Via E-File and E-Serve*
Kenneth R. Wynne
kwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main St., Suite 1275
One City Centre
Houston, TX 77002

**Of Counsel:**

David E. Wynne
dwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main St., Suite 1275
One City Centre
Houston, TX 77002

**- and –**

Hubert Oxford, III
hubertoxford@benoxford.com
BENCKENSTEIN & OXFORD L.L.P.
3535 Calder, Suite 300
Beaumont, TX 77706

E. R. Norwood
enorwood@ednorwoodlaw.com
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX  77575

Terry Fitzgerald
Royston, Rayzor, Vickery & Williams LLP
711 Louisiana, Suite 500
Pennzoil Place
Houston TX 77002

                                        */s/ Michael J. Truncale*
                                        Michael J. Truncale

4

FILED
1/26/2015 12:16:59 PM
Donna G. Brown
District Clerk
Liberty County, TX
Joy Parker

**CAUSE NO. CV1408743**

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| V. | § § | LIBERTY COUNTY, TEXAS |
| RALPH J. GILLIS, GILLIS, BORCHARDT & BARTHEL LLP, OBAIN ASSOCIATES LIMITED, AND JASPER/VPPA SETTLEMENT TRUST | § § § § | 253RD JUDICIAL DISTRICT |

<u>NOTICE OF FIRM'S CHANGE OF ADDRESS</u>

COMES NOW, ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P., in the above entitled and numbered cause, and files this Change of Address, notifying the Court and all parties that counsel's firm has moved.  The new address for the undersigned attorney of record is as follows:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
1600 Smith Street, Suite 5000
Houston, Texas  77002-7380

Telephone, facsimile, website, and e-mail information remain unchanged.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, LP

By:___/s/ Terry Fitzgerald_____
Terry Fitzgerald
State Bar No. 07089025
1600 Smith Street, Suite 5000
Houston, TX  77002
(713) 224-8380 Telephone
(713) 225-9945 Facsimile
terry.fitzgerald@roystonlaw.com

**ATTORNEY FOR DEFENDANT,
JASPER/VPPA SETTLEMENT TRUST**

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of January 2015, a true and correct copy of the Notice of Firm's Change of Address was served on all counsel of record pursuant to Rule 21a of the Texas Rules of Civil Procedure.

Kenneth R. Wynne
*Attorney-in-Charge*
David E. Wynne
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002

E. R. Norwood
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX  77575

*Attorneys for Plaintiff*

/s/ Terry Fitzgerald
Terry Fitzgerald

FILED
1/28/2015 6:43:28 PM
Donna G. Brow
District Clerk
Liberty County, T.
Joy Parker

CAUSE NO. CV-1408743

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| v. | § § | LIBERTY COUNTY, TEXAS |
| RALPH J. GILLIS, GILLIS, BORCHARDT & BARTHEL LLP, OBAIN ASSOCIATES LIMITED and THE JASPER/VPPA SETTLEMENT TRUST | § § § § § | |
| *Defendants* | § § | 253rd JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION

Plaintiff Sam Rayburn Municipal Power Agency files this First Amended Petition against Ralph J. Gillis, Gillis, Borchardt & Barthel LLP, Obain Associates Limited and the Jasper/VPPA Settlement Trust, by its Trustee, James F. Kenney, as follows:

### NATURE OF ACTION

1.      This action is brought by a quasi-governmental agency - that is owned by three Texas municipalities (Liberty, Jasper and Livingston) -- against the agency's long time outside legal counsel and two entities that the legal counsel defendants created, own and operate.  All of the defendants cooperated and combined to facilitate and conceal decades-long breaches of the fiduciary duty the lawyer defendants owed to the agency. Those breaches, and the other defendants' participation in them, have enabled the defendants to benefit, at the client's expense and without its knowledge, to a multi-million dollar magnitude.  Even now, contracts the lawyer defendants arranged for the agency are structured so the defendants are currently receiving, and will, unless the Court intervenes continue to receive, some $1 million every year until 2036. The defendants' conduct constitutes extreme dishonesty and failure of professional responsibility.

## **PARTIES**

2.     Plaintiff Sam Rayburn Municipal Power Agency ("the Plaintiff") is a joint powers agency and political subdivision of the State of Texas. It was created by the cities of Jasper, Liberty, and Livingston, Texas on October 31, 1979.  It is duly organized and continuing under the laws of the State of Texas, TEX. UTIL. CODE ANN. § 163.051 (Vernon 1998).  It is charged with securing the most economical and reliable long and short-term sources of power and energy for its customers.

3.     Defendant Ralph J. Gillis ("Gillis") is a lawyer who resides in Massachusetts and is a name partner with the law firm Gillis, Borchardt & Barthel LLP.

Defendant Gillis, Borchardt & Barthel LLP ("Gillis Borchardt") is a law firm that  has its principal place of business in Hingham, Massachusetts.

Gillis and Gillis Borchardt may be referred to as the "Lawyer Defendants".

Defendant Obain Associates Limited ("Obain") is a Massachusetts business corporation, owned by Gillis (and his wife) that has its principal place of business in Hingham, Massachusetts.

The Lawyer Defendants and Obain have been served with process at their joint office at 160 Old Derby Street, Suite  227, Hingham, MA 02043 and have filed answers.

The Jasper/VPPA Settlement Trust (the "J/V Trust") is a trust that Gillis created for his own benefit with Obain as one of its beneficiaries.  Its registered office is the same address as that of the other defendants. The J/V Trust has been served through James F. Kenney as its trustee at 66 Lyric Arbor Circle, The Woodlands, Texas 77381.  It has filed an answer.

Obain and the J/V Trust may be referred to as the "Accomplice Defendants".

2

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over the Defendants. Each of the Defendants has a substantial connection with Texas arising out of actions and conduct that they purposefully directed towards Texas, and the causes of action being brought here arise out of and relate to the Defendants' contacts with Texas. The Defendants have purposefully availed themselves of the laws of the State of Texas and have established "minimum contacts" within Texas. Exercising personal jurisdiction over the Defendants in this matter would not offend traditional notions of fair play and substantial justice.

5.      All of the Defendants except Obain have made general appearances in this Court, thereby subjecting themselves to personal jurisdiction in this Court.   Obain has repeatedly admitted in a related federal court case that it is subject to personal jurisdiction in the Courts of this State.  Obain conducts its primary, if not its only, business activity in Texas.  From the moment Gillis created it almost fifteen years ago until today, Obain has entered into a series of contracts and amendments to those contracts with the City of Jasper, Texas ("Jasper") under which Obain has pursued business development opportunities for Jasper.  Those contracts, and Obain's activities related to them, have focused on Texas. Indeed, Gillis formed Obain for the explicit purpose of receiving fees from Jasper, for Gillis' account, for arranging transactions that would generate profits for Jasper.  Under Gillis' direction and with the cooperation of the other Defendants, a series of such transactions were arranged, and Obain has received substantial fees in accordance with its contract with Jasper.  These transactions have involved the generation, transmission and sales of electrical power in Texas among parties located primarily in Texas such as Entergy Corp. and its affiliates and subsidiaries, the City of Jasper, the Plaintiff and the J/V Trust.  Obain is also a beneficiary of the J/V Trust, which has, itself, entered into contracts with Jasper in support of Obain's receipt of significant fees. Gillis even arranged for Obain to

have a role in the power of appointment and/or removal of the trustee of the J/V Trust and, indeed, appointed the current trustee of that trust to serve in that capacity. Previously, Obain occupied a similar beneficiary and trustee-appointing position with a separate "Jasper Trust," whose only function was to serve Obain's interests in Texas. In short, Obain was created to be active primarily if not exclusively in Texas, has focused its business development activities in and directed toward Texas, has entered into most, if not all, of its contractual relationships with parties in Texas, and has done so with a view to generating profits for Jasper and hence for itself and Gillis in Texas. This Court, therefore, has general jurisdiction over Obain. This Court also has special jurisdiction over Obain based on all of its activities alleged below that have been directed toward Texas and how those activities have given rise to the causes of action the Plaintiff is asserting against it in this case.

6.      Venue of this matter is proper in Liberty County, because all or a substantial part of the events giving rise to the claims being asserted in this Petition occurred in this County and, alternatively, because this is the County in which the Plaintiff resides and in which it resided when its causes of action accrued. Venue is also appropriate in Liberty County because the Plaintiff is a political subdivision as to whom, pursuant to TEX. CIV. PRAC. & REM. CODE §15.0151(a), any and all cases filed against it must be brought in Liberty County. The causes of action the Plaintiff is asserting in this action are outside the ambit of those covered by TEX. PROP. CODE ANN. § 115.001.

### DISCOVERY LEVEL

7.      Plaintiff intends that discovery be conducted under Level 3.

### FACTUAL BACKGROUND

8.      The Lawyer Defendants served as the Plaintiff's legal counsel for many years. Indeed, they structured most of the contractual arrangements under which the Plaintiff has

4

operated through those years. The Lawyer Defendants (sometimes under different names) also represented other of the parties to those contractual relationships as well, including Jasper, the J/V Trust, the "Jasper Trust", Obain and the Vinton Public Power Authority ("VPPA").   Indeed, Gillis is the managing owner of Obain, the founder of the J/V Trust, the Jasper Trust and Obain, and Gillis has also established Obain as a beneficiary of both the J/V Trust and the Jasper Trust. All of the Defendants maintain registered offices at the Lawyer Defendants' address.

9.     The Plaintiff obtains electrical power on a wholesale basis almost entirely from Entergy Corp. ("Entergy"), one or more of its affiliates, or a partnership of which an Entergy affiliate is a partner.   The Plaintiff sells the wholesale power it purchases to its constituent members (Jasper, Liberty and Livingston) and to VPPA, to support their respective retail sales to their residential and industrial users, and it sells other of such purchased power to Entergy Texas, Inc.. The current set of such contracts, as well as earlier similar contracts from which the current contracts evolved, were conceived, negotiated and drafted by the Lawyer Defendants as lawyers for the Plaintiff.   The earlier set of contracts was generally known as the "Nisco Deal." The current set of such contracts, along with a pre-existing Requirements Power Supply Agreement ("RPSA"), is known as the "Cambridge Project."

A.   <u>The Early History</u>

10.     Gillis has represented the Plaintiff from its beginning in 1979.  Soon thereafter, he conceived and structured an acquisition by the Plaintiff of an undivided ownership interest in the 540 MW coal-fired generating unit known as Nelson Station Coal Unit No. 6, along with a bond issue to finance that acquisition. By June 6, 1980, he had conceived and structured the "Joint Ownership Participation and Operating Agreement" that prescribed how the Plaintiff would

receive and have the right to sell a portion of the power that the Nelson Unit 6 would be generating.  By May 1, 1981, Gillis had conceived and structured a contract for the Plaintiff known as the "Power Supply Agreement" (the "PSA") as well as a number or related contracts referred to as the "Project Agreements".  The PSA contained a choice of law provision that it would be subject to Texas law.  The parties to the PSA were the Plaintiff and VPPA.  They agreed not only that the Plaintiff would supply VPPA's stated power and energy needs at that time, but would continue to do so into the future, up to forty years into the future, including through ensuing projects that the Plaintiff might undertake.  The PSA was amended in 1985 to expand the Plaintiff's right to receive power generated by Nelson Unit No. 6 and to expand the amount of power the Plaintiff would sell to VPPA.  Under that amendment, the parties reiterated that going forward they would be further expanding the amount of power the Plaintiff would sell to VPPA.

11.     By at least 1999, however, Gillis had formulated other plans, plans he designed to aggrandize himself, without disclosing to the Plaintiff the financial stake he would be carving for himself, through contracts he was conceiving and structuring that affected the Plaintiff's interests.  In connection with those plans, Gillis created Obain and, behind the curtain that Obain provided, he concealed from the Plaintiff the personal financial stake he was arranging for himself as he shifted the benefit from the next expansion of power being sold to VPPA away from the Plaintiff towards Jasper and, through Jasper, to Obain and hence to himself.  Gillis and Obain negotiated and structured those expanded supply arrangements through many communications and meetings in Texas, including particularly with representatives of Jasper, a Texas municipality, and Entergy Gulf States, Inc., a Texas corporation with its principal offices in Texas.

6

**B.**     <u>The History Since 1999</u>

12.     Gillis formed Obain in 2000 and created the Jasper Trust no later than October 1, 2001.  It was through those entities that Gillis arranged for Jasper, rather than the Plaintiff, to take the opportunity to supply VPPA's needs to meet the demand of its Industrial Participants (the "IP Loads").  On information and belief, per Gillis' design, Obain and the Jasper Trust took on roles in the new arrangements to disguise what Gillis was making with Jasper for Obain (and thereby Gillis and his wife) to receive significant fees from the revenues that Jasper would be receiving through the new contracts the Lawyer Defendants were structuring in Texas.  Those contracts included a) the "Agreement for the Assignment of Retail Load and the Assignment of Wholesale Output Contract and Instrument of Assignment by and between Entergy Gulf States, Inc. and Vinton Public Power Authority", b) the "Service Agreement between Entergy Gulf States, Inc. and City of Jasper for Jasper for Long Term Rate (Schedule SP) Sales", c) the "Service Agreement between City of Jasper, Texas and Vinton Public Power Authority Capacity and Energy Service", d) the "Contract Coordination Agreement between Entergy Gulf States, Inc. and City of Jasper, Texas", and e) the "Contract Coordination Agreement between Entergy Gulf States, Inc. and Vinton Public Power Authority".  Gillis provided that if any one of these agreements was terminated, it would terminate all of them.  All of those contracts contained choice of law provisions that they would be governed by Texas law.  They all directly affected the Plaintiff and other parties in Texas.

13.     On information and belief, Obain and Jasper first documented the fee arrangement between them via the "Obain Associates Limited Business Development Agreement" dated April 20, 2000.  They then perpetuated that fee agreement for Obain by the "Adjustment Agreement for Separate Settlement" of March 19, 2001.  In turn, that fee agreement was supplemented, or replaced, by their "Agreement for Business Development Services" of May 20, 2002.  Those

contracts were entered into in Texas, affected Texas parties and generated revenues in Texas from business activities conducted by Obain in Texas.   Each of such contracts, except the first one, contains a choice of law provision that specifies that the contracts are to be governed by Texas law.   The Lawyer Defendants created the Jasper Trust in 2001 to hide the fact, especially from the Plaintiff, that Obain and Gillis were receiving significant fees from Jasper related to the Nisco Deal.   Those fee payments, and the intentional concealment of those payments, occurred in Texas.

14.     As of approximately 2005, energy pricing was such that the amounts of Obain's fees from Jasper were declining.   In an effort to stanch the decline in its fees, Obain, through Gillis, entered into a series of annual amendments to Obain's compensation arrangements with Jasper so that Obain would be paid fees in a guaranteed fixed amount.   Even so, the value of the contracts to Jasper was declining, such that Jasper might exercise its right to terminate the contracts that Gillis and Obain had arranged.   Gillis and Obain then began a concentrated effort to modify the then existing contracts to avoid their being terminated, to ensure a fixed payment to themselves and to perpetuate those payments into the distant future.

15.     To those ends, by April, 2010, the Lawyer Defendants conceived and structured what became the current complex of agreements involving the Plaintiff, Obain and Jasper by which Gillis and Obain replaced their earlier fee arrangements with Jasper with a contract known as the "Nisco Settlement Agreement".   Under that Agreement, the payments that had previously flowed through the "Nisco Deal" contracts would now be redirected to flow from the Plaintiff to the J/V Trust and then, unbeknownst to the Plaintiff, through the J/V Trust to Obain, and then to Gillis, Jasper and VPPA.   The J/V Trust was created on April 14, 2010, and it entered into the assignment and reassignment and coordination contracts that were provided for in the Nisco Settlement Agreement in order to help the Lawyer Defendants and Obain disguise the reality that

8

much of the amounts the Plaintiff would be paying under the revised contracts was actually going to Gillis through Obain. Obain participated in the creation of the J/V Trust in order to help hide the fact that Gillis would be receiving a substantial portion of the fees the Plaintiff would be paying, to say nothing of the fact that Gillis would be receiving those payments for more than twenty-five years into the future. That scheme of concealment, including the Accomplice Defendants' participation in it, was arranged and implemented in Texas, was directed at parties in Texas and was designed to capture revenues generated in Texas, specifically revenues being paid by and for the Plaintiff, and to conceal from the Plaintiff that its lawyer was surreptitiously receiving millions of dollars, on the side, from transactions on which the Lawyer Defendants were acting as legal counsel for the Plaintiff. The job of the Accomplice Defendants was primarily to conceal the fact the Lawyer Defendants were being faithless to their client, the Plaintiff, and, unbeknownst to the Plaintiff, were receiving millions of dollars from others for work they were supposedly doing for the Plaintiff. The Nisco Settlement Agreement, itself, as well as the contracts to which it gave rise, provide explicitly that they are governed by the laws of the State of Texas. Obain thereby purposefully availed itself of the privilege of conducting activities within Texas and explicitly invoked the benefits and protections of Texas' laws in order to participate with the Lawyer Defendants in breaching their fiduciary duties to the Plaintiff.

16.     By virtue of their choice of law provisions, the complex of agreements that became effective through the foregoing activities are governed by Texas law. Under those agreements, known as the Cambridge Project, EGSL, an Entergy entity, acting as the Plaintiff's agent, sends directly to the J/V Trust amounts that are owed by the Plaintiff. In short, since 2011, the Plaintiff, without knowing it, has been paying the J/V Trust as much as $1 million or more per year that the J/V Trust pays to Obain and that Obain then pays to Gillis. That scheme,

9

and all of the Defendants' involvements in it, was arranged in Texas and directly affects the Plaintiff and others in Texas.

17.    The Plaintiff has learned only recently of Obain's existence and of how the Accomplice Defendants have been, and are, participating in Gillis' scheme to receive substantial payments for himself from the contracts on which the Lawyer Defendants represented the Plaintiff without disclosing his personal financial stake to their client, the Plaintiff.  Because of Gillis' concealment of his personal stake in those contracts, and because the Accomplice Defendants enabled that concealment, the Plaintiff could not have reasonably discovered those arrangements any earlier than it did.  Indeed, via email in November, 2011, the Plaintiff's Executive Director asked its lawyer, Gillis, to explain who held the beneficial interests in the J/V Trust and who was receiving the funds that were being paid to the J/V/Trust. Gillis replied that the terms of the J/V Trust were "considered confidential between Jasper and VPPA", but that the recipients of the funds paid by the Plaintiff to the J/V Trust were Jasper and VPPA.  Thus, Gillis fraudulently concealed that Obain was also a beneficiary of the J/V Trust, was receiving a significant portion of the payments the Plaintiff was making to the J/V Trust, and that the J/V Trust was passing the payments made to Obain along to Gillis.  Any otherwise potentially applicable period of limitations has either been tolled or has not begun to run based on Gillis' fraudulent concealment of his/Obain's stake in those funds and by the discovery rule.[1]  Because the concealment violated a fiduciary duty, the tolling effect is all the more clear.[2]  Moreover, the

---

[1]    Per the Texas Supreme Court: "[T]he general principle is this: accrual of a cause of action is deferred in cases of fraud or in which the wrongdoing is fraudulently concealed, and in discovery rule cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).

[2]    "We have twice held a fiduciary's misconduct to be inherently undiscoverable. *Willis*, 760 S.W.2d at 645 (attorney); *Slay*, 187 S.W.2d at 394 (trustee). The reason underlying

arrangements Gillis made with and through the Accomplice Defendants to obtain these undisclosed amounts constitute egregious violations of the fiduciary duty the Lawyer Defendants owed to the Plaintiff, including their obligations to make full disclosure and to act faithfully in their client's interest.  The Accomplice Defendants have actively participated with Gillis in the perpetration of his scheme and in the Lawyer Defendants' breach of fiduciary duty.

18.     Under settled law in Texas, because the Accomplice Defendants have knowingly participated with the Lawyer Defendants in their breach of fiduciary duty, they are jointly and severally liable to the Plaintiff.  The Defendants have also been unjustly enriched by all the amounts they have received through this mechanism that was undisclosed to the Plaintiff, and they should be required to disgorge to the Plaintiff all the amounts they have wrongfully received.[3]  Such disgorgement is also appropriate under the concept of money had and received. A constructive trust should be imposed on all such receipts by the Defendants and on any assets or rights of value that are fairly traceable to those receipts.  At a minimum, the J/V Trust is obtaining possession of the portion of the subject funds to which the Plaintiff is claiming and, therefore, is a stakeholder of that portion of those funds and should remit them into the registry of the Court to abide judicial resolution of the competing claims to them between the Plaintiff and the Defendants.

19.     Gillis, through Obain, has always held the unilateral right to install or remove anyone he wanted to serve as trustee of the Jasper Trust. Therefore, to the extent the Jasper Trust

---

both decisions is that a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996).

[3]     "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

contracted with the other above mentioned entities, Gillis was, himself, in a very practical sense, a party to those contracts.  Whenever he acted as the Plaintiff's lawyer in negotiating those contracts, Gillis was concealing that he was actually negotiating for Obain and for himself.  For at least a decade, the Jasper Trust disguised Obain's, and Gillis', roles in this scheme and prevented the Plaintiff from learning of Gillis' chicanery.  Gillis has also now maneuvered the J/V Trust into the same sort of disguising role and in so doing he has continued to negotiate for and advise the Plaintiff regarding contracts from which Obain and he not only realize undisclosed payments, but to which he, himself, is functionally a party.  Over decades, Gillis has co-opted his role as attorney for the Plaintiff for his own personal financial advantage while concealing his wrongs and actively misrepresenting his true purposes from his client, all of which constitutes the height of hypocrisy and the deepest depth of disloyalty.  The Accomplice Defendants' knowing and active participation in the Lawyer Defendants' scheme has been integral to Gillis' success in concealing the true facts from his client, the Plaintiff.

**C.    Gillis' Termination as the Plaintiff's Counsel and His Adverse Representation**

20.    The Plaintiff terminated its engagement of the Lawyer Defendants as its legal counsel in June, 2012. Since then the Lawyer Defendants have continued to represent VPPA and perhaps other of the above named parties with respect to their supposed rights under the Cambridge Project contracts.

21.    After they were terminated as counsel for the Plaintiff, the Lawyer Defendants, acting as counsel for VPPA, began pressing the Plaintiff to transfer some of its rights, but not all of its obligations, under one of the Cambridge Project contracts,

specifically the Supplemental Requirements Power Supply Agreement ("S-RPSA"),[4] to VPPA  Those efforts included sending the Plaintiff a "Power Supply Separation Agreement" by which the Plaintiff would surrender certain rights in favor of VPPA, but would retain significant obligations, including substantial payment obligations.  The Plaintiff declined to succumb to the pressure the Lawyer Defendants were applying and declined to enter the supposed Separation Agreement.  More recently, manifesting a clear intent to increase VPPA's pressure on the Plaintiff to transfer its contracts rights to VPPA, the Lawyer Defendants, acting explicitly as counsel for VPPA, sent a letter to the Plaintiff transmitting a formal notice to the Plaintiff that VPPA was terminating the S-RPSA ("Notice of Termination").[5] Following that notice, upon the urging of Entergy and its affiliates, VPPA and the Plaintiff agreed with the pertinent Entergy entities to a series of waivers and extensions by which those parties concurred that the S-RPSA has continued in effect, notwithstanding the Notice of Termination from VPPA. There has been, though, and continues to be, a disagreement between the Plaintiff and VPPA as to whether that contract can or should be terminated by VPPA.  In Plaintiff's opinion, VPPA lacks the right, under the S-RPSA, to take the action it has purported to take.  Moreover, VPPA has taken that action on the advice of the Lawyer Defendants, and VPPA's purported action is adverse to the Plaintiff's interests.  Manifestly, the purported termination action clearly regards the same subject matter on which the Lawyer Defendants previously represented the Plaintiff.

---

[4]     The Supplemental Requirements Power Supply Agreement ("S-RPSA") with Entergy affiliate EWO Marketing, Inc. ("EWOM") is dated August 8, 2011. In the S-RPSA, the Plaintiff agreed to purchase power from EWOM and to resell it to VPPA to serve VPPA's IP Retail Load needs. VPPA executed the S-RPSA as a "buyer participant."

[5]     The Notice of Termination is attached as **Exhibit A**. Although labeled as a "termination" notice, it is actually a purported modification whereby VPPA is purporting to effect the assignment of rights for which it earlier pressured, but is also purporting to leave some of the obligations, especially payment obligations, with the Plaintiff.

13

22.     By continuing to represent VPPA in its disagreement with the Plaintiff about whether VPPA can or should terminate (or modify) the contract for which the Lawyer Defendants sent the Plaintiff the notice of termination, which regards the same subject matter on which the Lawyer Defendants previously represented the Plaintiff, the Lawyer Defendants are violating the fiduciary duty they owe to the Plaintiff as their former client, as well as their obligations under the Texas Disciplinary Rules of Professional Conduct and the Massachusetts Rules of Professional Conduct.  This suit is brought in part to restrain the Lawyer Defendants from representing VPPA against the Plaintiff's interest and without its consent regarding the same subject matter on which the Lawyer Defendants previously represented the Plaintiff.  The Plaintiff has asked the Lawyer Defendants to refrain from such representation, and, through their counsel, the Lawyer Defendants have informally indicated they are refraining from such representation as it may be adverse to the Plaintiff's interest, but they have reserved for their own private determination what they think is adverse to the Plaintiff's interest and, in any event, have refused to make any representation as to anything they are refraining from doing in any formal or enforceable way.  Injunctive relief is necessary, therefore, to restrain that improper activity by the Lawyer Defendants.

23.     The Plaintiff's dispute with VPPA is ongoing, and it could potentially cause the Plaintiff an enormous amount of damage in part because the contract purportedly being terminated (or modified), the S-RPSA, is integrated with the other contracts that make up the Cambridge Project. As Gillis explained in correspondence prior to sending the Notice of Termination, if one of the contracts that comprise the Cambridge Project is terminated, the entire Cambridge Project could collapse.[6]  Therefore, VPPA's and the Plaintiff's dispute

---

[6]     *See* the email from Ralph Gillis to Bruce Halstead dated February 14, 2013, attached as **Exhibit B**.

threatens to jeopardize the entire Cambridge Project, which, if it were to be impaired, would threaten the Plaintiff's profitability with respect to the whole of the Cambridge Project.

### D.   Obain's Undisclosed Fee has Corrupted the Lawyer Defendants' Legal Advice to the Plaintiff and has Caused it Significant Damage

24.    For many years prior to 2011, Jasper sold power to VPPA to meet the needs of its "Industrial Participants" and the Plaintiff sold power to VPPA to meet its municipal needs.  Both Jasper and the Plaintiff bought the power they sold to VPPA from affiliates of what is now Entergy Corp.  Under those arrangements, neither Jasper nor the Plaintiff had responsibilities for delivering the power they were buying and then selling to VPPA. Delivery of the power was the seller's obligation.

25.    In 2010, however, Gillis began structuring new arrangements for VPPA to supply power to its industrial participants.  He knew he was including in those arrangements a change in the source for the power that theretofore was sold to Jasper for it to resell to VPPA for its industrial participants' load.   He knew that such a change would entail using different transmission facilities from those that had historically been used to deliver that power. He further anticipated that such a change would also entail a likely requirement to upgrade the capacity of the new transmission facilities and that, under those circumstances, the cost of that upgrade would likely be incurred by its then customer, Jasper.  If Jasper continued to be that customer, Jasper would bear that cost obligation, but, if it did, it would threaten Obain and Gillis' ability to continue to receive the payments Obain and Gillis were receiving through the Jasper Trust. Gillis, therefore – without disclosing to Plaintiff his personal financial stake in avoiding that cost risk to Jasper and to Obain and to himself – set about to shift that risk from Jasper to his other client, the Plaintiff, in a way that would protect his undisclosed fees, and the value of his stake in the new contract as a *de facto* party to the arrangements going forward.  He accomplished that by

15

conceiving, negotiating, and persuading the Plaintiff to enter into, a contract known as the S-RPSA.

26.     Under the S-RPSA, EWO Marketing, Inc. ("EWOM") became the seller, and the Plaintiff became the buyer, and the reseller to VPPA, of power to meet VPPA's industrial participants' load. In effect, the Plaintiff replaced Jasper as the buyer and reseller. Rather than disclosing to Plaintiff that the S-RPSA was designed to protect Jasper from a large expense to upgrade the capacity of the Entergy Transmission System, and, thereby, also to protect, enhance and perpetuate Gillis' personal stake in the fee he was receiving through the J/V Trust and to preserve the value of his position as a *de facto* party to the arrangements, Gillis instead presented the new agreement to the Plaintiff as one that would be highly profitable to the Plaintiff.

27.     Gillis did not make the Plaintiff aware of the consequences under the S-RPSA that the risk of paying for the transmission system upgrade would shift to the Plaintiff and would cause it to incur significant costs. For example, changing the designated source of the power that the Plaintiff would be buying required the use of different transmission facilities than had been used when Jasper was the buyer. Further, the S-RPSA, in obscurely worded provisions, imposed on the Plaintiff, as the new buyer of this power from EWOM, the obligation to pay the cost to upgrade the capacity of the different transmission facility, the Entergy Transmission System. Moreover, as the Lawyer Defendants drafted it, the S-RPSA required that the Plaintiff arrange for delivery of the power on a long-term basis. Rather than advising Plaintiff to arrange the required long-term delivery of power first, before entering the S-PRSA, Gillis encouraged the Plaintiff to enter into this new agreement before such long-term arrangements were in place. In short, Gillis portrayed the S-RPSA as a lucrative arrangement for the Plaintiff. In reality, and as Gillis knew, the Plaintiff was actually buying not one, but two, pigs in a poke – the prospect of a significant cost to upgrade the capacity of the Entergy Transmission System and the uncertainty

of obtaining a long-term delivery contract. Nonetheless, the Lawyer Defendants provided, in the S-RPSA, that the Plaintiff was obligated to pay a "Re-Assignment Fee" of $3 million per year to the J/V Trust from which Gillis, through the Accomplice Defendants, would continue to receive his fee of at least $1 million per year and would preserve the value of his status as a *de facto* party to the contracts.

28.     Unfortunately, as Gillis could foresee but failed to disclose to the Plaintiff, the risks to the Plaintiffs soon materialized. The S-RPSA was signed effective August 8, 2011, and deliveries of power under it began in December, 2011, but by mid-2012, the Plaintiff faced costs of as much as $5 million to upgrade the transmission facilities being used for those deliveries. The Plaintiff has now paid over $4.4 million for that upgrade, but based upon how Gillis portrayed the benefits of the S-RPSA, the Plaintiff did not anticipate those costs. Although Gillis failed to disclose the prospect of the facilities upgrade costs to Plaintiffs, Gillis later advised the Plaintiff that those upgrade costs were an element of a financial "bomb" to the Plaintiff's interests. Further, VPPA has asserted that a lack of a long-term delivery arrangement was made a ground for the Notice of Termination (or modification) of the S-RPSA that the Lawyer Defendants -- the same lawyers who had represented the Plaintiff in conceiving and drafting the S-RPSA -- sent to the Plaintiff on VPPA's behalf.

29.     Gillis also knew that the Entergy affiliated companies anticipated that they would change their membership, from the delivery system in which they had participated for years, to Midcontinent Independent System Operator, Inc. ("MISO"), and knew that such a change would reduce the operating margins that Gillis had represented to the Plaintiff it would experience under the S-RPSA. Even so, Gillis explicitly advised the Plaintiff that the delivery system change to MISO would not affect the Plaintiff's interests. The Entergy entities have now changed their membership to MISO, and that change has significantly reduced the operating

margins that Gillis represented to the Plaintiff it would experience under the S-RPSA.

30.     The Lawyer Defendants' failure to properly and accurately advise the Plaintiff regarding the probable costs the Plaintiff would incur from entering into the S-RPSA has caused the Plaintiff to realize far less benefit from the S-RPSA than the Plaintiff should have realized if the Plaintiff had been properly advised by the Lawyer Defendants.  Moreover, by representing VPPA, in its attempts to terminate (or modify) the S-RPSA, especially by purporting to take advantage of the provisions in the S-RPSA as to which the Lawyer Defendants failed properly and fully to advise the Plaintiff, the Defendants have caused the Plaintiff to incur significant attorney's fees and expenses of litigation.  In short, as a result of the Lawyer Defendants' breaches of their duties as the Plaintiff's attorneys, Plaintiff has been damaged in the amount of, at least, $5 million.

## CAUSES OF ACTION

### A.     Breach of Fiduciary Duty

31.     The Plaintiff incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs.

32.     Defendants' actions described herein constitute breaches of fiduciary duty owed to the Plaintiff.  The Plaintiff, therefore, sues for its actual damages, for forfeiture of revenues the Lawyer Defendants have received regarding their legal representation of the Plaintiff in connection with the Cambridge Project agreements and the Requirements Power Supply Agreement and its related agreements, and, to avoid unjust enrichment to the Accomplice Defendants and through them to Gillis, a constructive trust for the Plaintiff's benefit on all of the J/V Trust's receipts for Obain's account and for all receipts by Obain, and through Obain the Lawyer Defendants, from Obain's fee arrangements that have affected the Plaintiff without its knowledge.

33.     The Lawyer Defendants have breached, and are breaching, their fiduciary duty to the Plaintiff. The Lawyer Defendants have represented, and continue to represent, VPPA in disputes against the Plaintiff that have arisen out of, and are substantially related to, the Cambridge Project and its predecessor structures, without full disclosure to, and without obtaining consent from, the Plaintiff. The Plaintiff did not, and does not, consent to this representation. It is also reasonably probable that Defendants have revealed confidential information to VPPA during this representation. Defendants' actions have proximately caused the Plaintiff damages and are calculated to, and if unchecked will, proximately cause further damages to the Plaintiff going forward. More particularly, if VPPA succeeds in terminating or modifying the S-RPSA as the Lawyer Defendants have advised it to try to accomplish, the Plaintiff will at least be inhibited in realizing the revenues it is currently receiving, if not deprived of those revenues altogether, with the effect that any profitability from that contract will be impaired or even destroyed. Moreover, the Lawyer Defendants induced the Plaintiff into accepting risks of significant costs and reduced operating margins it did not anticipate by entering into the S-RPSA, and they persuaded the Plaintiff to enter into the S-RPSA to preserve for Gillis, through the Accomplice Defendants, his continued receipt of his undisclosed compensation of at least $1 million per year. That inducement, without the required disclosures to the Plaintiff, has caused and is causing the Plaintiff to suffer damages of at least $5 million from the materialization of the risks the Lawyer Defendants failed to advise the Plaintiff were inherent in the S-RPSA.

34.     That said, the Plaintiff's rights related to the Lawyer Defendants' breaches of fiduciary duty are not limited to recovering its actual damages. The Plaintiff is also entitled to a forfeiture of all compensation the Lawyer Defendants have received in connection with the subject matter regarding which they have committed those breaches. As held by the Texas

Supreme Court, "[A] client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client."[7] Because the Accomplice Defendants have knowingly participated in those breaches of fiduciary duty, they are equally liable for such forfeiture, at least to the extent of the undisclosed fee of $1 million or more per year they have been receiving for Gillis' account.

35.    The Defendants' breaches of fiduciary duty and accompanying fraudulent concealment and unjust enrichment have been both clear and serious. Defendants' conduct was also intentional, willful, and malicious and thereby warrants an award of exemplary damages.

**B.**    **Unjust Enrichment**

36.    The Plaintiff incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 35.

37.    The Defendants have been unjustly enriched by their receipt of the funds described above, because they have received those funds under circumstances in which they may not justly retain them. Those funds, as well as anything of value to which those funds have been applied by the Defendants should be restored to the Plaintiff.

**C.**    **Money Had and Received**

38.    The Plaintiff incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 35.

39.    The Defendants have received the foregoing funds that in equity and good conscience belong to the Plaintiff, and they should be required to return such funds in full, as well as anything of value to which those funds have been applied by the Defendants.

---

[7]    *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999).

**D.  Negligence**

40.  The Plaintiff incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 35.

41.  In the event it is ever concluded that the Lawyer Defendants did not intentionally fail to disclose to the Plaintiff the significant risks it was accepting by entering into the S-RPSA, then such failure to disclose was negligence and constitutes legal malpractice.  Such negligence, in the alternative, was a proximate cause of Plaintiff's actual damages described above.

## PRAYER

The Plaintiff prays that, upon a full trial on the merits, the Court find in favor of the Plaintiff and against the Defendants and that the Plaintiff be awarded jointly and severally from the Defendants (a) its actual damages, (b) forfeiture of all compensation to the Defendants regarding the Cambridge Project and its predecessor structures which is traceable to funds from or for the Plaintiff, (c) forfeiture by the J/V Trust of all revenues it has received that are traceable to funds from or for the Plaintiff that were destined for Obain or Gillis, (d) a constructive trust on all receipts by the Accomplice Defendants and, through them or either of them, by the Lawyer Defendants, that have affected the Plaintiff, (e) a declaration that the Lawyer Defendants' conduct in representing VPPA, and possibly others, against the Plaintiff's interest is a violation of their ethical and fiduciary responsibilities as lawyers to the Plaintiff, (f) a permanent injunction restraining and enjoining the Lawyer Defendants from advising, consulting or representing VPPA in any way affecting its contractual arrangements with the Plaintiff, (g) exemplary damages, (h) prejudgment and post judgment interest at the maximum rate allowed by law; and (i) its costs of court.  The Plaintiff further requests all other relief to which it is entitled, whether at law or in equity.

Respectfully submitted,

By: /s/ Kenneth R. Wynne
        Kenneth R. Wynne
        State Bar No. 22110000
        kwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX 77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)

**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

OF COUNSEL:

David E. Wynne
State Bar No. 24047150
dwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX 77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)
**- and -**

E. R. Norwood
State Bar No. 15113500
enorwood@ednorwoodlaw.com
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX 77575
(936) 336-3700 (Telephone)
(936) 336-7634 (Facsimile)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel listed below either electronically through the Court's filing system, direct e-mail or facsimile on this the 28th day of January, 2015.

J. Hoke Peacock, II
Michael Truncale
Orgain Bell & Tucker, L.L.P.
470 Orleans Street
Beaumont TX 77704-1751

Terry Fitzgerald
Royston, Rayzor, Vickery & Williams LLP
1600 Smith, Suite 5000
Houston TX 77002


_/s/ Kenneth R. Wynne_____
Kenneth R. Wynne

*Exhibit A*

# GILLIS, BORCHARDT & BARTHEL LLP

Counsellors at Law
Suite 227
160 Old Derby Street
Hingham, MA 02043

RALPH J. GILLIS*
CHARLES A. BORCHARDT*
PHILIP H. BARTHEL*
RALPH B. GILLIS*

Telephone: (781) 741-2432
Fax: (781) 740-07 N

## FACSIMILE TRANSMISSION

TO:   Bruce Mintz, Exec. Director      FAX:   832-747-1047

Sam Rayburn Muncipal Power Agency   RETURN FAX: (781) 740-0768

1517 Trinity Street

Liberty, TX 77575

FROM:  Ralph J. Gillis, Attorney      DATE:   8/9/13

NO. OF PAGES INCLUDING COVER SHEET:   12

NOTES:

[X] ORIGINAL WILL FOLLOW      [ ] ORIGINAL WILL NOT FOLLOW
[ ] RESPONSE REQUIRED         [ ] NO RESPONSE REQUIRED

CONFIDENTIALITY NOTE

THE DOCUMENTS ACCOMPANYING THIS FACSIMILE COVER PAGE CONTAIN INFORMATION FROM THE LAW FIRM OF GILLIS, BORCHARDT & BARTHEL LLP THAT IS PRIVILEGED & CONFIDENTIAL. THE INFORMATION IS INTENDED TO BE FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ON THIS TRANSMISSION SHEET. IF YOU ARE THE INTENDED RECIPIENT, PLEASE BE AWARE THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR USE OF THE CONTENTS IS PROHIBITED. IF YOU HAVE RECEIVED THIS TELECOPY IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE RETRIEVAL OF THE DOCUMENT AT NO COST TO YOU.
IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL: (781) 749-2432

**EXHIBIT A**

# GILLIS, BORCHARDT & BARTHEL LLP

### Counsellors at Law

Suite 227
160 Old Derby Street
Hingham, MA 02043

RALPH J. GILLIS*
CHARLES A. BORCHARDT*
PHILIP H. BARTHEL*

RALPH B. GILLIS*

Telephone: (7 1) 749-2432
Fax: (781) 40-0768
www.GBT LP.com

Of Counsel

JOHN C.L. BAI EY, Solicitor
Quality Solicito: Hill & Abbott
Threadnee o House
9-16 Mark t Road
Chelmsford. JMI DCI
England U.K.

VINCE A. GI LLR, Q.C.
321 Town s of Street
Sydney, New S oth B1P5T1
Canp a

MOIRA C. JILLIS
3262 Westheimer t oad, Suite 314
Houston, T: 77098

<u>Facsimile Transmission</u>

August 9, 2013

Marilyn Sutton, President
Sam Rayburn Municipal Power Agency
c/o City Hall
200 West Church Street
Livingston, Texas 77351
Fax (936) 327-7778

Bruce Mintz, Executive Director
Sam Rayburn Municipal Power Agency
1517 Trinity Street
P.O. Box 10047
Liberty, Texas 77575
Fax (832) 747-1047

EWO Marketing, L.P.
Attn: President
2001 Timberloch Place
1st Floor – South
The Woodlands, Texas 77380
(281) 297-5458

Sam Rayburn Municipal Power Agency
Attention: Administrator
310 Main Street
Liberty, Texas 77575

RE:  Notice of Termination
Supplemental Requirements Power Supply Agreement

Dear Ms. Sutton, Mr. Mintz & Mr. Rosenleib:

This is at the instruction of the Vinton Public Power Authority (VPPA), Vinton, Louisiana, 70668. Notice is hereby given to the Sam Rayburn Municipal Power Agency (SRMPA) and to EWO Marketing, L.P. (EWO), pursuant to the Supplemental Requirements Power Supply Agreement (S-RPSA), dated August 4, 2011, Sections 2.3(a)(viii), 2.3(c), and 11.6, that VPPA has acted to terminate that S-RPSA as to Power supplies to VPPA from SRMPA effective September 1, 2013. A copy of VPPA's action Implementing the Notice of Termination is attached, and an executed original will be sent to you by mail.

---

*Massachusetts & District of Columbia Bars
*Massachusetts Bar

*Oklahoma Bar and Offi e
*Massachusetts & Rhode Island Bars

This is further to confirm that VPPA again will extend the S-RPSA with EWO.  VPPA will conti·ue to treat that portion of VPPA's direct Power purchase from EWO for VPPA's certain retail load, up to 225 MWs, as meeting that portion of SRMPA's continuing power supply obligation to VPPA for VPPA's certain retail load under the re-assigned Jasper/VPPA Power Supply Agreement, dated July 31, 2011, as amended March 27th, 2011 .

Under this arrangement, the Settlement Agent will be billed by EWO for that Power as supp.l·d directly to VPPA by EWO for up to 225 MWs of VPPA's certain retail load.  The Settlement Agent Contract, dated October 17, 2011, will be amended to authorize this payment, and to preserve net distributions to VPPA and SRMPA.

There will be no change in the Cambridge Project cash flows to any Party, except that the ultimate distribution to SRMPA will be net of VPPA's 9.39% previously held by SRMPA in escrow and hereafter to be directly distributed to VPPA.

The Settlement Agent Contract will be amended to reflect the net distribution to SRMPA as consistent with the acknowledgement by VPPA that SRMPA's obligation to deliver up to 225 MWs to VPPA for its certain retail load under the above Jasper/VPPA Power Sales Agreement is satisfied.

SRMPA is hereby relieved of liability under the S-RPSA, Section 2.4(b)(ii), for payment by VPP/ to EWO for purchase of Power from EWO.

An amendment has been prepared for the Settlement Agent Contract and is attached.  Execution of that amendment is required for distributions to be made to SRMPA for Power supplied during the month of September.

Sincerely,

Ralph J. Gills

RJG/ms

Enclosures

Copies:  James F. Kenney, Settlement Agent
         Kenneth O. Stinson, President, VPPA
         Mary Vice, Secretary, VPPA
         Mike Lout, Mayor, Jasper, Texas

## SUPPLEMENTAL REQUIREMENTS POWER SUPPLY AGREEMENT

### Notice of Termination

THIS SUPPLEMENTAL REQUIREMENTS POWER SUPPLY AGREEMENT (the "Agreement"), dated August 4, 2011, NOTICE OF TERMINATION (Notice), is made by the Vinton Public Power Authority, as Buyer Participant and hereby given to EWO Marketing, Inc., as Seller, and Sam Rayburn Municipal Power Agency, as Buyer (each a "Party" and together the "Parties" to the Agreement and its prior Amendments Nos. 1-11), effective as of the date below subscribed by the Buyer Participant (the "Effective Date").

WHEREAS, the Agreement provides for the commencement of delivery of Power upon the satisfaction or waiver of certain conditions precedent as set out in Section 2.3 therein;

WHEREAS, the conditions precedent in Section 2.3(a), other than Section 2.3(a)(vi), may not have been satisfied or waived under Section 2.3(a) or 2.3(c) as of September 1, 2013;

WHEREAS, the Parties have entered into those certain Partial Waiver Agreements and Amendments Nos. 1--11 (Interim Waivers) to Supplemental Requirements Power Supply Agreement, and commenced purchase and sales of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent, and to that end the Parties agreed in that certain Partial Waiver Agreement and Amendment No. 11 to Supplemental Requirements Power Supply Agreement, dated effective as of July __, 2013 ("Amendment No. 11") that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including September 1, 2013;

WHEREAS, the Buyer Participant herein Notices to the Parties under the Agreement, Section 2.1, that the conditions precedent contained in Section 2.3(a), in particular the condition precedent contained in Section 2.3(a)(viii), will not have been satisfied or waived by the Buyer Participant under Section 2.3(a) or 2.3(c) as of September 1, 2013;

WHEREAS, the Buyer Participant herein Notices to the Parties under the Agreement, Section 2.1, that the conditions precedent contained in Section 2.3(a), in particular the condition precedent contained in Section 2.3(a)(viii), will not have been satisfied or waived by the Buyer Participant under Section 2.3(a) or 2.3(c) as of September 1, 2013, and therefore under the Agreement, Section 2.3(c), the Buyer Participant will decline to waive the unsatisfied conditions precedent as to the Buyer and thereby will terminate the Agreement effective on September 1, 2013 (the Termination Date) as between the Buyer and the Buyer Participant;

Notice of Termination

WHEREAS, the Buyer Participant will waive the unsatisfied conditions precedent insofar as the purchase and sale of Power by the Seller to the Buyer Participant, as such waiver is set forth in Partial Waiver Agreement and Amendment No. 12A to Supplemental Requirements Power Supply Agreement, dated effective as of August ___, 2013 ("Amendment No. 12A");

WHEREAS, Seller will incur no additional obligations, duties or responsibilities as a result of the continuation of the Agreement as waived herein by the Buyer Participant, and the action of the Buyer Participant as contained in this Notice does not prevent the Seller and the Buyer from concluding a further Partial Waiver Agreement and Amendment No. 12B to Supplemental Requirements Power Supply Agreement, dated effective as of August ___, 2013 ("Amendment No. 12B"), thereby continuing the purchase and sale of Power to the Buyer for its municipal loads as contained in the Agreement but not to serve the loads of the Buyer Participant;

WHEREAS, the effect of this Notice is that upon the Termination Date the Buyer is relieved of its joint and several responsibility for VPPA's obligations under the Agreement, Section 2.4(b)(ii), including but not limited to payment of VPPA's power bill from Seller, as well as of being relieved of fiduciary responsibilities as agent for VPPA under the Agreement, Section 2.4(b)(ii) and (vi) ; and

WHEREAS, Seller now will be required to perform, directly and separately, any and all of its obligations to Buyer and to Buyer Participant, respectively, including the delivery of Power, performance assurance, and invoicing, and that under the Agreement, Section 3.4, Seller will continue to have the obligation to deliver Power to the Buyer Participant, which, as further set forth herein, will enable the Buyer to continue to receive revenues through Settlement Agent as calculated before the Termination Date,

NOW THEREFORE, the Buyer Participant hereby gives Notice of the termination of the Agreement as below stated:

1.   This instrument is and shall constitute the Buyer Participant's Notice to the Seller and to the Buyer under the Agreement, Section 2.3(c), of termination for failed conditions precedent under Agreement, Section 2.3(a), such termination to be as set forth herein.

2.   The terms herein, enabling continuation of certain portions of the Agreement as between the Seller and the Buyer Participant, reflect and are conditioned on the Seller having agreed to waive the conditions precedent as to the Buyer Participant under Partial Waiver Agreement and Amendment No. 12A to Supplemental Requirements Power Supply Agreement, dated effective as of August ___, 2013 ("Amendment No. 12A").

Notice of Termination

3. This Notice is effective as of the above Effective Date.  The Termination Date is September 1, 2013.

4. The Termination renders the Agreement a two party contract, between the Seller and the Buyer Participant, to be interpreted and applied as a two party contract between them as of the Termination Date.  As between the Seller and the Buyer Participant, the Buyer is no longer a party to the Agreement.  The Seller and the Buyer may make whatever other arrangements under the Agreement as are suitable between them for the respective portions of the Agreement which are not terminated by this Notice.

5. Calculations of capacity and energy sales shall continue between Seller and the Buyer Participant as contained in the Agreement and needed to determine deliveries and the respective charges by the Seller to the Buyer Participant.   Comparable use of Power supply and load data information as required for calculation of Power charges under the Agreement between the Seller and the Buyer are at their discretion.

6. This Notice has the effect and requires: (a) that the Seller, not the Buyer, is obligated to deliver capacity and energy to the Buyer Participant's certain retail delivery point, for the Industrial Participants up to the amount of capacity and energy as set forth in the Agreement at those certain Industrial Participants delivery points; (b) that the Buyer Participant, not the Buyer, is responsible for the purchase of and payment for such power deliveries; (c) that the Buyer Participant continues to acknowledge the purchase, sale and delivery of up to 225 MWs of Power by the Seller to certain Industrial Participant delivery points as satisfying that part of the Buyer's Power supply obligation under the Power Supply Reassignment Agreement, dated July 21, 2011, provided, that Buyer continues to contract and deliver to the Buyer Participant, at those certain delivery points, the partial requirements Power remainder of between 225 MWs and 325 MWs, as well as backup Power; and (d) that the Settlement Agent (Agreement, Section 6.2(b)) shall continue to receive power sales revenues as previous to the issuance of this Notice, and shall apply those proceeds in part in payment of the Buyer Participant's power purchases from Seller as invoiced to the Buyer Participant by the Seller.

7. This Notice has the effect (a) that the Buyer is released from all fiduciary obligations as agent of VPPA (Agreement, Section 2.4(b)(vi)), and from all obligations to

Notice of Termination

payment to Seller for capacity and energy sold to VPPA (Agreement, Section 2.4(b)(ii); (b) that the Buyer is relieved of any obligation to pursue collection of deficiency payments due to Seller from Buyer Participant for capacity and energy deliveries whether to its wholesale municipal customer, Vinton, or its certain Industrial Participants delivery points

8.    The effect of this Notice is that, as between the Seller and the Buyer Participant, the Agreement shall be interpreted and applied as a two-party contract for the sale of capacity and energy sufficient to service the Vinton municipal load of VPPA, and the certain Industrial Participants delivery points, during the RPSA and thereafter, all as provided in the Agreement.  The Seller shall be obligated to sell and Buyer Participant shall be obligated to purchase only that portion of the loads described in the Agreement which are capacity and energy delivered to VPPA for Vinton and certain Industrial Participants delivery points.

IN WITNESS WHEREOF, the Buyer Participant has caused this Notice of Termination to be duly executed and issued on its behalf as of the Effective Date.

VINTON PUBLIC POWER AUTHORITY

By: _Kenneth O. Stinson_

Kenneth O. Stinson, President

Date: _August 8, 2013_

ATTEST:

_Mary Vice_

Mary Vice, Secretary

Notice of Termination

Partial Waiver Agreement
And
Amendment No. 12A
To
Supplemental Requirements Power Supply Agreement

THIS PARTIAL WAIVER AGREEMENT AND AMENDMENT NO. 12A is made by and between EWO Marketing, Inc., as Seller, and Vinton Public Power Authority, as Buyer Participant (each a "Party" and together the "Parties"), effective as of September 1, 2013 (the "Effective Date of this Amendment No. 12A").

WHEREAS, the Parties are parties to that certain Supplemental Requirements Power Supply Agreement dated as of August 4, 2012 (the "Supplemental Requirements Power Supply Agreement"), which provides for the commencement of delivery of Power upon the satisfaction or waiver of certain conditions precedent as set out in Section 2.3 therein; and

WHEREAS, the conditions precedent in Section 2.3(a), other than Section 2.3(vi), may not have been satisfied or waived as of the Effective Date of this Amendment No. 10, and the condition precedent in Section 2.3(vi) has been satisfied as of the Effective Date of this Amendment No. 10; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 1 to Supplemental Requirements Power Supply Agreement, dated effective as of November 30, 2011 ("Amendment No. 1") and commenced deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including May 31, 2012, as provided therein; and

WHEREAS, the Parties agreed that based on the foregoing interim waivers, the "Delivery Period Start Date" would occur on December 1, 2011; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 2 to Supplemental Requirements Power Supply Agreement, dated effective as of May 20, 2012 ("Amendment No. 2") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including December 1, 2012, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 3 to Supplemental Requirements Power Supply Agreement, dated effective as of November 29, 2012 ("Amendment No. 3") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including January 1, 2013, as provided therein; and

1

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 4 to Supplemental Requirements Power Supply Agreement, dated effective as of December 20, 2012 ("Amendment No. 4") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including February 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 5 to Supplemental Requirements Power Supply Agreement, dated effective as of January 28, 2013 ("Amendment No. 5") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including March 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 6 to Supplemental Requirements Power Supply Agreement, dated effective as of February 28, 2013 ("Amendment No. 6") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including April 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 7 to Supplemental Requirements Power Supply Agreement, dated effective as of March 26, 2013 ("Amendment No. 7") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived shoul l be waived on a partial and interim basis to and including May 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 8 to Supplemental Requirements Power Supply Agreement, dated effective as of April 26, 2013 ("Amendment No. 8") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived shou ll be waived on a partial and interim basis to and including June 1, 2013, as provided therein; and

WHEREAS, the Parties entered into that certain Partial Waiver Agreement and Amendment No. 9 to Supplemental Requirements Power Supply Agreement, dated effective as of May 29, 2013 ("Amendment No. 9") and continued deliveries of Power on a partial and interim basis pending the potential satisfaction or waiver of the outstanding conditions precedent and to that end the Parties agreed that the conditions precedent in Section 2.3(a) that had not yet been satisfied or waived should be waived on a partial and interim basis to and including July 1, 2013, as provided therein; and

WHEREAS, as of the Effective Date of this Amendment No. 10, some or all of the conditions precedent in Section 2.3(a) have not yet been satisfied or waived for the period beyond July 1, 2013; and

2

WHEREAS, the Parties desire to continue deliveries of Power on a partial and interim basis beyond July 1, 2013, pending the potential satisfaction or waiver of the outstanding conditions precedent and that, to this end the Parties desire to agree that the conditions precedent in Section 2.3(a) that have not yet been satisfied or so waived shall be waived on a partial and interim basis to and including August 1, 2013, as provided herein; and

WHEREAS, the Parties desire that based on the foregoing interim waivers and the commencement of the Delivery Period Start Date on December 1, 2011, if the conditions precedent in Section 2.3(a) have not been satisfied or waived other than on a partial and interim basis as provided in this Partial Waiver Agreement and Amendment No. 10 as of August 1, 2013, any Party may terminate the Supplemental Requirements Power Supply Agreement as provided in Section 2.3(c) as of August 1, 2013, in which event all deliveries of Power under the Supplemental Requirements Power Supply Agreement will end on August 1, 2013;

WHEREAS, the Parties desire that based on the foregoing interim waivers and the commencement of the Delivery Period Start Date on December 1, 2011, if the conditions precedent in Section 2.3(a) have not been satisfied or waived other than on a partial and interim basis as provided in this Partial Waiver Agreement and Amendment No. 11 as of August 1, 2013, any Party may terminate the Supplemental Requirements Power Supply Agreement as provided in Section 2.3(c) as of December 1, 2013, in which event all deliveries of Power under the Supplemental Requirements Power Supply Agreement will end on August 1, 2013; and

WHEREAS, the Buyer Participant has declined to waive further the conditions precedent in Section 2.3(a), which have not been satisfied, as to the Sam Rayburn Municipal Power Agency, the Buyer under the Supplemental Requirements Power Supply Agreement, and therefore is no longer in a contractual relationship with the Buyer under the Supplemental Requirements Power Supply Agreement so that it will not take power purchases or deliveries from SRMPA under the Supplemental Requirements Power Supply Agreement as continued under this Amendment No. 12A, but shall credit power purchased from Seller by Buyer Participant as satisfying up to 225 MWs of power purchase and delivery requirements is obligated from the Buyer to the Buyer Participant under the reassigned Power Sales Agreement between Jasper, Texas, and the Vinton Public Power Authority, dated April 27, 2008, as amended March 27, 2011;

WHEREAS, THE Buyer Participant will be responsible solely for the payment to the Seller of amounts due for power supplies under the Supplemental Power Supply Agreement, and the Buyer will no longer have such obligations, the Buyer Participant will enter into a new Settlement Agent Agreement with the Trustee of the Jasper/VPPA Settlement Trust, and the current Settlement Agent Agreement will be terminated upon payment of the final invoice from the Seller to the Buyer at the end of August 2013,

NOW THEREFORE, for and in consideration of the foregoing and the mutual covenants and agreements set out herein, and other good and valuable mutual consideration the receipt and sufficiency of which is hereby acknowledged and accepted by all Parties, the Parties do hereby agree as follows as of the Effective Date of this Partial Waiver Agreement and Amendment No. 12A:

3

1.     Section 2.3(c) of the Supplemental Requirements Power Supply Agreement is deleted in its entirety and replaced with the following:

"(c)     If all of the conditions precedent set forth in Section 2.3(a) have not been satisfied (or waived by the Party on whose behalf the condition has been granted, other than by a waiver under Section 2.3(d)) on or before December 1, 2013, then any Party shall have the right to terminate this Agreement upon written notice to the other Parties at any time, effective as of August 1, 2013, unless such Party's failure to perform its obligations under Section 2.3(b) shall be the reason that one or more of such conditions shall have not been satisfied. Termination of this Agreement pursuant to this Section 2.3(c) shall terminate all rights and obligations of the Parties under this Agreement, without any liability of one Party to the other Parties except for any liabilities incurred prior to the effective date of termination and for prior breaches of this agreement by a Party."

2.     Section 2.3(d) of the Supplemental Requirements Power Supply Agreement is deleted in its entirety and replaced with the following:

"(d)     The conditions precedent listed in Section 2.3(a), to the extent they have not been satisfied or waived, are hereby partially and temporarily waived by the Parties as of December 1, 2011, for the period from and including December 1, 2011, to and including December 1, 2013, so that the Delivery Period Start Date shall be December 1, 2011, and the Delivery Period shall commence on December 1, 2011, subject to termination of the Agreement as of August 1, 2013, if either Party gives notice of termination pursuant to Section 2.3(c) as provided therein."

3.     Articles 7, 9, 10, 11 and 12 of the Supplemental Requirements Power Supply Agreement are hereby incorporated herein by reference and shall apply *mutatis mutandis* to this Partial Waiver Agreement and Amendment No. 10.

4.     The Buyer Participant declines to waive the conditions precedent of Section 2.3(c) for any and all parts of the Supplemental Requirements Power Supply Agreement as would otherwise apply between the Buyer Participant and the Buyer, so that as between the Buyer and the Buyer Participant the Supplemental Power Requirements Power Supply Agreement is terminated and as between the Seller and the Buyer Participant the Supplemental Requirements Power Supply Agreement shall be interpreted and applied as a power purchase and sale between them to the extent power is purchased and sold between them; provided, that the Seller and Buyer may enter into such amendments to the Supplemental Power Requirements Power Supply contract which as between the Seller and the Buyer pertains to the purchase and sale of power between the Seller and the Buyer but is in no way related to the purchase and sale of power by the Seller to the Buyer Participant. The Buyer Participant will credit up to 225 MWs of power purchased and delivered to it at the Designated Delivery Points by the Seller as satisfying the obligation of the Buyer to make such deliveries to the Buyer Participant under the Jasper/VPPA Power Sales Agreement currently reassigned to the Buyer. The Buyer Participant will enter into an agreement with the Settlement Agent, replacing the current Settlement Agent Agreement, dated

4

October 17, 2011, though in substantially the same format and providing for payment by the Settlement Agent of the Seller's invoice for power purchased and sold by the Seller to the Buyer Participant under the Supplement Requirements Power Supply Agreement as hereby amended with waiver of Section 2.3(a) as between the Seller and the Buyer Participant.

*[Remainder of page intentionally left blank. Signature page follows.]*

*Exhibit B*

| From: | Bruce Halstead <bhal@jonesgranger.com> |
|---|---|
| Sent: | Friday, February 15, 2013 8:32 AM |
| To: | Sam Rayburn Municipal Power Agency |
| Subject: | FW: Cambridge Project: VPPA Positions |

For your Friday reading pleasure . . .
Bruce

**From:** Rjg2432@aol.com [mailto:Rjg2432@aol.com]
**Sent:** Thursday, February 14, 2013 3:09 PM
**To:** Bruce Halstead
**Cc:** mayor@cityofvinton.com; cityclerk@cityofvinton.com
**Subject:** Cambridge Project: VPPA Positions

Bruce:

There seems to be a deal of misinterpretation and concern as to VPPA's interests under the Cambridge Project in regard to SRMPA. The following is supplied on behalf of VPPA and is intended to clarify matters:

1) VPPA has no interest in impacting SRMPA's net revenues from the Cambridge Project. Also, VPPA has no interest as to whether SRMPA continues to participate in the Cambridge Project. If SRMPA elects to continue with the Cambridge Project, it together with VPPA will be required to apply funds contained in the joint reserve account to satisfy the cost of transmission upgrades to VPPA's retail IP loads. That expenditure is now expected to be in the $5 million range, with $1 million to be charged in 2013 and $3 million to be charged in 2014.

2) VPPA is interested in separating its power supply under the S-RPSA the way it separated its interest under the RPSA. Under such separation, SRMPA would continue to receive credit for the up to 225 MWs to be delivered under the S-RPSA for the IP loads, and would be relieved of liability to EWOM for VPPA payments. SRMPA would also continue to deliver the EGSL PRA power supply to VPPA for the IP loads, though that also could be separated without impact to SRMPA net revenues should SRMPA desire. EWOM is currently having its attorneys draft proposed separation language to govern a future separation once firm transmission is established to serve VPPA's retail IP loads.

3) There are a number of significant risk factors associated with the Cambridge Project as it has evolved. Some may occur at any time, such as retail refund charges and reduction in adders to the EGSL HLFS retail rate charged by SRMPA to ETI, as well as longer term events such as the PUCT review of capacity sale arrangements involving EGSL and ETI in the next ETI rate review. Retail and wholesale refunds are largely the consequence of estimated and actual gas pricing mechanisms as calculated by EGSL within a band allowed by the FERC or the LPSC. But those EGSL pricing calculations continue to be open to challenge by counsel for the LPSC and simply the passage of a couple of years does not reflect inattention on his part, as exemplified by the refund order experienced in 2012 based on 2004 circumstances and calculations.

4) ETI typically has filed with the PUCT for rate review every three years. That would mean another two years before the next filing, and a resultant review and rate order review occurring probably in

1

**EXHIBIT B**

2015 -- after the $5 million expenditure by SRMPA/VPPA for the transmission upgrades to serve VPPA's retail IP loads. Nisco is viewed by the PUCT as an EGSL/ETI affiliate, and particular scrutiny by the PUCT is anticipated for the SRMPA/ETI Power Sales Agreement which delivers Nisco output to ETI through SRMPA. Affiliate transactions may be disallowed by the PUCT in whole or in part. Disallowance of the SRMPA/ETI Power Sales Agreement could involve up to an $8 million annual impact on the Cambridge Project, though even a $3 million disallowance would largely wipe out all Cambridge Project benefits to SRMPA and VPPA. Doug is the best one to advise concerning those risks and impacts, and certainly Entergy can confirm them, though until they occur nothing is certain or quantifiable.

5) Notably, in addition to the approximately $5.5 million contained in the joint reserve account, the S-RPSA is at risk in the circumstance of a Cambridge Project collapse. All the Cambridge Project contracts are connected so that the termination of any one arising out of the foregoing risk events would bring down all the others. Without the collapse SRMPA and VPPA are hedged from full market prices under the S-RPSA as to the municipal loads for 2021 through 2034. So EWOM's interests are diverging from the pricing set in the S-RPSA. EWOM would be eager to have the S-RPSA power back to sell at full market prices, and that power would be released from the S-RPSA in a Cambridge Project collapse. With each and all of these risks, there is simply a gamble.

6) Whereas there are more than $5.5 million of public monies in the reserve account, and VPPA has the "fall back" original Nisco Deal should the Cambridge Project be impacted, VPPA will not be responsible to SRMPA as that $5.5 million is expended on transmission upgrades for the IP loads should the Cambridge Project collapse and the expenditure be lost to SRMPA. Whether Auction Revenue Rights under MISO, surviving a Cambridge Project collapse, are a security instrument and whether they are qualified for investment of $5 million public monies under Texas law is for SRMPA's counsel to opine.

7) VPPA suggests that, if SRMPA wishes to exit the Cambridge Project and to retain its portion of the current joint reserve account balance (approximately $5 million net of VPPA monies), VPPA would be willing to take assignment of the SRMPA contracts with Entergy under and an Escrow Agreement designed to allow firm transmission upgrades to be established for service the VPPA's retail IP loads. The Escrow would facilitate an SRMPA exit without liability to VPPA, EGSL, or ETI, and in basic form would work as follows:

> The SRMPA/EGSL PRA, the SRMPA/EGSL Nisco Offtake Agreement, the SRMPA/ETI Power Sales Agreement, the Combined Coordination Agreement, the SRMPA/Kenney Settlement Agent Agreement, the SRMPA/EWOM Transmission Upgrade Agreement, the SRMPA/EGSL Transmission Agent Agreement and the J/V Trust/SRMPA Re-Assignment Agreement would be assigned without recourse to VPPA and deposited in escrow with the Settlement Agent as Escrow Agent for future delivery to VPPA. As with the escrow established for Nelson 6 when SRMPA ownership was transferred to VPPA, and delivery was suspended in escrow for five years, SRMPA would be relieved of any and all liability under the foregoing agreements. Release from escrow and delivery to VPPA of the assignment agreements would be subject to firm transmission being established for VPPA's retail IP loads, upon which event the $5 million would be released to SRMPA. The Escrow Agent would be an irrevocable appointment, with irrevocable assignment of the foregoing agreements and full authority in the Escrow Agent to act, under the terms and conditions of the escrow solely with regard to the foregoing contracts and Cambridge Project issues, on behalf of and in the capacity of SRMPA.

EGSL/ETI would have to agree to the respective assignments.

Ralph

2

FILED
2/3/2015 9:42:31 AM
Donna G. Brow
District Clerk
Liberty County, T
Joy Parker

CAUSE NO. CV-1408743

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| v. | § § | LIBERTY COUNTY, TEXAS |
| RALPH J. GILLIS, GILLIS, BORCHARDT & BARTHEL LLP, OBAIN ASSOCIATES LIMITED and THE JASPER/VPPA SETTLEMENT TRUST | § § § § § § | |
| *Defendants* | § | 253rd JUDICIAL DISTRICT |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO ABATE**

Plaintiff Sam Rayburn Municipal Power Agency responds to the Motion to Abate filed by Defendants Ralph J. Gillis, Gillis, Borchardt & Barthel LLP and Obain Associates Limited as follows:

Defendants' Motion to Abate is predicated entirely on the pendency of Civil Action No. 1:14-CV-00202-RC in federal court (the "Federal Case"). That Federal Case has now been dismissed and closed. See the Judgment entered on January 30, 2015 attached as Exhibit A. The basis for the Defendants' Motion to Abate, therefore, no longer exists.

Defendants' Motion to Abate also asks for abatement of this case for only as long as the Federal Case is pending. Since the Federal Case has been dismissed and closed, the Defendants' Motion to Abate, on its own terms, is moot.

WHEREFORE, the Defendants' Motion to Abate should be denied.

Respectfully submitted,

By: /s/ Kenneth R. Wynne
           Kenneth R. Wynne
           State Bar No. 22110000
           kwynne@wynne-law.com

WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)

**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

OF COUNSEL:

David E. Wynne
State Bar No. 24047150
dwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)

**- and -**

E. R. Norwood
State Bar No. 15113500
enorwood@ednorwoodlaw.com
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX 77575
(936) 336-3700 (Telephone)
(936) 336-7634 (Facsimile)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel listed below either electronically through the Court's filing system, direct e-mail or facsimile on this the 3rd day of February, 2015.

J. Hoke Peacock, II
Michael Truncale
Orgain Bell & Tucker, L.L.P.
470 Orleans Street
Beaumont TX 77704-1751

Terry Fitzgerald
Royston, Rayzor, Vickery & Williams LLP
1600 Smith Street, Suite 5000
Houston TX 77002

/s/ Kenneth R. Wynne
Kenneth R. Wynne

*Exhibit A*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **SAM RAYBURN MUNICIPAL POWER AGENCY** | § § § | |
| **v.** | § § | **NO. 1:14-CV-202** |
| **RAY J. GILLIS and GILLIS, BORCHARDT & BARTHEL L.L.P.** | § § § | |

## FINAL JUDGMENT

The court, having concluded that it lacks subject matter jurisdiction (Doc. Nos. 61 and 68), **ORDERS** that Sam Rayburn Municipal Power Agency's claims against Defendants are **DISMISSED without prejudice.**

All pending motions not previously ruled upon are denied as **MOOT** and all relief not specifically granted is **DENIED.** The Clerk is directed to close this case.

So **ORDERED** and **SIGNED** this **30** day of **January, 2015.**

_____
Ron Clark, United States District Judge

FILED
2/4/2015 9:54:35 AM
Donna G. Brow
District Clerk
Liberty County, T.
Joy Parker

CAUSE NO. CV-1408743

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § § | |
| v. | § § | LIBERTY COUNTY, TEXAS |
| RALPH J. GILLIS, GILLIS, BORCHARDT & BARTHEL LLP, OBAIN ASSOCIATES LIMITED and THE JASPER/VPPA SETTLEMENT TRUST | § § § § § | |
| *Defendants* | § § | 253rd JUDICIAL DISTRICT |

## NOTICE OF ORAL HEARING

PLEASE TAKE NOTICE that Defendant Obain Associates Limited's Special Appearance

and Objection to Jurisdiction has been set for oral hearing on **Thursday, February 19, 2015** at **1:30**

**p.m.** in the 253rd Judicial District Court of Liberty County, Texas.

Respectfully submitted,

By: *   /s/ Kenneth R. Wynne*
Kenneth R. Wynne
State Bar No. 22110000
kwynne@wynne-law.com

WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX 77002
(713) 227-8835 Telephone
(713) 227-6205 Facsimile

**ATTORNEY FOR PLAINTIFF**

OF COUNSEL:

David E. Wynne
State Bar No. 24047150
dwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX 77002
(713) 227-8835 Telephone
(713) 227-6205 Facsimile

**- and –**

E. R. Norwood
State Bar No. 15113500
enorwood@ednorwoodlaw.com
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX 77575
(936) 336-3700 (Telephone)
(936) 336-7634 (Facsimile)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel listed below either electronically through the Court's filing system, direct e-mail or facsimile on this the 4th day of February, 2015.

J. Hoke Peacock, II
Michael Truncale
Orgain Bell & Tucker, L.L.P.
470 Orleans Street
Beaumont TX 77704-1751

Terry Fitzgerald
Royston, Rayzor, Vickery & Williams LLP
1600 Smith, Suite 5000
Houston TX 77002

_/s/ Kenneth R. Wynne_
Kenneth R. Wynne