FILED
10/22/2014 9:31:03 AM
Donna G. Brown
District Clerk
Liberty County, TX

Joy Parker

CAUSE NO. _____ CV1408743

| | | |
|---|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY | § § § | IN THE DISTRICT COURT FOR |
| *Plaintiff* | § § | |
| v. | § § | LIBERTY COUNTY, TEXAS |
| | § | 253rd   JUDICIAL DISTRICT |
| RALPH J. GILLIS, | § | |
| GILLIS, BORCHARDT & BARTHEL LLP, | § | |
| OBAIN ASSOCIATES LIMITED AND | § | |
| THE JASPER/VPPA SETTLEMENT TRUST | § | |
| *Defendants* | § | |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Sam Rayburn Municipal Power Agency files this Original Petition against Ralph J. Gillis, Gillis, Borchardt & Barthel LLP, Obain Associates Limited and the Jasper/VPPA Settlement Trust, by its Trustee, James F. Kenney, as follows:

## NATURE OF ACTION

1.     This is an action for recovery of damages, fee forfeiture, money had and received, constructive trust and injunctive relief based on breaches of fiduciary duty, unjust enrichment and negligence.

## PARTIES

2.     Plaintiff Sam Rayburn Municipal Power Agency ("SRMPA") is a joint powers agency and political subdivision of the State of Texas. It was created by the cities of Jasper, Liberty, and Livingston, Texas on October 31, 1979.  It is duly organized and continuing under the laws of the State of Texas, TEX. UTIL. CODE ANN. § 163.051 (Vernon 1998).  It is charged with securing the most economical and reliable long and short-term sources of power and energy for its customers.

3.     Defendant Ralph J. Gillis ("Gillis") is an individual who resides in Massachusetts and is a name partner with the law firm Gillis, Borchardt & Barthel LLP. Defendant Gillis, Borchardt & Barthel LLP ("Gillis Borchardt") is a law firm that has its principal place of business in Hingham, Massachusetts. Defendant Obain Associates Limited ("Obain") is a Massachusetts business corporation, owned by Gillis (and his wife) that has its principal place of business in Hingham, Massachusetts. Gillis, Gillis Borchardt and Obain all office, and may be served with process, at 160 Old Derby Street, Suite 227, Hingham, MA 02043.

4.     The Jasper/VPPA Settlement Trust (the "J/V Trust") is a trust created and existing under the laws of Massachusetts for the benefit, and acting under the control, of Obain (through Gillis), the City of Jasper ("Jasper") and the Vinton Public Power Authority ("VPPA"). The Trust's registered office and principal place of business are at 160 Old Derby Street, Suite 227, Hingham, MA 02043, the same address as the Gillis Defendants, but it can be served through James F. Kenney as its trustee at 66 Lyric Arbor Circle, The Woodlands, Texas 77381.

## JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over the Defendants. Each of the Defendants has a substantial connection with Texas arising out their actions and conduct purposefully directed towards Texas, and this cause of action arises out of and relates to their contacts with Texas. Defendants have purposefully availed themselves of the laws of the State of Texas and have established "minimum contacts" within Texas. Exercising personal jurisdiction over the Defendants in this matter would not offend traditional notions of fair play and substantial justice.

6.     Venue of this matter is proper in Liberty County, because all or a substantial

part of the events giving rise to the claims being asserted in this Petition occurred in this County.

## DISCOVERY LEVEL

7.     Plaintiff intends that discovery be conducted under Level 3.

## FACTUAL BACKGROUND

8.     Gillis and Gillis Borchardt served as SRMPA's legal counsel for many years. Indeed, those Defendants structured most of the contractual arrangements under which SRMPA has operated through those years. Gillis and Gillis Borchardt (or one of its predecessor firms) also for many years represented other of the parties to those contractual relationships as well, including the VPPA, Jasper, the J/V Trust and a predecessor of the J/V Trust, known as the "Jasper Trust."

9.     SRMPA obtains electrical power on a wholesale basis almost entirely from Entergy Corp. ("Entergy") or one or more of its affiliates and provides it to its constituent members, Jasper, Liberty and Livingston, as well as to VPPA, to support their respective retail sales to their residential and industrial users. The current set of such contracts, as well as earlier similar contracts from which the current contracts evolved, were constructed and negotiated by Gillis and Gillis Borchardt and its predecessor firms in their capacities as lawyers for SRMPA.  The earlier set of contracts was generally known as the "Nisco Deal." The current set of such contracts, along with a pre-existing Requirements Power Supply Agreement ("RPSA"), is known as the "Cambridge Project."

### A. Gillis' Undisclosed Conflict of Interest

10.     Gillis formed Obain in 2000 and created the Jasper Trust no later than October 1, 2001. On information and belief, both of those entities have since that time been used to

3

disguise arrangements Gillis was making with Jasper for Obain (and thereby Gillis and his wife) to receive a significant percentage of revenues Gillis would be arranging for Jasper to receive through the contracts he and Gillis Borchardt were structuring. On information and belief, Obain and Jasper first documented such a percentage compensation arrangement between themselves via an "Adjustment Agreement for Separate Settlement" on March 19, 2001 and then supplemented or replaced that arrangement with an "Agreement for Business Development Services" on May 20, 2002. No later than March, 2004, the Jasper Trust became the veil for concealing significant payments to Obain and Gillis, including for concealing them from SRMPA.

11.    In April, 2010, as Gillis and Gillis Borchardt were conceiving and structuring the current complex of agreements involving SRMPA, Obain and Jasper supplemented or replaced their earlier percentage fee arrangements by entering into a "Nisco Settlement Agreement" whereby payments that had previously flowed through the "Nisco Deal" contracts would now be redirected to flow from SRMPA to the J/V Trust and then, unbeknownst to SRMPA, through the J/V Trust to Obain for Gillis, in addition to Jasper and VPPA. The J/V Trust was created on April 14, 2010 to help disguise the reality that much of the amounts SRMPA was obligated to pay was actually going to Gillis through Obain.

12.    Under the complex of agreements currently in place, EGSL, an Entergy entity, coordinates the various payment flows under the Cambridge Project and, as SRMPA's agent for this purpose, it sends directly to the J/V Trust amounts that are owed by SRMPA. In short, since 2011, SRMPA without knowing it, has been flowing funds through the agency of EGSL to the J/V Trust from which Obain and, therefore, Gillis, have been, and are, receiving as much as $1 million or more per year.

13.     SRMPA has learned only recently of Obain's existence and of how Gillis has been using Obain and the J/V Trust to conceal from SRMPA, and from others who participate in this complex of agreements, the fact that Gillis has been realizing substantial funds for himself as a result of how he structured these contracts on which he and his firm were simultaneously representing SRMPA as its lawyers. Because of Gillis' concealment of his personal stake in those contracts through Obain, SRMPA could not have reasonably discovered those arrangements any earlier than it did.  Indeed, via email in November, 2011, SRMPA's Executive Director asked its lawyer, Gillis, to explain the beneficial interests in the J/V Trust, and Gillis replied that the terms of the J/V Trust were "considered confidential between Jasper and VPPA", but went on to represent to SRMPA that the recipients of the subject funds other than SRMPA were Jasper and VPPA, thus fraudulently concealing that Obain was a beneficiary of the J/V Trust and was receiving a significant portion of the payments SRMPA was making. Any otherwise potentially applicable period of limitations has either been tolled or has not begun to run based on Gillis' fraudulent concealment of his/Obain's stake in those funds and by the discovery rule.[1] Because the concealment violated a fiduciary duty, the tolling effect is all the more clear.[2]  Moreover, these arrangements that Gillis made to obtain these undisclosed amounts, actually funded by SRMPA, at least in substantial part, constitute egregious violations

---

[1]     Per the Texas Supreme Court: "[T]he general principle is this: accrual of a cause of action is deferred in cases of fraud or in which the wrongdoing is fraudulently concealed, and in discovery rule cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).

[2]     "We have twice held a fiduciary's misconduct to be inherently undiscoverable. *Willis*, 760 S.W.2d at 645 (attorney); *Slay*, 187 S.W.2d at 394 (trustee). The reason underlying both decisions is that a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's actions or unaware of the need to do so." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996).

of the fiduciary duty he owed to SRMPA both to make full disclosure to it and to act faithfully
in its interest.

14.    Additionally, under Gillis' manipulation, Obain and the J/V Trust have
knowingly participated in Gillis' breach of fiduciary duty to SRMPA and are jointly and
severally liable to SRMPA as a result.  Gillis (and possibly his law firm), Obain and the J/V
Trust have also been unjustly enriched by all the amounts they have received through this
mechanism that was undisclosed to SRMPA, and they should be required to disgorge to
SRMPA all such amounts they have wrongfully received.[3]  Such disgorgement is also
appropriate under the concept of money had and received.  A constructive trust should be
imposed on all such receipts by the Defendants and on any assets or rights of value that are
fairly traceable to those receipts.  At a minimum, the J/V Trust is obtaining possession of the
portion of the subject funds to which SRMPA is claiming and, therefore, is a stakeholder of that
portion of those funds and should remit them into the registry of the Court to abide judicial
resolution of the competing claims to them between SRMPA and Obain/Gillis.

15.    Gillis, through Obain, always held the unilateral right to install or remove
anyone he wanted to serve as trustee of the Jasper Trust.  Therefore, to the extent the Jasper
Trust contracted with the other above mentioned entities, Gillis was, himself, in a very practical
sense, a party to those contracts.  Whenever he acted as SRMPA's lawyer in negotiating those
contracts, he was concealing that he was actually negotiating for himself.  For at least a decade,
the Jasper Trust played a disguising role for Obain and for Gillis to prevent SRMPA, Gillis'

---

[3]    "A party may recover under the unjust enrichment theory when one person has
obtained a benefit from another by fraud, duress, or the taking of an undue advantage."
*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

client, from learning of his chicanery. Gillis has also now maneuvered the J/V Trust into the same sort of disguising role and in so doing, he has continued to negotiate for and advise SRMPA regarding contracts from which he not only realizes undisclosed payments, but to which he, himself, is functionally a party. His whole endeavor, over a period of decades, of co-opting his role as legal counsel to SRMPA for his own personal financial advantage, while concealing and actively misrepresenting his true purposes from his client SRMPA, constitutes the height of hypocrisy and the deepest depth of disloyalty.

**B. Gillis' Termination as SRMPA's Counsel and His Adverse Representation**

16.    SRMPA terminated its engagement of Gillis and Gillis Borchardt as its counsel in June, 2012. Since then Gillis and Gillis Borchardt have continued to represent VPPA and perhaps other of the above named parties with respect to their supposed rights under the Cambridge Project contracts.

17.    Since their termination by SRMPA, Gillis and Gillis Borchardt, acting as counsel for VPPA, began pressing SRMPA to transfer some of its rights, but not all of its obligations, under one of the contracts in the Cambridge Project, specifically the Supplemental Requirements Power Supply Agreement ("S-RPSA"),[4] to VPPA  Those efforts included sending SRMPA a "Power Supply Separation Agreement" by which SRMPA would surrender certain rights in favor of VPPA, but would retain significant obligations, including substantial payment obligations. SRMPA declined to succumb to the pressure Gillis and Gillis Borchardt were applying and declined to enter the supposed

---

[4]    The Supplemental Requirements Power Supply Agreement ("S-RPSA") with Entergy affiliate EWO Marketing, Inc. ("EWOM") is dated August 8, 2011. In the S-RPSA, SRMPA agreed to purchase power from EWOM and to resell it to VPPA to serve VPPA's IP Retail Load needs. VPPA executed the S-RPSA as a "buyer participant."

Separation Agreement. More recently, manifesting a clear intent to increase VPPA's pressure on SRMPA to transfer its contracts rights to VPPA, Gillis sent a letter to SRMPA on Gillis Borchardt's letterhead, expressly acting as counsel for VPPA, transmitting a formal notice to SRMPA that VPPA was terminating the S-RPSA ("Notice of Termination").[5] Following that notice, upon the urging of Entergy and its affiliates, VPPA and SRMPA have agreed with the pertinent Entergy entities to a series of waivers and extensions by which those parties have concurred that the S-RPSA has continued in effect, notwithstanding the Notice of Termination from VPPA. There has been, though, and continues to be, a disagreement between VPPA and SRMPA as to whether that contract can or should be terminated by VPPA.  SRMPA believes and asserts that VPPA lacks the right under the S-RPSA to take the action it has purported to take, believes and asserts that VPPA has purported to take that action under advice from Gillis and Gillis Borchardt and that its purported action is adverse to SRMPA's interests.  Moreover, the purported action clearly regards the same subject matter on which Gillis and Gillis Borchardt previously represented SRMPA.

18.   By continuing to represent VPPA in its disagreement with SRMPA about whether VPPA can or should terminate (or modify) the contract for which Gillis and Gillis Borchardt sent SRMPA the notice of termination, which regards the same subject matter on which Gillis and Gillis Borchardt previously represented SRMPA, Gillis and Gillis Borchardt are violating the fiduciary duty they owe to SRMPA as their former client, as well as their obligations under the Texas Disciplinary Rules of Professional Conduct and the

---

[5]    The Notice of Termination is attached as **Exhibit A**. Although labeled as a "termination" notice, it is actually a purported modification whereby VPPA is purporting to effect the assignment of rights for which it earlier pressured, but is also purporting to leave some of the obligations, especially payment obligations, with SRMPA.

Massachusetts Rules of Professional Conduct.  This suit is brought in part to restrain Gillis and Gillis Borchardt from representing VPPA against SRMPA's interest and without its consent regarding the same subject matter on which those Defendants previously represented SRMPA.  SRMPA has requested Gillis and Gillis Borchardt to refrain from such representation, and, through their counsel, they have informally indicated they are refraining from such representation as it may be adverse to SRMPA's interest, but they have reserved for their own private determination what they think is adverse to SRMPA's interest and, in any event, have refused to make any representation as to anything they are refraining from doing in any formal or enforceable way.  Injunctive relief is necessary, therefore, to restrain that improper activity by Gillis and Gillis Borchardt.

19.   The dispute between SRMPA and VPPA is ongoing, and it could potentially cause an enormous amount of damage to SRMPA in part because the contract purportedly being terminated (or modified), the S-RPSA, is integrated with the other contracts that make up the Cambridge Project. As Gillis explained in correspondence prior to sending the Notice of Termination, if one of the contracts that comprise the Cambridge Project is terminated, the entire Cambridge Project could collapse.[6]   Therefore, VPPA's and SRMPA's dispute threatens to jeopardize the entire Cambridge Project, which, if it were to be impaired, would threaten SRMPA's profitability with respect to the whole of the Cambridge Project.

C. **Obain's Undisclosed Fee has Corrupted Gillis' and Gillis Borchardt's Legal Advice to SRMPA and has Caused SRMPA Significant Damage**

20.   For many years prior to 2011, Jasper sold power to VPPA to meet the needs of

---

[6]      *See* the email from Ralph Gillis to Bruce Halstead dated February 14, 2013, attached as **Exhibit B**.

its "Industrial Participants", and SRMPA sold power to VPPA to meet its municipal needs. Both Jasper and SRMPA bought the power they sold to VPPA from affiliates of what is now Entergy Corp.  Under those arrangements, neither Jasper nor SRMPA had responsibilities for delivering the power they were buying and then selling to VPPA. Delivery of the power was the seller's obligation.

21.    In 2010, however, Gillis began structuring new arrangements for VPPA to supply power to its industrial participants.  He knew he was including in those arrangements a change in the source for the power that theretofore was sold to Jasper for it to resell to VPPA for its industrial participants' load.  He knew that such a change would entail using different transmission facilities from those that had historically been used to deliver that power. He further anticipated that such a change would also entail a likely requirement to upgrade the capacity of the new transmission facilities and that under those circumstances the cost of such upgrade would likely be imposed on its customer. If Jasper continued to be that customer, Jasper would bear that cost obligation, but, if it did, it would diminish the percentage fee Gillis was receiving through the Jasper Trust and Obain. Gillis, therefore, without disclosing his personal financial stake in avoiding that cost risk to Jasper, set about to shift that risk from Jasper to his other client, SRMPA, in a way that would protect his undisclosed fee and the value of his stake as a *de facto* party to the arrangements going forward.  He accomplished that by constructing, negotiating, and persuading SRMPA to enter into, the S-RPSA.

22.    Under the S-RPSA, EWO Marketing, Inc. ("EWOM") became the seller, and SRMPA became the buyer from EWOM and the reseller to VPPA, of power to meet VPPA's industrial participants' load. In effect, SRMPA replaced Jasper in that role. Rather than presenting the new agreement to SRMPA as one that was designed to protect Jasper from a

large expense to upgrade the capacity of the Entergy Transmission System and that would protect Gillis' personal stake in the fee he was receiving through the Jasper Trust and Obain and would preserve the value of his position as a *de facto* party to the arrangements, Gillis instead presented the new agreement to SRMPA as one that would be highly profitable to SRMPA.

23.    Gillis did not make SRMPA aware of the consequences under the S-RPSA that would cause SRMPA to incur significant costs. Changing the designated source of the power SRMPA would be buying entailed that different transmission facilities would be used to deliver that power than had been used when Jasper was the buyer, and the terms of the S-RPSA, in obscurely worded provisions, imposed on SRMPA, as the new buyer of this power from EWOM, an obligation to pay the cost to upgrade the capacity of the Entergy Transmission System.  Moreover, as Gillis prepared it, the S-RPSA required SRMPA to arrange for delivery of the power on a long-term basis, but Gillis encouraged SRMPA to enter into this new agreement before such long-term arrangements were in place.  In short, Gillis portrayed the S-RPSA as a lucrative arrangement for SRMPA, while in reality, which Gillis knew, SRMPA was actually buying not one, but two, pigs in a poke – the prospect of a significant cost to upgrade the capacity of the Entergy Transmission System and the uncertainty of obtaining a long-term delivery contract.  Regardless, though, Gillis provided in the S-RPSA that SRMPA would be obligated to pay a "Re-Assignment Fee" of $3 million per year from which Gillis, through the J/V Trust and Obain, would continue to receive his percentage fee of at least $1 million per year and preserve the value of his status as a *de facto* party to the contracts.

24.    Unfortunately, as Gillis could foresee but failed to disclose to SRMPA, the risks to SRMPA soon materialized. The S-RPSA was signed effective August 8, 2011, and deliveries of power under it began in December, 2011, but by mid-2012, SRMPA began facing a cost of

over $5 million to upgrade the transmission facilities being used for those deliveries. SRMPA is now in the process of paying that cost, which, based on how Gillis portrayed it, SRMPA did not know to anticipate. Even Gillis later included it as a feature of a financial "bomb." It is also VPPA's allegation of a lack of a long-term delivery arrangement that grounded the Notice of Termination (or modification) of the S-RPSA that Gillis and his law firm sent to SRMPA – those Defendants' client when Gillis and his law firm constructed the S-RPSA to begin with.

25.    Gillis also knew that the Entergy affiliated companies anticipated changing their membership from the delivery system in which they had participated for years to Midcontinent Independent System Operator, Inc. ("MISO") and that the planned change would compress the operating margins he represented to SRMPA it would experience under the S-RPSA. Even so, he explicitly advised SRMPA that the change to MISO would not affect SRMPA's interests. The Entergy entities have now changed that membership and now participate in MISO, and that change has significantly compressed the margins Gillis represented SRMPA would experience under the S-RPSA.

26.    Gillis and Gillis Borchardt's failure to advise SRMPA accurately regarding the probable costs it would incur from entering into the S-RPSA relative to the expectations Gillis and Gillis Borchardt led it to expect have caused SRMPA to realize far less benefit from the S-RPSA than it should have and far less than it would have realized if it had been properly advised. Moreover, by representing VPPA in its attempts to terminate (or modify) the S-RPSA, especially by purporting to take advantage of provisions in the S-RPSA (and taking wrongful such purported advantage) on which Gillis and his law firm failed adequately to advise SRMPA, the Defendants have caused SRMPA to incur significant attorney's fees and expenses of litigation to defend itself against those efforts.  In short, Gillis and Gillis Borchardt's

professional failures have caused SRMPA damages of at least $5 million.

CAUSES OF ACTION

A. **Breach of Fiduciary Duty**

27.     SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs.

28.     Defendants' actions described herein constitute breaches of fiduciary duty owed to SRMPA.   SRMPA, therefore, sues for its actual damages, for forfeiture of revenues Gillis and Gillis Borchardt have received regarding their legal representation of SRMPA in connection with the Cambridge Project agreements and the Requirements Power Supply Agreement and its related agreements, and, to avoid unjust enrichment to the J/V Trust and Obain and through them to Gillis, a constructive trust for SRMPA's benefit all of the J/V Trust's receipts for Obain's account and for all receipts by Obain, and through Obain the lawyer Defendants, from Obain's percentage fee arrangements that have affected SRMPA without its contemporaneous knowledge.

29.     Defendants Gillis and Gillis Borchardt have breached, and are breaching, their fiduciary duty to SRMPA. Defendants Gillis and Gillis Borchardt have represented, and continue to represent, VPPA in disputes against SRMPA that have arisen out of, and are substantially related to, the Cambridge Project and its predecessor structures, without full disclosure to, and without obtaining consent from, SRMPA. SRMPA did not, and does not, consent to this representation. It is also reasonably probable that Defendants have revealed confidential information to VPPA during this representation. Defendants' actions have proximately caused SRMPA damages and are calculated to, and if unchecked will, proximately cause further damages to SRMPA going forward.   More particularly, if VPPA succeeds in

terminating or modifying the S-RPSA as Gillis and Gillis Borchardt have advised it to try to accomplish, SRMPA will at least be inhibited in realizing the revenues it is currently receiving, if not deprived of those revenues altogether, with the effect that any profitability from that contract will be impaired or even destroyed. Moreover, Gillis and Gillis Borchardt induced SRMPA into accepting risks of significant costs and compressed margins it did not anticipate by entering into the S-RPSA, and they persuaded SRMPA to enter into the S-RPSA to preserve for Gillis, through the J/V Trust and Obain, his continued receipt of his undisclosed compensation of at least $1 million per year. That inducement, without needed disclosures, has caused and is causing SRMPA to suffer damages of at least $5 million from the materialization of the risks Gillis and Gillis Borchardt failed to advise SRMPA were inherent in the S-RPSA.

   30. That said, SRPMA's rights related to Gillis and Gillis Borchardt's breaches of fiduciary duty are not limited to recovering its actual damages. SRPMA is also entitled to a forfeiture of all compensation Gillis and Gillis Borchardt have received in connection with the subject matter regarding which they have committed those breaches.  As held by the Texas Supreme Court, "[A] client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client."[7]  Because the J/V Trust and Obain have knowingly participated in those breaches of fiduciary duty, they are equally liable for such forfeiture, at least to the extent of the undisclosed percentage fee of $1 million or more per year they have been receiving for Gillis' account.

   31. The Defendants' breaches of fiduciary duty and accompanying fraudulent concealment and unjust enrichment have been both clear and serious. Defendants' conduct was also intentional, willful, and malicious and thereby warrants an award of

---

[7] *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999).

exemplary damages.

**B. Unjust Enrichment**

32.     SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 31.

33.     The Defendants have been unjustly enriched by their receipt of the funds described above, because they have received those funds under circumstances in which they may not justly retain them.  Those funds, as well as anything of value to which those funds have been applied by the Defendants should be restored to SRMPA.

**C.     Money Had and Received**

34.     SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 31.

35.     The Defendants have received the foregoing funds that in equity and good conscience belong to SRMPA, and they should be required to return such funds in full, as well as anything of value to which those funds have been applied by the Defendants.

**D.     Negligence**

36.     SRMPA incorporates by reference and re-alleges each of the allegations contained in the foregoing paragraphs 1 – 31.

37.     In the event it is ever concluded that Gillis and Gillis Borchardt did not intentionally fail to disclose to SRMPA the significant risks it was accepting by entering into the S-RPSA, then such failure to disclose was negligence and constitutes legal malpractice.  Such negligence, in the alternative, caused SRMPA to suffer the actual damages described above.

## PRAYER

SRMPA prays that, upon a full trial on the merits, the Court find in favor of SRMPA and against Defendants and that SRMPA be awarded (a) its actual damages, (b) forfeiture of all compensation to Obain, Gillis and Gillis Borchardt regarding the Cambridge Project and its predecessor structures which is traceable to funds from or for SRMPA, (c) forfeiture by the J/V Trust of all revenues it has received that are traceable to funds from or for SRMPA that were destined for Obain or Gillis, (d) a constructive trust on all receipts by the J/V Trust and Obain and, through them or either of them, by Gillis and Gillis Borchardt, that have affected SRMPA, (e) a declaration that Gillis and Gillis Borchardt's conduct in representing VPPA, and possibly others, against SRMPA's interest is a violation of their ethical and fiduciary responsibilities as lawyers to SRMPA, (f) a permanent injunction restraining and enjoining Gillis and Gillis Borchardt from advising, consulting or representing VPPA in any way affecting its contractual arrangements with SRMPA, (g) exemplary damages, (h) prejudgment and post judgment interest at the maximum rate allowed by law; and (i) its costs of court.  SRMPA further requests all other relief to which it is entitled, whether at law or in equity.

Respectfully submitted,

By: /s/ Kenneth R. Wynne
        Kenneth R. Wynne
        State Bar No. 22110000
        kwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)

**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

16

OF COUNSEL:

David E. Wynne
State Bar No. 24047150
dwynne@wynne-law.com
WYNNE & WYNNE LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)

- and -

E. R. Norwood
State Bar No. 15113500
enorwood@ednorwoodlaw.com
THE NORWOOD LAW FIRM
340 Main Street
Liberty, TX 77575
(936) 336-3700 (Telephone)
(936) 336-7634 (Facsimile)